# EXHIBIT M

## Unrelated Decisions

6 of 8 DOCUMENTS

AETNA CASUALTY & SURETY CO., Plaintiff, v. SYLVIA L. HILLER, as Administratrix of the Estate of John Gary Miller, and Sylvia L. Hiller as Trustee Ad Litem for those allegedly entitled to recover for the wrongful death of John Gary Hiller, and GARY J. HILLER, as Administrator of the Estate of John Gary Miller and as Trustee Ad Litem for those allegedly entitled to recover for the wrongful death of John Gary Hiller, Defendants.

CIVIL ACTION No. 95-144,

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

1995 U.S. Dist. LEXIS 7259

May 25, 1995, Decided
May 25, 1995, Filed; May 26, 1995, ENTERED

**LexisNexis(R) Headnotes**

**COUNSEL:** For AETNA CASUALTY & SURETY COMPANY, PLAINTIFF: LOUIS E. BRICKLIN, ERIN M. DONALDSON, BENNETT, BRICKLIN & SALTZBURG, PHILA, PA.

For SYLVIA L. HILLER, AS ADMINISTRATRIX OF THE ESTATE OF JOHN GARY HILLER AND AS TRUSTEE AD LITEM FOR THOSE ALLEGEDLY ENTITLED TO RECOVER FOR THE WRONGFUL DEATH OF JOHN GARY HILLER, DEFENDANT: STEWART B. LIEBMAN, MONTGOMERYVILLE, PA.

**JUDGES:** JUDGE CLIFFORD SCOTT GREEN

**OPINIONBY:** CLIFFORD SCOTT GREEN

**OPINION:** [*1]
MEMORANDUM-ORDER

GREEN, S.J., 1995

Presently before me is defendants' (the "Hillers") motion to dismiss plaintiff's ("Aetna") amended complaint for failure to state a claim. n1 Fed R. Civ. P. 12(b)(6). Upon consideration of defendants' motion and the response, and for the reasons stated below, defendants' motion to dismiss for failure to state a claim will be granted.

> n1 In response to Aetna's initial complaint, defendant moved to dismiss the complaint for failure to state a claim under Rule 12(b)(6) and for failure to name an indispensable party under Rule 12(b)(7). As no responsive pleading had been filed, Aetna amended its complaint without leave of the court to add the indispensable party. Fed R. Civ. P. 15(a); see also Picking v. Pennsylvania R Co, 5 F.R.D. 280, 281 (M.D. Pa 1946) (a motion to dismiss is not a responsive pleading). Aetna's amended complaint, therefore, renders this motion moot.

I. FACTUAL AND PROCEDURAL BACKGROUND

Aetna issued an insurance policy (the [*2] "policy") to George S. Maier Company ("GSM Co.") which forms the basis of the dispute between the parties. Defendants Gary J. and Sylvia L. Hiller are the Administrators of the Estate of their son, John Gary Hiller, who was killed on May 17, 1992 in a pedestrian accident involving a drunk driver. Gary J. Hiller is also the sole owner of GSM Co. The Hillers maintain that the policy covers the decedent by virtue of his father's sole ownership of GSM Co. They also contend that the parties are required to arbitrate this dispute under the policy's arbitration clause. n2 Aetna has brought this declaratory judgment action seeking a judicial declaration stating that the arbitration clause does not cover this dispute. Aetna maintains that the dispute concerns whether a policy provision violates legislative or administrative mandates or public policy and is therefore, beyond the scope of the arbitration clause. The Hillers move to dismiss Aetna's complaint averring that the arbitration clause covers this dispute and therefore, directs the parties to arbitrate.

> n2 The arbitration clause, in relevant part, reads:

1995 U.S. Dist. LEXIS 7259, *2

a. If we and the "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "underinsured motor vehicle" or do not agree as to the amount of damages, either party may make a written demand for arbitration. Each party will select an arbitrator. The two arbitrators will select a third. . . .

b. Arbitration shall be conducted in accordance with the Pennsylvania Uniform Arbitration Act. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. . . . A decision agreed to by two of the arbitrators will be binding.

Amended Complaint for Declaratory Judgment, Exhibit A.

[*3]

This Court has diversity jurisdiction pursuant to *28 U.S.C. § 1332.* Accordingly, state law governs the substantive liability of the parties. *Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).* In this matter, Pennsylvania law applies. The issue before this Court is whether the arbitration clause covers the dispute between the parties.

II. DISCUSSION

The Hillers' motion to dismiss for failure to state a claim will be granted as the arbitration clause covers the dispute between them and Aetna. The parties must submit an issue to arbitration when they have entered an arbitration agreement and the dispute falls within the scope of the agreement. *Rocca v. Pennsylvania General Ins. Co., 358 Pa. Super. 67, __, 516 A.2d 772, 772-73 (1986),* appeal denied, *517 Pa. 594, 535 A.2d 83 (1987).* The dispute herein falls within the scope of the arbitration agreement because the dispute concerns whether the policy covers a claimant. *Brennan v. General Accident Fire and Life Assurance Corp., Ltd., 524 Pa. 542, 574 A.2d 580 (1990); McAlister v. Sentry Ins. Co., 958 F.2d 550 (3d Cir. 1992).* see also *Nationwide Ins. Co. of Columbus, Ohio v. Patterson, 953 F.2d 44,* [*4] *47 (3d Cir. 1991)* (the majority of federal district court decisions applying Pennsylvania law have held that disputes over the extent of insurance coverage are within the scope of the arbitration clause unless the clause explicitly excludes such issues from arbitration (citations omitted)).

In Brennan, the Supreme Court of Pennsylvania interpreted an arbitration clause substantially similar to the one in the instant case and held that "arbitration is mandated whenever the insured and the insurer disagree as to when a party is legally entitled to recover damages." n3 *Brennan, 524 Pa. at 549, 574 A.2d at 583.* Brennan involved a suit by the administrator of the estate of the insureds in which he sought to recover uninsured motorist benefits.

n3 The arbitration clause in Brennan, in relevant part, states:

If we and the covered person disagree whether that person is legally entitled to recover damages from the owners or operator of an underinsured motor vehicle, or do not agree as to the amount of damages, either party may make a written demand for arbitration. In this event each party will select an arbitrator. The two arbitrators will select a third. . . .

Unless both parties agree otherwise, arbitration will take place in the county and state in which the covered person lives. . . . A decision agreed to by two of the arbitrators will be binding.

*Brennan, 524 Pa. at __, 574 A.2d at 582.* Although the Brennan court noted that the arbitration clause therein was covered by the law covering common law arbitration, 42 Pa. Cons. Stat. Ann. 731 et seq., it did not indicate that this was relevant to its holding. Therefore, the fact that the arbitration clause in the instant case is governed by the Pennsylvania Uniform Arbitration Act, 42 Pa. Cons. Stat. Ann. §§ 7301-7320, does not render Brennan inapposite.

[*5]

This Court also bases its conclusion on McAlister, a decision in which the Third Circuit Court of Appeals relied on Brennan in interpreting an arbitration clause similar to the one involved here on similar facts. The McAlister court held that an insurer was not entitled to a judicial determination of whether the claimant was "an insured" under the policy as this matter was within the scope of the arbitration clause. In McAlister, a claimant injured in a car accident involving an intoxicated driver sought underinsured motorist coverage under a policy issued to

a corporation of which he was president and principal stockholder. *McAlister,* 958 F.2d at 551-52

Aetna maintains that the arbitration clause does not obligate it to arbitrate because the dispute concerns "whether a particular provision of the contract is contrary to a constitutional, legislative, or administrative mandate," and therefore, the matter is for a court to decide. *Daley-Sand v. West American Ins. Co.,* 387 Pa. Super. 630, 637, 564 A.2d 965, 969 (1989); see also, *McAlister,* 958 F.2d at 554. This Court, contrary to Aetna's characterization, finds that the dispute involves the scope [*6] of the arbitration clause. Therefore, Aetna's reliance on the Daley-Sand line of cases, which holds that a judge, rather than an arbitration panel, has jurisdiction to decide whether a policy provision is contrary to law or public policy, is inapposite. Moreover, "when the claimant seeks to have a dispute arbitrated that is within the scope of an arbitration agreement, she may proceed through arbitration notwithstanding the legal fact that her arguments are based in part on legal and public policy challenges to other provisions in the agreement." *Patterson,* 953 F.2d at 48 (citations omitted).

Finally, Aetna's reliance on cases concerning judicial review of an arbitration award challenged for legal and public policy reasons is similarly misplaced. See *Azpell v. Old Republic Ins. Co.,* 526 Pa. 179, 584 A.2d 950, 952 (1991); *Davis v. Government Employees Ins. Co.,* 500 Pa. 84, 454 A.2d 973 (1982); *Webb v. United Serv. Auto Ass'n,* 227 Pa. Super. 508, 323 A.2d 737 (1974).

An appropriate Order follows.

## ORDER

AND NOW, this day of May, 1995, IT IS HEREBY ORDERED that defendants' motion to dismiss the complaint for failure to state a claim pursuant [*7] to Rule 12(b)(6) is granted and this action is dismissed.

BY THE COURT:

CLIFFORD SCOTT GREEN, S.J.

Case 1:05-cv-00022-MPT     Document 10-16     Filed 03/17/2005     Page 5 of 13

LEXSEE 2003 US DIST LEXIS 17597

CENTURY INDEMNITY COMPANY, Plaintiff, v. THE PYRITES COMPANY, INC., and THE HOME INSURANCE COMPANY, Defendants.

Civil Action No. 03-204-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2003 U.S. Dist. LEXIS 17597

October 2, 2003, Decided

**DISPOSITION:** [*1] Defendant's motion to dismiss granted.

**LexisNexis(R) Headnotes**

**COUNSEL:** For Century Indemnity Company, PLAINTIFF: Frank E Noyes, II, White & Williams, Wilmington, DE USA.

For The Pyrites Company, Inc, DEFENDANT: Kevin Joseph Mangan, Monzack & Monaco, PA, Wilmington, DE USA.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:**

**MEMORANDUM ORDER**

At Wilmington this 2nd day of October, 2003, having reviewed the motion to dismiss and alternative motion to stay the action filed by defendant The Pyrites Company, Inc., as well as the papers submitted in connection with said motion; n1

> n1 Defendant The Home Insurance Company filed a motion to implement at ninety-day stay commencing on March 5, 2003 and ending on June 3, 2003. (D.I. 15) This motion is now moot due to the passage of time. The court, therefore, will not address it in this memorandum order.

IT IS ORDERED [*2] that said motion (D.I. 9) is granted for the reasons that follow:

1. On February 19, 2003, plaintiff Century Indemnity Company ("Century") filed a declaratory judgment action against defendants The Pyrites Company, Inc. ("Pyrites") and The Home Insurance Company ("Home") seeking declaratory relief relating to an insurance dispute. (D.I. 1) Century is a Pennsylvania corporation and successor to CCI Insurance Company, which is a successor, in turn, to Insurance Company of North America. (D.I. 1 at P1) Century's principal place of business is in the Commonwealth of Pennsylvania. Pyrites is a Delaware corporation with its principal place of business in the State of California, and Home is a New Hampshire corporation with its principal place of business in the State of New York. (D.I. 1 at PP2, 3)

2. Pyrites obtained primary general liability insurance policies from Century from February 1, 1966 through January 1, 1974. (D.I. 1 at P1) It also obtained liability insurance from Home. (D.I. 1 at P3) Pyrites now wishes to rely on its insurance coverage to manage the environmental remediation and rehabilitation costs arising from alleged solid and liquid waste disposal on (1) property once [*3] owned by Pyrites in Wilmington, Delaware where Pyrites extracted copper and cobalt from pyrite ore (the "Potts Site"); and (2) property adjacent to the Potts Site in Wilmington, Delaware (the "Halby Site"). (D.I. 1 at PP7, 19) Specifically, Pyrites seeks reimbursement from Century both for the defense, investigation, and remediation costs incurred to date for the Potts and Halby Sites and for future expenses relating to these properties. (D.I. 10 at 1) In response to Pyrites's request for coverage, Century denies responsibility for the type of property damage at the Potts and Halby Sites under the terms of the policies.

3. Prior to the instant lawsuit, Pyrites initiated an action against Century in the Philadelphia Court of Common Pleas by writ on February 3, 2003 ("the Philadelphia Action") (D.I. 10) Pyrites then filed its complaint in the Philadelphia Action on February 24, 2003 asserting causes of action for bad faith against Century and breach of contract and breach of fiduciary duty against both Century and Home. (D.I. 10)

4. On March 21, 2003, Pyrites filed a motion to dismiss the instant case pursuant to *Federal Rule of*

Case 1:05-cv-00022-MPT    Document 10-16    Filed 03/17/2005    Page 7 of 13

Page 2
2003 U.S. Dist. LEXIS 17597, *3

Civil Procedure 12(b)(6) [*4] based on the prior filed Philadelphia Action and, in the alternative, a motion to stay this action pending resolution of the Philadelphia Action. (D.I. 9) The court has jurisdiction to review this motion pursuant to 28 U.S.C. § 1332, diversity of citizenship. (D.I. 1 at P5)

5 According to the Third Circuit, "the cases involving declaratory judgment actions brought by insurers create a confusing patchwork." *Terra Nova Ins. Co., Ltd. v. 900 Bar, Inc.*, 887 F.2d 1213, 1221 (3d Cir. 1989). The Third Circuit noted that while some courts analyze the issue under the *Federal Declaratory Judgment Act* (the "Act"), other courts apply the Colorado River Water Conservation District v. United States exceptional circumstances analysis. Id. The Supreme Court held as a general rule in Colorado River that "as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal Court having jurisdiction ...'" *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818, 47 L. Ed. 2d 483, 96 S. Ct. 1236 (1976). The Supreme [*5] Court further characterized this rule as a "virtual unflagging obligation of the federal courts to exercise the jurisdiction given them." Id. Nonetheless, it recognized that there are limited circumstances in which a federal court may defer to pending parallel state court proceedings based on considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Id.

6 The Third Circuit has clarified that the obligation of the federal court to exercise jurisdiction does not exist in a declaratory judgment action based on the terms of the Act itself. *Terra Nova*, 887 F.2d at 1222. "In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201 (2003) (emphasis added). In light of this permissive "may" language, the Act gives federal district courts statutory discretion in deciding whether to entertain a declaratory [*6] judgment action. *Terra Nova*, 887 F.2d at 1222. The Third Circuit set forth general guidelines that a district court should consider in exercising its discretion under the Act: (1) whether the issues in controversy between the parties are foreclosed under the applicable substantive federal law and whether these issues may be settled better in the proceeding pending in the state court; (2) the likelihood that the declaration will resolve the uncertainty of obligation which gave rise to the controversy; (3) the convenience of the parties; (4) the public interest in a settlement of the uncertainty of obligation; and (5) the availability and relative convenience of other remedies. *Id. at 1225* (citations omitted). The Third Circuit also noted that "courts look with disapproval upon any attempt to circumvent the laudable purposes of the Act, and seek to prevent the use of the declaratory action as a method of procedural fencing, or as a means to provide another forum in a race for res judicata." Id. (citing 6A J. Moore, J. Lucas & G. Girtheer, Jr., Moore's Federal Practice P 57.08[5], at 57-50 (2d ed. 1987) (footnote omitted)).

7 Pyrites claims that [*7] Century filed the instant suit in an attempt to forum shop and needlessly increase the litigation costs to the parties. Consequently, Pyrites requests the court to use its discretionary authority under the Act and to dismiss this action as duplicative and piecemeal litigation. In response, Century maintains that the court should exercise its discretion in favor of Century and not dismiss the instant action because the Terra Nova factors all weigh in favor of jurisdiction in the District of Delaware.

8. Mindful of its discretion in deciding whether to entertain the instant declaratory judgment suit under the Act, the court will analyze each factor recommended by the Third Circuit in *Terra Nova*. Considering the first and second *Terra Nova* factors, the court does not agree with Century that it is better able to determine Century's obligations under the policies than the Philadelphia Court of Common Pleas. According to the Pennsylvania Supreme Court, Pennsylvania state courts do not have jurisdiction to render declaratory judgments unless all interested parties are joined under the *Pennsylvania Declaratory Judgment Act*. See *Vale Chemical Co. v. Hartford Acci. & Indem. Co.*, 512 Pa. 290, 516 A.2d 684 (1986) [*8] Although Century argues that the Delaware Department of Natural Resources and Environmental Control, the Environmental Protection Agency, and Karl Goos n2 (the "third parties") are necessary to the Philadelphia Action and presently are not joined as parties, thereby precluding declaratory judgment by the Philadelphia Court of Common Pleas, the court is unclear how these third parties would be impacted by a determination of Century's obligations to Pyrites. In *Vale Chemical Company v. Hartford Accident and Indemnity Company*, 512 Pa. 290, 516 A.2d 684 (1986), the Pennsylvania Supreme Court held that a tort plaintiff in a personal injury claim against an insured has an interest in seeing that an insurance company pays the judgment against its insured. As such, the Vale court found that the tort plaintiff must be joined as an indispensable party before declaratory relief may be litigated between an insured and an insurer under the Act. The court notes that the instant third parties, unlike the tort plaintiff in *Vale*, are not involved in any form of a personal injury suit against Pyrites. They simply have an interest in ensuring that the Potts and Halby Sites are [*9]

properly rehabilitated from solid and liquid waste. They will not be the downstream recipients of any dollars collected under the alleged insurance policy from Century. The court, therefore, concludes that Pyrites and Century are the only true interested parties, and they are properly before the Philadelphia Court of Common Pleas in the Philadelphia Action. Necessarily then, the court finds that the Philadelphia Court of Common Pleas has jurisdiction to grant declaratory relief to Century.

> n2 The Delaware Department of Natural Resources and Environmental Control initiated proceedings against Pyrites in 1993 to investigate and remediate ground and water contamination on the Potts Site. (D.I. 1 at P10) The Environmental Protection Agency identified Pyrites as a "potentially responsible party" in 1997 for environmental contamination found at the Halby Site. (D.I. 1 at P19) Karl Goos is the present de facto owner of the Potts Sites, which was formerly owned by Pyrites. (D.I. 1 at P9)

9. Turning to the third *Terra* [*10] *Nova* factor, the court does not find that the Delaware District Court presents a more convenient forum than the Philadelphia Court of Common Pleas. While Century contends that the contaminated sites, likely witnesses, and evidence concerning the investigation and remediation of the sites are all located in the State of Delaware, the court understands the nature of the instant dispute to center on insurance coverage. Thus, the court anticipates that trial will focus on witnesses and documents from Pyrites and Century, each having their principal places of business outside the State of Delaware. Moreover, if Delaware witnesses or evidence concerning the Potts or Halby Sites become necessary to the adjudication of the insurance coverage dispute, Delaware is located within commuting distance of the City of Philadelphia. Consequently, the court does not believe that travel to the Philadelphia Court of Common Pleas will be unduly burdensome.

10. Regarding the fourth *Terra Nova* factor, the court does not deem that the District of Delaware has any greater interest in adjudicating the instant case than the State of Pennsylvania. Pyrites is incorporated under the laws of the State of [*11] Delaware, but Century is incorporated under the laws of the Commonwealth of Pennsylvania. As well, the issue involves declaratory relief under the terms of an alleged insurance contract, not one related to contamination and remediation of Delaware land. Accordingly, the court finds that this factor favors dismissing the instant suit in favor of the Philadelphia Court of Common Pleas forum.

11. Finally, despite Century's argument that declaratory relief is not available to the parties in the Philadelphia Action because not all interested parties are joined, the court explained above that it does not find this argument to have merit. To reiterate, the court finds that the only indispensable parties to this insurance coverage dispute are Century and Pyrites. Additionally, the court believes that Century may file a counterclaim against Pyrites in the Philadelphia Court of Common Pleas to address its request for declaratory relief. Hence, the court concludes that this fifth *Terra Nova* factor falls on the side of dismissing the instant litigation.

12. In summary, because the court finds that all *Terra Nova* factors favor dismissing the instant declaratory judgment action, the court [*12] grants Pyrites's motion to dismiss.

Sue L. Robinson

United States District Judge

LEXSEE 2004 U.S. DIST. LEXIS 266

UNITED STATES AIRCRAFT INSURANCE GROUP, Plaintiff, v. DWIGGINS, L.L.C. and BOMBARDIER CAPITAL, INC., Defendants.

Civ. No. 03-173-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*2004 U.S. Dist. LEXIS 266*

**January 5, 2004, Decided**

**SUBSEQUENT HISTORY:** Dismissed by, Motion denied by *United States Aircraft Ins Group v. Dwiggins, L.L.C., 2004 U.S. Dist. LEXIS 5607 (D. Del., Mar. 31, 2004)*

**PRIOR HISTORY:** *United States Aircraft Ins Group v. Dwiggins, L.L.C., 2003 U.S. Dist. LEXIS 19396 (D. Del., Oct. 15, 2003)*

**DISPOSITION:** [*1] Defendant's motion to dismiss complaint or to stay proceedings denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** For United States Aircraft Insurance Group, PLAINTIFF: Sean J Bellew, Cozen & O'Connor, Wilmington, DE USA.

For Dwiggins, LLC, DEFENDANT: James S Green, Seitz, Van Ogtrop & Green, PA, Wilmington, DE USA

For Bombardier Capital, Inc, DEFENDANT: Donald J Wolfe, Jr, Potter Anderson & Corroon, LLP, Wilmington, DE USA.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:**

## MEMORANDUM ORDER

### I. INTRODUCTION

United States Aircraft Insurance Group ("USAIG") filed this action for declaratory judgment on February 5, 2003, against defendants Dwiggins, LLC ("Dwiggins") and Bombardier Capital, Inc. ("BCI"), seeking declaratory relief that an insurance policy issued to Dwiggins is void ab initio and unenforceable due to material misrepresentations made during the underwriting process and due to Dwiggins' failure to comply with policy conditions. (D.I. 1) Presently before the court is the motion of defendant Dwiggins to dismiss or in the alternative to stay the proceedings. (D.I. 42) Because the court concludes that abstention is [*2] not warranted and that all necessary parties are before the court, Dwiggins' motion will be denied.

### II. BACKGROUND

#### A. Facts as Alleged by USAIG

The facts in the present case were outlined by the court in its October 15, 2003 memorandum opinion granting partial summary judgment to BCI (D.I. 59) To briefly summarize, Dwiggins obtained general liability and hull risk insurance for a Lear 60 jet through USAIG for a policy period beginning on September 10, 2002, and ending on September 10, 2003. The aircraft was financed through an agreement with BCI, which is insured as a lender/lessor under the insurance policy. The insurance policy was procured with the assistance of Palmer & Cay and the Heath Lambert Group.

On October 7, 2002, the aircraft, on its inaugural flight, crashed while landing at the Santa Cruz Airport, State of Rio do Sul, SSSC, Brazil. On board the aircraft were Luiz A.D. Ferreira, Jose Maria Gelsi, Robert Luiz Catao Martinesz, Julio Sergio Soares Barbosa, and Telmos Goes Barbosa was killed in the incident, and the other passengers sustained serious injuries.

#### B. USAIG Claims and Procedural History

USAIG filed the present action on February 5, 2003, and [*3] asserting the following claims for relief: (1) rescission of the policy as to both defendants alleging that Dwiggins and Bombardier made material misrepresentations during the underwriting process; (2) an order of invalidity as to each defendant on the basis of negligent misrepresentation during the underwriting process; and (3) declaratory judgment against defendant Dwiggins

Case 1:05-cv-00022-MPT    Document 10-16    Filed 03/17/2005    Page 11 of 13

Page 2
2004 U.S. Dist. LEXIS 266, *3

alleging that Dwiggins failed to comply with a condition precedent to coverage. (D.I. 1) BCI has counterclaimed for enforcement of its rights under the lender/lessor endorsement. (D.I. 5)

Service on Dwiggins was effected on June 3, 2003. (D.I. 16) On August 15, 2003, Dwiggins, in its first response to USAIG's complaint, filed the present motion to dismiss or, in the alternative, to stay the proceedings. (D.I. 42) On October 15, 2003, this court granted partial summary judgment to defendant BCI as to count one, except to the extent that Palmer & Cay may have been acting as an agent of BCI, and granted summary judgment to BCI with respect to count two. (D.I. 59, 60)

### C. Florida Litigation

On February 25, 2003, Dwiggins, American Virginia Tabacaos, Industrisa e Comercio, Importacaco e Exportacao de Tabacos [*4] Ltda ("American Virginia"), filed a complaint for declaratory relief and damages in the Circuit Court in and for Broward County, Florida. n1 Named as defendants in that case were United States Aviation Underwriters, Inc. ("USAU"), individually and as manager of USAIG, Palmer & Cay of Florida, LLC ("Palmer & Cay"), and BCI. Service was effected on USAIG on May 5, 2003. (D.I. 52, ex. B) Dwiggins's Florida complaint seeks the following: (1) declaratory relief against USAU as to the insurance policy's enforceability; (2) damages for breach of contract against USAU; (3) damages for negligence in the procurement of insurance against Palmer & Cay; (4) damages for negligent misrepresentation against BCI on the grounds that Dwiggins hired Telmos Goes as the pilot based on BCI's recommendations; n2 (5) damages for negligence against BCI with respect to Goes. Dwiggins and American Virginia's counsel in that case is also Steven C. Marks, who entered an appearance in this court on behalf of Dwiggins.

> n1 Dwiggins is a subsidiary of American Virginia formed for the purpose of purchasing the aircraft at issue.

[*5]

> n2 BCI has subsequently been dismissed from the Florida action on Dwiggins' motion for lack of joinder.

On March 17, 2003, the passengers on board the aircraft when it crashed ("the Florida Claimants") filed personal injury actions in the Circuit Court of Dade County, Florida against Dwiggins and American Virginia. Counsel to each of the Florida Claimants in each of the four cases is also Steven C. Marks. The Florida Claimants each have a relationship with American Virginia. Luiz A.D. Ferreira is the President and Principal of American Virginia. Jose Maria Gelsi is corporate counsel to American Virginia. Roberto Catao Martinez was an employee of American Virginia. Julio Sergio Soares Borbosa was also an employee of American Virginia.

Within two weeks of the filing of suits by the Florida Claimants, settlement agreements and assignments were entered into, in which Dwiggins assigned any rights against USAIG to the Florida Claimants, and final judgments were entered in the Dade County actions in favor of the Florida Claimants and against Dwiggins totaling $30 million. n3

> n3 USAIG alleges that it was not a party to the Dade County cases, was never given notice of their commencement, and had no knowledge of the pendency of the suits before they were settled. (D.I. 51 at 4)

[*6]

Following the settlement with Dwiggins, the Florida Claimants filed four suits against USAIG and Palmer Cay in Broward County, Florida, on May 14, 2003. The suits allege a count of breach of contract against USAIG and a negligence claim against Palmer & Cay. The attorney for the Florida Claimants in these judgment creditor cases is Steven Marks, attorney for defendant Dwiggins in the present case.

### III. STATEMENT OF LAW

#### A. Abstention Doctrine

It is well established that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them. See *Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716, 135 L. Ed. 2d 1, 116 S. Ct. 1712 (1996)*. That duty, however, is not absolute and where there are parallel proceedings in a state court, federal courts have substantial discretion to decline to hear the case in certain circumstances where equitable considerations, judicial economy, and principles of federalism warrant. n4 Id. The Supreme Court has continually construed the Federal Declaratory Judgment Act, *28 U.S.C. §§ 2201–02*, as an enabling act that grants discretion to the courts to entertain a case, rather than an absolute right [*7] to the litigants. See *Wilton v. Seven Falls Co., 515 U.S. 277, 286-87, 132 L. Ed. 2d 214, 115 S. Ct. 2137 (1995)*. Consequently, abstention may be warranted where a plaintiff has brought suit under § 2201, predicated under the court's subject matter jurisdiction, and a substantially similar proceeding is brought in state court. See *Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 86 L. Ed. 1620, 62 S. Ct. 1173*

2004 U.S. Dist. LEXIS 266, *7

*(1942).*

> n4 The first basis for federal abstention are those cases in which a constitutional issue may be mooted by a state court determination of state law issues. *Railroad Comm'n v. Pullman Co., 312 U.S. 496, 85 L. Ed. 971, 61 S. Ct. 643 (1941).* A second basis for federal abstention involves those cases where a federal court's review of difficult issues of state law would be disruptive to the state's efforts to establish coherent public policy. *Burford v. Sun Oil Co., 319 U.S. 315, 87 L. Ed. 1424, 63 S. Ct. 1098 (1943).* A third basis for federal abstention exists where federal jurisdiction is invoked for the purpose of restraining state criminal proceedings and in which there are claims of bad faith, harassment, or a patently invalid state statute. *Younger v. Harris, 401 U.S. 37, 27 L. Ed. 2d 669, 91 S. Ct. 746 (1971).*

[*8]

At the center of the court's inquiry is whether "questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court." *Brillhart, 316 U.S. at 495; Wilton, 515 U.S. at 282.* The Third Circuit has indicated that discretion is properly exercised where there are novel or unsettled issues of state law and where declining to hear the case would avoid duplicative and piecemeal litigation. See *State Auto Ins. Cos v. Summy, 234 F.3d 131, 134-35 (3d Cir. 2001).* Further, the Third Circuit has specifically noted that "the desire of insurance companies and their insureds to receive declarations in federal court on matters of purely state law has no special call on the federal forum." n5 *Id. at 136.*

> n5 The Third Circuit suggests three relevant considerations pertaining to a district court's exercise of discretion with respect to declaratory judgment actions involving insurance coverage issues:
> 1. A general policy of restraint when the same issues are pending in a state court;
> 2. An inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion;
> 3. Avoidance of duplicative litigation
>
> *Id. at 134* (quoting *United States v. Commonwealth of Pennsylvania, Dept. of Environmental Resources, 923 F.2d 1071, 1075-76 (3d Cir.*

*1991)).*

[*9]

**B. Joinder of Necessary and Indispensable Parties**

*Rule 12(b)(7)* provides for the dismissal of a claim where the plaintiff has failed to join an indispensable party. *Fed. R. Civ. P. 12(b)(7).* A court, in evaluating such a motion, applies the two-part test found in *Fed. R. Civ. P. 19.* The first part of this test asks whether the absent party is necessary for adjudication of the issue. The second part of the test is equitable in nature, and is directed to whether a necessary party is indispensable to a fair resolution of the issues. Id.

*Rule 19(a)* provides that an absent person is a necessary party if he is subject to service of process and in his absence either: (1) complete relief can not be accorded among the parties; or (2) the absent person claims an interest in the subject matter and that his absence will, as a practical matter, either prejudice his ability to protect that interest or result in multiple or otherwise inconsistent obligations. *Fed. R. Civ. P. 19(a).*

If a person is deemed necessary under *Rule 19(a),* the court must then ascertain the [*10] extent to which prejudice will result to the non-party; the ability of the court to shape relief to avoid prejudice to absent persons; adequacy of relief available to parties in the necessary party's absence; and the adequate remedy available to the plaintiff if the action is dismissed for nonjoinder. *Fed. R. Civ. P. 19(b).*

**IV. DISCUSSION**

Dwiggins contends that the court should exercise is discretion to not hear the case on the basis of the doctrine of federal abstention and because the USAIG has failed to join certain necessary indispensable parties. (D.I. 43) USAIG contends that abstention is not warranted because BCI is not present in the Florida litigation, and because the absent persons cited by Dwiggins are neither necessary nor indispensable. (D.I. 51)

**A. Parties Necessary for Adjudication**

The court concludes that the Florida Claimants are not necessary parties to the litigation within the meaning of *Rule 19(a).* First, the absence of the Florida Claimants does not affect the ability of the court to accord relief between the USAIG, Dwiggins, and BCI. See *Fed. R. Civ. P. 19(a)(1)* [*11]. Second, while the Florida Claimants hold a cognizable interest in the outcome of the litigation, they are not without means to protect that interest. See *Fed. R. Civ. P. 19(a)(2).* First, Dwiggins offers no reason why any of the Florida Claimants could not intervene in

2004 U.S. Dist. LEXIS 266, *11

the present case. Even if the court does not have personal jurisdiction to compel joinder, that is irrelevant to whether the Florida Claimants could intervene. Second, regardless of whether the Florida Claimants are formally joined as parties, all the facts presently before the court suggest that the Florida Claimants are capable of and are actively protecting their interests in this forum as evidenced by the fact that Dwiggins is represented by the same attorney that represents the Florida Claimants in the Florida litigation. Third, the close relationship between the Florida Claimants and Dwiggins is indisputable. Dwiggins was an entity created for the purpose of owning, financing and operating an aircraft to the benefit of American Virginia, the employer of each of the Florida Claimants. At least one of the Florida Claimants reportedly has an ownership interest in Dwiggins. [*12] Consequently, while they may not be joined as parties in the case before this court, there are no facts to suggest that their interests are anything but protected.

Dwiggins contends that a judgment in this court may not be preclusive as to the Florida Claimants. (D.I. 56 at 9-10) "Because they acquired their judgments against Dwiggins before this lawsuit was filed, the Florida Claimants are not privies of Dwiggins in this lawsuit." (Id at 10) Plaintiff's assertion is without factual support. In the present case, the Florida Claimants acquired their judgments against Dwiggins more than six weeks after this suit was filed. See generally 32 Fla. Jur. Judgments & Decrees § 183 (2003). Moreover, Florida law recognizes that even where a nonparty is not in privity, if they exercise de facto control over the litigation, any judgment will still have preclusive effect. Id. § 190. In the present case, the court concludes that the Florida Claimants are in fact exercising control over Dwiggins' defense. Consequently, the court concludes that the Florida Claimants are not necessary parties.

The court also concludes that the Wilmington Trust Company ("WTC") is not a necessary party. [*13] WTC's role in the transaction is that of an owner-trustee, which is a fiction used for purposes of the financing transaction, but does not cause WTC to be a real party in interest. Therefore, it need not be joined for the action to proceed nor would its joinder affect the jurisdiction of the court.

### B. Abstention

Mindful of its discretion in deciding whether to entertain the instant declaratory judgment, and of the considerations suggested by the Third Circuit in *Summy*, the court concludes that the facts of this case do not warrant abstention. Abstention is a narrow exception warranted only where the identical issues and parties are present in a concurrent state proceeding. *Quackenbush, 517 U.S. at 722-23*. In the present case, Dwiggins' motion fails because BCI is absent from the Florida litigation. Dwiggins cites no precedent for the proposition that a dismissal or stay may be granted only as to one defendant. Moreover, such a dismissal or stay would not serve the purposes of judicial economy and avoidance of duplicative and piecemeal litigation. See *Summy, 234 F.3d at 135*.

The court notes, however, that its decision is predicated upon [*14] the allegations and claims as they currently exist between the parties. In the event that USAIG's remaining claim against BCI is resolved before trial, then retaining jurisdiction over the case may no longer be warranted. For that reason, the court will deny the motion to dismiss or abate without prejudice.

### V. CONCLUSION

Therefore, at Wilmington, this 5th day of January, 2004, having reviewed the motion of defendant Dwiggins to dismiss the complaint or in the alternative to stay the action (D.I. 42), and USAIG's response thereto;

IT IS ORDERED that Dwiggins' motion to dismiss the complaint is **denied** and its motion to stay the action is **denied without prejudice.** (D.I. 42)

Sue L. Robinson

United States District Judge