# EXHIBIT D

LEXSEE 2003 US DIST LEXIS 24317

ROLF CRACKAU, DONALD COX, STEVEN DULAK, JOACHIM-CHRISTIAN GUMMICH, et al. on behalf of themselves and all similarly situated, Plaintiffs,-against- LUCENT TECHNOLOGIES, Defendant.

Civ. No. 03-1376 (DRD)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

2003 U.S. Dist. LEXIS 24317

November 24, 2003, Decided

NOTICE: [*1] NOT FOR PUBLICATION

DISPOSITION: Defendant's motion to transfer action to United States District Court for Western District of Texas granted. Defendant's motion to stay action and motion to dismiss denied.

LexisNexis(R) Headnotes

COUNSEL: For Plaintiffs: James A. Plaisted, Esq., Steven D. Grossman, Esq., WALDER, HAYDEN & BROGAN, P.A., Rosemand, New Jersey.

For Plaintiffs: Johnathan Auerbach, Esq., Neil Mara, Esq., BERGER & MONTAGUE, P.C., Philadelphia, Pennsylvania.

For Defendant: Charles F. Rysavy, Esq., J. Wylie Donald, Esq., McCARTER & ENGLISH, Newark, New Jersey.

JUDGES: Honorable Dickinson R. Debevoise, U.S.S.D.J.

OPINIONBY: Dickinson R. Debevoise

OPINION: DEBEVOISE, Senior District Judge:

Plaintiffs brought suit against Lucent Technologies, Inc. ("Lucent") for injuries they sustained or might sustain, allegedly due to exposure to Lucent's product. Lucent moved to transfer [*2] the case to the U.S. District Court for the Western District of Texas ("Texas District Court"), where a substantively identical case is pending. In the interests of judicial economy and efficiency, and for the convenience of all involved, the court grants Lucent's motion.

I. FACTUAL BACKGROUND

Named plaintiffs ("Plaintiffs") and proposed class members are members of the U.S. Armed Forces and the armed forces of other NATO countries who worked as radar technicians, radar operators, and radar mechanics for periods between 1958 through 1994. They claim that they suffer from or are at increased risk of developing diseases such as leukemia, lymphoma and brain cancer due to their exposure to ionizing radiation emitted by radar devices designed and/or manufactured or distributed by defendant Lucent. Plaintiffs allege that Lucent negligently designed and manufactured the radar devices, and failed to warn of the potential hazards of working with them. They seek certification of two classes, one of which requests injunctive relief and the other of which requests compensatory and punitive damages. n1

> n1 Specifically, Plaintiffs seek certification of (1) a "medical monitoring" class and (2) a "liability" class. The first class requests (a) the creation of a fund (to be administered by the court) to finance, *inter alia*, medical testing, preventive screening and independent scientific studies, and (b) an order that Lucent issue an emergency notice to potential class members informing them of the dangers and health risks posed by their work with the radar devices. The second class requests compensatory and punitive damages. Complaint at 24-25.

[*3]

II. PROCEDURAL HISTORY

Plaintiffs filed the instant action in the Superior Court of New Jersey, Law Division, Union County, in January, 2003. Lucent removed the action to this court on March 28, 2003. Plaintiffs moved to remand the action to New Jersey state court, but the court denied that motion, holding that removal was proper because the district court could legitimately exercise jurisdiction over Lucent pursuant to *28 U.S.C. § 1442* (federal officer jurisdiction) and *Article I, section 8, clause 17 of the U.S. Constitution*

(federal enclave jurisdiction). *Crackau, et al. v. Lucent Technologies, Civ. No. 03-1376, 2003 WL 21665135* at *5-6 (D.N.J. June 25, 2003).

## III. RELATED CASES

Two cases intimately related to this one were filed before this case was filed, and are currently pending in federal district courts in Texas and Massachusetts.

### A. The Texas Case

On October 8, 2002, several named plaintiffs ("Texas Plaintiffs") n2 filed suit ("Texas case") in Texas state court on behalf of themselves and all others similarly situated against Raytheon Company, General Electric Corporation, Honeywell International, [*4] Inc., ITT Industries, and ITT-Gilfillan Inc., as well as Lucent ("Texas Defendants"). They seek certification of identical classes as seek certification in this court, n3 and make similar claims against the named defendants as are made here against Lucent. Because the plaintiff class is the same in the Texas case and the instant case, Lucent is a defendant in both cases, and the allegations in both cases are substantively identical, the instant case is merely a "subset" of the Texas case.

> n2 The named plaintiffs in the Texas case are Bund zur Unterstuzung Radargeschadigter (a not-for-profit advocacy group that educates and advocates on behalf of radar operators, mechanics and technicians) and several individuals, none of whom is also a named plaintiff in the instant case.
>
> n3 Plaintiffs claim that "there is no overlap of any plaintiffs among the different actions," Plaintiffs' Brief in Opposition to Lucent's Motion to Transfer at 4, but this is clearly incorrect. The *named* plaintiffs are indeed different in the Texas case and the instant case, but the classes they purport to represent are identical. Compare Complaint initiating the Texas case at 34-35 and Complaint initiating the instant case at 24-25.

[*5]

The Texas Defendants removed the case to the Texas District Court. The Texas Plaintiffs moved to remand, but Magistrate Judge Garney recommended that the motion be denied on the ground that federal enclave jurisdiction was present. The District Court judge presumably took this recommendation because the Texas Defendants then moved to dismiss on *forum non conveniens* grounds. Magistrate Judge Garney recommended that the court grant the motion, but, on September 29, 2003, District Judge Martinez nevertheless denied the motion. n4

> n4 In his Order denying the Texas Defendants' motion to dismiss, Judge Martinez indicated that an Opinion discussing the denial was forthcoming, but that Opinion has not yet been issued.

### B. The Massachusetts Case

Still other named plaintiffs ("Massachusetts Plaintiffs") filed suit ("Massachusetts case") in Massachuetts state court against Raytheon Company on December 20, 2002. Like the Texas Plaintiffs, the Massachusetts Plaintiffs seek certification of the same classes [*6] as seek certification in this court, and make similar claims against Raytheon as are made against Lucent here. Raytheon removed to federal district court, and, on May 6, 2003, the Massachusetts Plaintiffs moved to remand. The court is unaware whether the Massachusetts district court has decided this motion.

## IV. DISCUSSION

Lucent asks the court to transfer this case to the Texas District Court where a substantively identical case is pending, or alternately to stay the action pending resolution of the proceedings in that court. Alternately, Lucent claims, the court should dismiss the case on *forum non conveniens* grounds because though the Texas District Court would be a *more* convenient forum for the resolution of these claims than this court is, Germany ultimately would be the *most* appropriate forum. Finally, Lucent moves to dismiss the case for failure to join the government of Germany, which it claims is an indispensable party.

Because of the strong private and public interests in ensuring that identical cases are tried in the same forum, the court grants Lucent's motion to transfer this case to the Texas District Court. The court does not reach the remaining [*7] motions.

### A. Sequence in which the court must consider Lucent's motions

In general, when a court is confronted with both a motion to dismiss on *forum non conveniens* grounds and a *§ 1404(a)* motion to transfer to another district court, it is appropriate for the court to consider the transfer motion first. Dismissal would be wrong where transfer was possible.

Under the common law doctrine of *forum non conveniens*, a district court may in its discretion *dismiss* an action – even if it has jurisdiction over the subject matter and parties, and venue is proper – when (1) an adequate

alternative forum is available and (2) "trial in the chosen forum would 'establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience,' or the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'" *Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241, 70 L. Ed. 2d 419, 102 S. Ct. 252 (1981)* (quoting *Koster v. American Lumbermens Mutual Casualty Co., 330 U.S. 518, 524, 91 L. Ed. 1067, 67 S. Ct. 828 (1947))*. Under federal statutory law, a district court may – for the convenience [*8] of parties and witnesses or in the interest of justice – *transfer* an action to any other district or division where it might have been brought in the first place. *28 U.S.C. § 1404(a)*. Section 1404(a) was enacted to avoid "the harshness of dismissal" when an alternate federal court forum is available. *Hoffman v. Blaski, 363 U.S. 335, 4 L. Ed. 2d 1254, 80 S. Ct. 1084 (1960)*. n5 Since the enactment of *§ 1404(a)* in 1948, the doctrine of *forum non conveniens* is applicable only in cases in which the alternate forum is *abroad*. *American Dredging Co. v. Miller, 510 U.S. 443, 448 n.2, 127 L. Ed. 2d 285, 114 S. Ct. 981 (1994)*; 17-111 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 111.71 (Mathew Bender 3d ed.).

> N5 See also *Norwood v. Kirkpatrick, 349 U.S. 29, 32, 99 L. Ed. 789, 75 S. Ct. 544 (1955)*; 111 MOORE'S FEDERAL PRACTICE § 111.71 (Matthew Bender 3d ed.). Before *§ 1404(a)*, a court could dismiss any case whose resolution where filed would cause convenience or "interests of justice" problems, regardless of whether the case could have been resolved by another district court without those problems. See *Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 91 L. Ed. 1055, 67 S. Ct. 839 (1947)* (upholding dismissal of action in New York district court when Virginia was more convenient forum). This was problematic not only because it "denied the plaintiff the generally accorded privilege of bringing an action where he [chose], but [also because it made] it possible for him to lose out completely, through the running of the statute of limitations in the forum finally deemed appropriate." *All States Freight v. Modarelli, 196 F.2d 1010, 1011 (3d Cir. 1952)*.

[*9]

Under typical circumstances, it is appropriate for the defendant to make *only* a *§ 1404(a)* motion to transfer *or* a motion to dismiss on *forum non conveniens* grounds because the alternate forum in question is *either* another district court *or* a foreign country. n6 In this case, it is possible at the outset that *both* a foreign tribunal *and* another U.S. district court is a more appropriate forum for this case than this court. Under these circumstances, the court should rule out the possibility that the action can be transferred before it considers whether to take the more radical action of dismissing the action for filing in a more convenient foreign forum. n7 See, e.g., *Yerostathis v. A. Luisi, Ltd, 380 F.2d 377, 379 (9th Cir. 1967)* (transfer, as opposed to dismissal, is appropriate "whenever the more convenient tribunal is a United States District Court ... but the federal courts retain the inherent power to refuse jurisdiction of cases ... which should have been brought in a foreign jurisdiction"); *Curiale v. Tiber Holding Corporation, 1995 U.S. Dist. LEXIS 11404, No. 94 Civ. 4770 (SS), 1995 WL 479474 at *2 (S.D.N.Y. Aug. 11, 1995)* (Sotomayor, J.) ("The [*10] enactment of *28 U.S.C. § 1404(a)* ... has superceded the common law doctrine of *forum non conveniens* insofar as transfer to another federal district court is possible. A dismissal for *forum non conveniens* is thereby warranted only when a weighing of all factors in favor of any possible domestic fora indicates that the case should have been brought abroad") (citations and internal quotations omitted); *Nun v. Telectronics Pacing Systems, Inc., 1994 U.S. Dist. LEXIS 9373, No. 93 Civ. 5434 (KMW), 1994 WL 361488 at *2 (S.D.N.Y. July 11, 1994)* (Wood, J.) (refusing to dismiss a case though "as between Canada and New York, Canada is the preferable forum" because "since the enactment of *28 U.S.C. § 1404(a)* ... the doctrine of *forum non conveniens* is inapplicable, and dismissal inappropriate, in cases in which transfer to another federal forum is proper").

> n6 As Judge Gibbons succinctly put it
>
>> The doctrine of *forum non conveniens* presupposes the existence of at least two forums in which the defendant is amenable to process ... If the two or more available forums are federal, *28 U.S.C. § 1404(a)* mitigates the possible harshness of the *forum non conveniens* rule by providing for transfer rather than dismissal. But where the other available forums are ... foreign the traditional *forum non conveniens* remedy of dismissal is appropriate.
>
> *DeMateos v. Texaco, Inc., 562 F.2d 895, 899 (3d Cir. 1977)*.

[*11]

> n7 This conclusion seems unavoidable given that *§ 1404* was intended to mitigate the harshness

of the common law *forum non conveniens* doctrine. Nevertheless, several courts in which defendants have moved for a *forum non conveniens* dismissal or, alternately, a § 1404 transfer, have considered the *forum non conveniens* motion first. See, e.g., victoria.com, Inc. v. Cott Beverages Canada, 239 F. Supp. 2d 377 (S.D.N.Y. 2003) (considering and granting motion to dismiss on *forum non conveniens* grounds and thus never addressing the motion to transfer); Alexander Proudfoot PLC v. Federal Insurance Co., Civ. A. No. 92-4384 (MLP), 1993 WL 739660 (D.N.J. Sept. 30, 1993) (considering and denying a motion to dismiss on *forum non conveniens* grounds before considering and granting a motion to transfer to the District Court for the Northern District of Illinois).

\*\*\*\*

Even if it were appropriate in general for a court to consider a *forum non conveniens* motion before a § 1404(a) motion, however, it might not be appropriate for this court to consider Lucent's *forum* [*12] *non conveniens* motion because the Texas District Court's denial of the Texas Plaintiffs' *forum non conveniens* motion might preclude it from doing so. Several courts have held, under the doctrine of issue preclusion, that one federal court's resolution of a *forum non conveniens* motion bars a second federal court in which the same action has been brought from considering an identical motion unless the relevant factors would weigh differently in the two courts (e.g., it would be more convenient to litigate the case in the second court in which the motion is brought than it was in the first court, which dismissed on *forum non conveniens* grounds). n8 In order for the Texas District Court's denial of the *forum non conveniens* motion *not* to have preclusive effect on this court's consideration of the motion, then, Plaintiffs would have to show facts demonstrating that New Jersey is a *less* convenient forum for this case than the Western District of Texas is. As the court holds that transfer is appropriate here, however, it need not even reach the question of whether its consideration of the *forum non conveniens* motion is precluded.

> n8 See *Pastewka v. Texaco, Inc.*, 565 F.2d 851, 853-854 (3d Cir. 1977) (New York district court's dismissal of case because England was a more logical forum than New York precludes Delaware district court from considering the *forum non conveniens* motion because no facts demonstrated that Delaware would be a more convenient forum than New York), *Mizokami Bros. of Arizona v. Mobay Chemical Corporation*, 660 F.2d 712, 716 (8th Cir. 1981) (Arizona district court's dismissal did not preclude Missouri district court from considering the *forum non conveniens* motion because "the contacts of the parties with Missouri, the availability of witnesses in Missouri and other relevant factors make the inquiry [in Missouri] distinct"); *Alexander Proudfoot v. Federal Insurance Company*, 860 F. Supp. 541, 544 (N.D. Ill. 1994) (court's *refusal* to dismiss on *forum non conveniens* grounds had no preclusive effect on later court's consideration because material facts underlying the judgment had changed so there was reason to grant the motion now that had not been clear earlier).

This rule appears to be potentially inconsistent with the principle – discussed above – that a court should not dismiss on *forum non conveniens* grounds if it was possible to transfer to another district court. If, as in Mizokami, facts exist which make consideration of an action more convenient in the second court (eradicating the preclusive effect of first court's *forum non conveniens* dismissal), this should indicate that the first court should have transferred in the first place rather than dismissed. Nevertheless, the rule is the law of this Circuit under Pastewka.

[*13]

## B. § 1404(a) Motion to Transfer

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of a transfer under § 1404(a) "is to avoid waste of time, energy and money and, in addition, to safeguard litigants, witnesses and the public against avoidable inconvenience and expense." *Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 449 (D.N.J. 1999). The burden of establishing the need for transfer rests with the movant. *Jumara v. State Farm Insurance Company*, 55 F.3d 873, 879 (3d Cir. 1995).

### 1. Jurisdiction Exists and Venue is Proper in this Court

The court may not transfer an action under § 1404(a) unless it itself has subject matter jurisdiction over – and is a proper venue for – the action. 17-111 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 111.14 (3d ed. 1997) (subject matter restriction required); *Osteotech, Inc. v. GenSci Regeneration Sciences, Inc.*, 6 F. Supp. 2d 349, 357 (D.N.J. 1998) (proper venue required). The court has [*14] already affirmed its own subject matter jurisdiction over this matter. *Crackau, et al. v. Lucent Technologies*, Civ. No. 03-1376, 2003 WL

*21665135* (D.N.J. June 25, 2003). The court need not consider whether it may exercise personal jurisdiction over Lucent for the purposes of deciding this motion to transfer, *Gehling v. St George's School of Medicine, Ltd., 773 F.2d 539, 544 (3d Cir. 1985)*; *U.S. v. Berkowitz, 328 F.2d 358, 361 (3d Cir. 1964)*, but nevertheless the court notes that it *does* have personal jurisdiction over Lucent, which is headquartered and does business in New Jersey. Because Lucent is subject to personal jurisdiction in this judicial district, the company "resides" here under *28 U.S.C. § 1391(c)*, n9 and venue thus properly lies in this forum.

> n9 *Section 1391(c)* provides that "for purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."

[*15]

### 2. The Case "Might Have Been Brought" in the Texas District Court

The court must next establish whether the instant case "might have been brought" in the U.S. District Court for the Western District of Texas (i.e., whether at the time the action was originally filed, the Texas District Court would have had subject-matter jurisdiction over the action and personal jurisdiction over the parties, and venue would have been proper). *Ricoh Co., Ltd. v. Honeywell, Inc., 817 F. Supp. 473, 487 (D.N.J. 1993)*. Lucent maintains that this should be a simple exercise because the case essentially *had* been brought in the Texas district court before the instant case was ever filed and that court accepted the case. Brief in Support of Lucent's Motion to Dismiss at 14.

Merely that the Texas District Court accepted the case, however, is not enough to confirm that the case against Lucent "might have been brought" in it for the purposes of *§ 1404(a)*. This is because the Texas District Court could have accepted the case in the absence of a basis for venue and personal jurisdiction so long as Lucent waived any objections. *FED. R. CIV. P. 12(h)(1)* [*16] n10 For the purposes of *§ 1404(a)*, however, the transferee court's right to exercise jurisdiction must exist independent of the defendant's wishes. *Hoffman v. Blaski, 363 U.S. 335, 343-44, 4 L.Ed.2d 1254, 80 S.Ct. 1084 (1960)* ("'If when a suit is commenced, plaintiff has a right to sue in that district independently of the wishes of defendant, it is a district where the action might have been brought. If he does not have that right, independently of the wishes of defendant, it is not a district where it might have been brought") (citations omitted); 15 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FRDERAL PRACTICE AND PROCEDURE § 3845 (2d ed. 1986) ("consent of defendant cannot cure defects with regard to venue or process in the proposed transferee forum"). For this reason this court must undertake an independent evaluation of whether the instant case might have been brought in the Texas District Court.

> n10 *Rule 12(h)(1)* provides that
>
> A defense of lack of jurisdiction over the person [or] improper venue ... is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.

[*17]

The Texas District Court could obviously have exercised subject matter jurisdiction over this action – as the court itself affirmed in its denial of the Texas Plaintiffs' motion to remand – because federal enclave jurisdiction was present under *Article I, section 8, clause 17 of the U.S. Constitution*. The Texas District Court likewise could have exercised personal jurisdiction over Lucent because the Texas Plaintiffs claim "a substantial portion of the events giving rise to this controversy occurred in Texas," n11 and Lucent, though it contested the proposition that Texas is the *best* venue for the case (arguing that that honor is reserved for Germany), concedes that Plaintiffs are correct. n12 As the court had personal jurisdiction over Lucent, venue would have been proper under *§ 1391(c)*.

> n11 Texas Plaintiffs' Complaint at 5 and Response and Brief in Opposition to Defendants' Motion to Dismiss the Complaint Pursuant to the Doctrine of *Forum Non Conveniens* at 1-2.
>
> n12 See, e.g., Brief in Support of Lucent's Motion to Dismiss at 19 ("the operative facts giving rise to the plaintiffs' claims occurred in places ... including Texas").
>
> Notably, this court has also written about events important for this action that occurred in Texas. *Crackau, et al. v. Lucent Technologies, Civ. No 03-1376, 2003 WL 21665135* at *3 (D.N.J. June 25, 2003) (discussing the acquisition of radar systems and the development of training programs for their use that occurred at Fort Bliss, Texas)

[*18]

### 3. The Convenience of the Parties & Witnesses and the Interests of Justice

Because the instant action might have been brought in the Texas District Court, the court must now determine whether transferring it there would be convenient and just. While there is "no definite formula" for making this determination under § 1404(a), courts generally look to a familiar list of private interests and public interests implicated by the potential of transfer. *Jumara, 55 F.3d at 879.* The private interests that courts weigh in this context include plaintiff's forum preference as manifested in the original choice, convenience to parties and witnesses, the location of evidence, and whether the claim arose elsewhere. The public interests that courts take into account include the interests in judicial efficiency and consistency, and the familiarity of the trial judge with the applicable state law.

Though courts weigh many factors in a § 1404(a) analysis, different factors are dispositive in different factual contexts. "A transfer analysis under *Section 1404* is a flexible and individualized analysis which must be made on the unique facts presented in each case... [*19] There is no rigid rule governing a transfer determination by a court; 'each case turns on its facts.'" *Lawrence, 56 F. Supp 2d at 450* (quoting *Lacey v. Cessna Aircraft Co., 862 F.2d 38, 43 (3d Cir. 1988)).* n13 In this case, the dispositive factor – as is often the case with transfer motions when a related case is pending in a different district – is the interest of all (parties, witnesses and the court) in avoiding wasteful duplication of efforts.

> n13 Lacey involved a motion to dismiss on *forum non conveniens* grounds. Despite the differences between § 1404(a) motions and motions to dismiss on *forum non conveniens* grounds discussed in Section IV(A), the inquiry for resolving these motions is generally the same and "courts routinely look" to the factors weighed in deciding a *forum non conveniens* motion for guidance in deciding a § 1404(a) motion. See *Lawrence, 56 F. Supp. 2d at 450 n 4.*

In *Continental Grain Co. v. Barge FBL-585,* the Supreme [*20] Court noted that "to permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to wastefulness of time, energy and money that 1404(a) was designed to prevent." *364 U.S. 19, 26, 4 L. Ed. 2d 1540, 80 S. Ct. 1470 (1960).* This court frequently has heeded this admonition and transferred a case to another forum when a related action was pending there. See, e.g., *Lawrence, 56 F. Supp. 2d at 453-55; Ricoh Co., 817 F. Supp. at 487; A.T. & T. v. MCI, 736 F. Supp. 1294, 1307-1308 (D.N.J. 1990); Todd Shipyards Corp. v. Cunard Line Ltd., 708 F. Supp. 1440 (D.N.J. 1989).* n14

> n14 This court has called the rule that a could should transfer a case under these circumstances the "related case doctrine." *A.T. & T., 736 F. Supp. at 1310.*

Because an identical case has been filed in another district, the central inquiry for the court is not – as it usually is in the context of motions to transfer [*21] – whether the case would be better litigated in one district or another. The case is already being litigated in Texas, and nothing the court decides here will change that fact. Thus, the sole question before the court is whether there exist adequate reasons for this action to be litigated twice (once here and once in Texas), as opposed to only once. The court concludes that there do not.

i. Private interests: convenience to witnesses and parties & location of evidence

The evidence in this case and the Texas case is identical. Transfer would thus create a logistically simpler reality for all those involved (witnesses, Plaintiffs and Lucent).

Transfer would clearly be more convenient for the witnesses who would have to offer the same testimony in two states if this action and the Texas action were allowed to proceed independently of each other. Transfer would also be more convenient for the plaintiff class and for Lucent because they are obliged (respectively) to prosecute and defend the case in El Paso anyway; if the court denied the motion to transfer, the parties would merely have to prosecute and defend it a second time in Newark. Nothing Plaintiffs argue mitigates these [*22] propositions.

The location of the relevant documents in this case does not weigh against transfer. Most of the documents and records relevant in this case, Lucent claims, are located in Germany. n15 It will already be inconvenient for Lucent to produce them in the United States; how much more inconvenient would it be for the company to have to produce duplicate copies of them in two different states?

> n15 Apparently, the only relevant documents that are in New Jersey are Lucent's own, and according to the affidavit of Charles F. Rysavy, an attorney at McCarter & English, Plaintiffs' counsel and counsel for Lucent have already agreed that Lucent will produce documents as images on computer

disks. As Lucent points out, "computer disks can be shipped at negligible cost to plaintiffs' counsel anywhere in the world, so the physical location of the hard copies of these documents is completely irrelevant" to this inquiry. Lucent's Reply Brief at 11. More importantly, the company is already obliged to produce documents relevant to this case in Texas so transfer would not create obligations for it that do not already exist.

[*23]

Plaintiffs claim that insufficient discovery has occurred for the court to know the location of most witnesses and evidence. It is true that while plaintiffs' class is on record as arguing that "if this controversy has a center ... it is Fort Bliss [Texas]," Texas Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss on *Forum Non Conveniens* Grounds at 23, Lucent has not produced an avalanche of evidence showing that relevant evidence exists in the Western District of Texas. However, under these specific circumstances – i.e., because the Texas case is already pending – the dispositive factor will not be the *location* of the evidence, but rather how many times the parties will have to produce it. Again, the choice before this court is not whether the case should proceed in Texas or New Jersey, but whether it should proceed once or twice. n16

> n16 Even if Plaintiffs could demonstrate that most of the relevant evidence and witnesses are in New Jersey, the public interest in allowing related or identical cases to be tried in the same forum would outweigh this demonstration. See, e.g., *AT.& T, 736 F. Supp at 1310* (noting that "this case raises a somewhat novel question: whether the public interests in transferring a case to a forum in which a related case is pending is sufficient to outweigh the private interest balance which does not favor transfer," and answering that question in the affirmative)

[*24]

The private interest that usually weighs most heavily against transfer is respect for the plaintiff's choice of forum. *Jumara. 55 F.3d at 879* ("in ruling on defendants' motion the plaintiff's choice of venue should not be lightly disturbed."). That factor is here offset by the costs of duplicative litigation. See *Lawrence. 56 F. Supp. 2d at 453*. n17

> n17 Even in the absence of the Texas case, Plaintiffs' choice of forum would not necessarily weigh heavily against transfer here, as the facts of this case are centered in Texas, not New Jersey. See *AT. & T., 736 F. Supp. at 1306* ("Where the operative facts of a lawsuit occur outside the forum selected by the plaintiff, that choice is entitled to less deference.").

### ii. Public Interest in Judicial Economy & Consistency

If these identical cases were allowed to proceed in both this court and the Texas district court, the U.S. court system – as well as the parties and witnesses – would be forced to spend [*25] Texas. The Court of Appeals noted in 1941

> In view of the constant increase in judicial business in the federal courts and the continual necessity of adding to the number of judges, at the expense of taxpayers, public policy requires us to seek actively to avoid the waste of judicial time and energy. Courts heavily burdened with litigation with which they must of necessity deal should therefore not be called upon to duplicate each other's work in cases involving the same issues and the same parties.

*Crosley Corporation v. Hazeltine Corporation, 122 F.2d 925, 930 (3d Cir. 1941)*. This is certainly at least as true today as it was in 1941.

Allowing this case and the Texas case to proceed independently would not only be costly, but also would create the possibility of inconsistent results. In the context of the "first filed rule," n18 the Court of Appeals has noted that "it is of obvious importance to all ... litigants to have a single determination of their controversy, rather than several decisions which if they conflict may require separate appeals to different circuit courts of appeals. Comity must serve as a guide to courts of equal jurisdiction to [*26] exercise forbearance to avert conflicts and to avoid 'interference with the process of each other.'" *E.E.O.C. v. University of Pennsylvania. 850 F.2d 969, 974 (3d Cir. 1988)*, cert. granted in part, *488 U.S. 992, 102 L. Ed. 2d 581, 104 L. Ed. 2d 173, 109 S. Ct. 1660, 109 S. Ct. 554 (1988)* (citations omitted).

> n18 The first filed rule "gives a court 'the power' to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court." *E.E.O.C. v. University of Pennsylvania, 850 F.2d 969, 971 (3d*

2003 U.S. Dist. LEXIS 24317, *26

*Cir)*, cert. granted in part, *488 U.S. 992, 102 L. Ed 2d 581, 104 L. Ed 2d 173, 109 S. Ct. 1660, 109 S. Ct. 554 (1988)*.

\*\*\*

Plaintiffs claim that Lucent's motion to transfer is predicated on the "first filed rule" which is grounded in equitable considerations, and that Lucent should not be allowed to avail itself of the rule because the company's motives are suspect. Specifically, Plaintiffs claim that the only reason Lucent urges the court to transfer this action to Texas is because it wants the case dismissed on *forum non conveniens* [*27] grounds, and the standard for a *forum non conveniens* dismissal is more relaxed in the Fifth Circuit than it is in the Third Circuit. Plaintiffs' Brief in Opposition to Lucent's Motion to Transfer at 41-43.

First, while Lucent's alternative motion to stay the action is predicated on the first filed rule, its transfer motion is *not* explicitly predicated on that rule. The public and private interests in avoiding duplicative litigation are sufficiently weighty under a *§ 1404(a)* analysis to justify granting Lucent's transfer motion; there is no need for the court to address the first filed rule, which is ordinarily applicable in the context of motions to enjoin or stay proceedings, rather than motions to transfer, anyway. n19 Second, and most importantly, even assuming Plaintiffs' characterization of Fifth and Third Circuit caselaw on *forum non conveniens* is accurate, their argument appears to be moot as the Texas District Court has *already denied* Lucent's *forum non conveniens* motion; indeed, it had done so before Plaintiffs submitted their brief. Thus, any argument that Lucent seeks transfer to Texas due to its hope that the court there will grant its *forum non* [*28] *conveniens* motion no longer makes sense. n20

> n19 The first filed rule allows courts to enjoin actions pending in other courts. See *Crosley, 122 F.2d at 927*; *E.E.O.C., 850 F.2d at 971*; *Martin v. Townsend, 1990 U.S. Dist. LEXIS 13955, Civ. No 90-2616 (CSF), 1990 WL 159923 at *4 (D.N.J. Oct. 15, 1990)*. Lucent asks this court to *transfer* the instant action rather than asking the Texas District Court to *enjoin* it.

> n20 In fact, only the opposite argument makes any sense. At this point, if Lucent truly wanted the case dismissed on *forum non conveniens* grounds, its only hope would be to attempt to keep the case in this court and urge that this court dismiss. (Of course even then, as discussed above, Lucent might not prevail as the Texas District Court's denial of the *forum non conveniens* motion might preclude this court from considering the renewed motion)

Instead, Lucent urges the court to transfer to Texas.

Plaintiffs also argue that the fact that the Texas District Court [*29] might have to apply New Jersey law with which it is unfamiliar to the claims against Lucent weighs against transfer. This fact does not affect the court's consideration, however, because if New Jersey law applies to the claims against Lucent, the Texas District Court will have to apply it whether or not this case is transferred because Lucent is a defendant in the Texas case.

### Conclusion

For the foregoing reasons, the court grants Lucent's motion to transfer to the United States District Court for the Western District of Texas. An appropriate order will be entered.

Dickinson R. Debevoise, USSDJ

Dated: November 24, 2003

### ORDER

This matter having been brought before this court on the motions of counsel for defendant Lucent Technologies, Inc. (1) to transfer this action to the U.S. District Court for the Western District of Texas or, in the alternative, to stay or, alternately to dismiss this action on *forum non conveniens* grounds, to (2) to dismiss this action for failure to join an indispensable party, and (3) for leave to file a reply brief in excess of fifteen pages; and having considered the motions and the grounds in support thereof; and good cause [*30] having been shown;

IT IS on this 24th day of November, 2003;

ORDERED that the defendant's motion to transfer this action to the U.S. District Court for the Western District of Texas is GRANTED; and the action shall be TRANSFERRED to the U.S. District Court for the Western District of Texas.

IT IS FURTHER ORDERED that defendant's motion to stay the action is DENIED;

IT IS FURTHER ORDERED that defendant's motion to dismiss on *forum non conveniens* grounds is DENIED;

IT IS FURTHER ORDERED that the motion to dismiss this action for failure to join an indispensable party is DEFERRED for resolution to the U.S. District Court for the Western District of Texas.

IT IS FURTHER ORDERED that the motion for leave to file a reply brief in excess of fifteen pages is DISMISSED as MOOT.

Honorable Dickinson R. Debevoise, U.S.S.D.J.

LEXSEE 2003 U.S. DIST. LEXIS 19495

Rexam, Inc., Plaintiff, v. United Steelworkers of America, AFL-CIO-CLC; International Association of Machinists & Aerospace Workers; United Steelworkers of America, AFL-CIO-CLC, Local 0188s; Waldo W. Slagerman, Marlene A. Rudolph, Steven J. Stolarski, Frank Kieswether, Larry Alford, George A. Kneifel, Gail J. Rearick, Dwayne L. Wilson, and Lloyd W. Erickson, Individually and as Representatives of Persons Similarly Situated, Defendants.

Civil No. 03-2998 ADM/AJB

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA

2003 U.S. Dist. LEXIS 19495; 31 Employee Benefits Cas. (BNA) 2562

October 30, 2003, Decided

**DISPOSITION:** [*1] Plaintiff's Motion to Enjoin Parallel Proceeding was granted, Defendants' Motion to Dismiss or In the Alternative to Transfer Venue was denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** Timothy E. Branson, Esq., Dorsey & Whitney LLP, Minneapolis, MN, and James P. McLoughlin, Jr., Esq., and Nicole L. Gardner, Esq., Moore & Van Allen PLLC, Charlotte, NC, appeared for and on behalf of Plaintiff.

Mark W. Bay, Esq., Peterson, Engberg & Peterson, Minneapolis, MN, and William T. Payne, Esq., Pittsburgh, PA, appeared for and on behalf of Defendants.

**JUDGES:** ANN D. MONTGOMERY, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** ANN D. MONTGOMERY

**OPINION:**

### MEMORANDUM OPINION AND ORDER

#### I. INTRODUCTION

Plaintiff's Motion to Enjoin a Parallel Proceeding [Docket No. 17], and Defendants' Motion to Dismiss or In the Alternative to Transfer Venue [Docket No. 16], were heard before the undersigned United States District Judge on September 25, 2003. Plaintiff Rexam, Inc ("Rexam" or "Plaintiff") seek to enjoin a parallel proceeding in the Northern District of Ohio that certain Defendants filed subsequent to Plaintiff filing this action in the District of Minnesota. Defendants move to dismiss Plaintiff's claim for lack [*2] of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Alternatively, Defendants move to transfer venue to the Northern District of Ohio. For the reasons explained below, the Court grants Plaintiff's Motion to enjoin a Parallel Proceeding and denies Defendants' Motion to Dismiss or to Transfer Venue.

#### II. BACKGROUND

Plaintiff Rexam is an aluminum beverage can manufacturer whose thousands of retirees reside in forty-eight states and in Puerto Rico. Approximately 100 retirees live in Minnesota. Reilly Aff. P 5. Rexam has plants throughout the country, including a facility in St. Paul, Minnesota with approximately 115 employees. Rexam and its predecessors have provided medical and life insurance benefits to qualifying retirees in plans based on labor agreements created between Rexam and labor unions United Steel Workers of America ("USWA") n1 and the International Association of Machinists & Aerospace Workers ("IAM"). Reilly Aff. PP 4-7.

> n1 "USWA" refers collectively to both the United Steelworkers of America, AFL-CIO-CLC, and to Local 0188s.

[*3]

In January 2002, Rexam changed the prescription drug benefit provisions of retirees' medical plans, raising out of pocket costs. USWA objected to the change and filed a series of grievances on behalf of retirees from December 2001 through April 2002. Id. PP 8-11, 14. Rexam and USWA representatives met in February 2002 and again in June 2002 but failed to resolve the issue. Id. PP 12, 13, 15. In August 2002, USWA's counsel sent Rexam a letter reiterating the discussions of the February

Case 1:05-cv-00022-MPT   Document 11-6   Filed 03/17/2005   Page 12 of 16

Page 2
2003 U.S. Dist. LEXIS 19495, *3; 31 Employee Benefits Cas. (BNA) 2562

meeting and suggesting that the USWA was contemplating legal action. Id. P 17, Ex. 9. The parties continued to exchange information regarding the retirees' medical benefits plans until October 2002, but did not reach an agreement. Payne Aff. P 6. While Rexam asserts its legal authority to amend benefits plans, USWA argues that any reduction in vested benefits violates both the individual plans and the underlying labor agreements. USWA claims further that the change to the plans is actionable under the Employee Retirement Income Security Act of 1974, *29 U.S.C. §§ 1001-1046* ("ERISA") As a violation of the labor agreements, USWA argues that the benefits change is also [*4] actionable under the section 301 of the Labor Management Relations Act ("LMRA"). See *29 U.S.C. § 185*; Compl. PP 24, 27 of Kieswether v. Rexam, Inc., Case No. 3:03-CV-7225 ("Kieswether Complaint") (Humphrey Aff. Ex. A).

On May 1, 2003, Rexam filed a Class Action Complaint for Declaratory Judgment [Docket No. 1] in the District of Minnesota. In an Amended Class Action Complaint filed on May 20, 2003 [Docket No. 3], Rexam asks the Court to determine whether Rexam may lawfully amend provisions in ERISA plans that provide retirees with medical benefits. *29 U.S.C. §§ 1001-1046*. Rexam also seeks a determination of whether amending such plans violates collective bargaining agreements under the LMRA § 301. *29 U.S.C. § 185*. n2 On May 8, 2003, Defendants USWA, Frank Kieswether and Larry Alford filed a class action complaint in the Northern District of Ohio raising the same issues as those in the instant Minnesota action.

> n2 While Rexam's Amended Complaint cites the National Labor Relations Act, *29 U.S.C. §§ 151-169* ("NLRA") as a basis for jurisdiction, the parties' briefs and oral arguments instead cite LMRA § 301. See *29 U.S.C. § 185*. Because LMRA § 301 is the proper statute for determining whether subject matter jurisdiction exists for some of Plaintiff's claims, the Court includes *LMRA § 301* in its analysis when pertinent.

[*5]

Payne Aff. P 7.

### III. DISCUSSION

Defendants now move to dismiss Plaintiff's action for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. See *Fed. R. Civ. P. 12(b)(1), 12(b)(6)*.

**A. Subject Matter Jurisdiction under the Declaratory Judgment Act**

Defendants argue first that Plaintiff cannot establish subject matter jurisdiction for its ERISA claims. Plaintiff counters that the Court has subject matter jurisdiction to decide its ERISA claims under the *Declaratory Judgment Act* ("DJ Act"). See *28 U.S.C. § 2201*; see also *Prudential Ins. Co. v. Doe, 76 F.3d 206, 210 (8th Cir. 1996)*.

The DJ Act is procedural only and does not, by itself, grant jurisdiction to the federal courts. See *Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240, 81 L. Ed. 617, 57 S. Ct. 461 (1937)*. Rather, the DJ Act provides an additional remedy in cases where jurisdiction already exists based on diversity or federal issues, and where there is an actual controversy between the parties. See *id. at 239-241*; [*6] see also *Skelly Oil v. Phillips Petroleum Co., 339 U.S. 667, 671-72, 94 L. Ed. 1194, 70 S. Ct. 876 (1950)*. In determining whether subject matter jurisdiction is present, federal courts have "regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question." *Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 19, 77 L. Ed. 2d 420, 103 S. Ct. 2841 (1983)*. Following this principle, federal courts have held that the DJ Act provides federal question jurisdiction in cases where insurers seek declaratory relief regarding ERISA-governed policies, since insurance recipients could bring coercive actions under ERISA. *Prudential, 76 F.3d at 210*; *Transamerica Occidental Life Ins. Co. v. Digregorio, 811 F.2d 1249, 1253 (9th Cir. 1987)*. n3

> n3 Defendants' argument concerning the Supreme Court's decision in *Textron Lycoming Reciprocating Engine Div. v. United Automobile, Aerospace & Agricultural Implement Workers, 523 U.S. 653, 140 L. Ed. 2d 863, 118 S. Ct. 1626 (1998)*, does cast some doubt on this principle. See *id. at 659-660 n.4*. However, as the comments in Textron were merely dicta, Prudential is still controlling law in the Eighth Circuit. See *Prudential, 76 F.3d 206, 210*.

[*7]

Subject matter jurisdiction over Plaintiff's ERISA claims is established by the DJ Act and Prudential. See *28 U.S.C. § 2201*; *Prudential, 76 F.3d at 210*. Similar to the insurance recipient in Prudential, the retirees here could and in fact have asserted a coercive action under ERISA in federal court. See Kieswether Compl. (Humphrey Aff. Ex. A); Payne Aff. P 2. This is the same underlying coercive action addressed in Prudential, one that "necessarily

2003 U.S. Dist. LEXIS 19495, *7; 31 Employee Benefits Cas. (BNA) 2562

presents a federal question" as articulated in *Franchise Tax Board Franchise Tax Bd.*, *463 U.S. at 19*; *Prudential. 76 F.3d at 210*. Therefore, Plaintiff has established subject matter jurisdiction for its ERISA claims. n4

> n4 Because subject matter jurisdiction for Plaintiff's ERISA claims exists based on the DJ Act, the Court need not determine whether jurisdiction is independently created by ERISA itself.

### B. Courts' discretion to dismiss declaratory judgment claims

Defendants' [*8] second argument is that the Court, in its discretion, should dismiss Plaintiff's claims even after finding that subject matter jurisdiction exists. District courts possess discretion in deciding whether and when to hear claims under the DJ Act "even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, *515 U.S. 277, 282, 132 L. Ed. 2d 214, 115 S. Ct. 2137 (1995)*. District courts are not obligated to assume jurisdiction of declaratory judgment actions and may stay or dismiss such claims in their discretion. *Id. at 288*. In exercising this discretion, district courts weigh several factors. These include whether the declaratory judgment action was brought as a wrongful preemptive strike or as an attempt at forum shopping. See *Verizon Communications, Inc. v. Inverizon Int'l, Inc. 295 F.3d 870, 874-75 (8th Cir. 2002)*; *BASF Corp v. Symington. 50 F.3d 555. 558 (8th Cir. 1995)*. Where there are two actions pending, a court should consider whether they involve the same parties and issues, if they raise questions of federal law, whether one is a parallel state proceeding, and [*9] when the actions were filed. See *Wilton, 515 U.S. at 282, 290*; *Brillhart v. Excess Ins. Co., 316 U.S. 491, 494-95, 86 L. Ed. 1620, 62 S. Ct. 1173 (1942)*; *Verizon Communications. Inc. 295 F.3d at 873-74*.

An analysis of these factors lead to a conclusion that dismissal is not warranted in this case. First, the record does not suggest that Rexam filed this action as an improper preemptive strike. The record shows Rexam initiated this proceeding in May 2003, several months after its final communication with Defendants regarding a possible lawsuit. A letter dated August 2002 was the last correspondence that directly referenced litigation. However, the letter does not state that litigation is imminent but invites Rexam to "amicably discuss" the health insurance rate changes. Reilly Aff. Ex. 9. Rexam sent Defendant USWA documents concerning retiree health benefits in October 2002, but it does not appear that the parties discussed litigation specifically at this time. Payne Aff. Ex. 1. Further, Rexam had previously given USWA these documents on several occasions. Reilly Aff. P 18. Thus, this additional request would not have alerted Rexam of [*10] impending litigation. Even construing the October 2002 exchange as anticipating litigation, Rexam did not file a complaint until May 1, 2003 — several months later. While Defendants USWA and certain retirees filed the Ohio lawsuit only days after the Minnesota filing, there is no evidence suggesting that Rexam knew of Defendants' litigation strategy and rushed to file in Minnesota.

The record also shows that Rexam possessed a strong interest in initiating litigation beyond simply thwarting Defendants' choice of forum. Rexam desires clarification about its ability to amend healthcare plans since several retirees have filed individual grievances contesting reduced benefits. These proceedings have been repetitious and costly, and there is a likelihood of continued similar litigation. Reilly Aff. PP 8-11, 14. Additionally, because Rexam's legal authority to amend benefits plans is challenged, it must either maintain the status quo or face possible litigation from any changes. Plaintiff must also include a seventy-nine million dollar liability on its balance sheet for retiree benefits. In Plaintiff's view, this liability lowers its stock value and impairs its ability to obtain financing. [*11] Am Compl P 31. Thus, the record does not support the argument that the case at bar is a "calculated maneuver" aimed at denying USWA and retirees, as "natural plaintiffs," their "traditional right to choose the forum and time of suit." See *BASF. 50 F.3d at 557-558*.

Similarly, there is little evidence that Plaintiff engaged in forum shopping by filing in Minnesota. While Plaintiff has offices in both Chicago and Charlotte, former retirees dwell in forty-eight states and in Puerto Rico, including over 100 retirees who live in Minnesota. Payne Aff. P 8; Reilly Aff. P 5. Given Plaintiff's contacts to fora throughout the country, there is no suggestion that filing suit in Minnesota is any more arbitrary than bringing suit in one of the other forty-seven states where retirees reside. Plaintiff's St. Paul, Minnesota plant that employs 115 people provides a second link to Minnesota. Reilly Aff. P 4. Because Plaintiff's choice of forum, at least in part, is based on legitimate connections to Minnesota, this factor also favors retaining Plaintiff's declaratory judgment action in Minnesota.

Courts must consider additional factors when there are two actions pending. These include [*12] whether one suit is a parallel state proceeding, if the actions raise questions of federal law, if they involve the same parties and issues, and when the actions were filed. See *Wilton. 515 U.S. at 282. 290*; *Brillhart, 316 U.S. at 494-95*; *Verizon Communications, Inc. 295 F.3d at 873-74*. Starting with factors one and two, courts have greater

Case 1:05-cv-00022-MPT    Document 11-6    Filed 03/17/2005    Page 14 of 16

Page 4
2003 U.S. Dist. LEXIS 19495, *12; 31 Employee Benefits Cas. (BNA) 2562

discretion to stay or dismiss declaratory judgment claims when there is a parallel state proceeding, or when there are no federal questions raised. See *Wilton*, 515 U.S. at 290; *Verizon*, 295 F.3d at 873-75. Here, Defendants filed claims premised on ERISA and the LMRA in federal district court in Ohio. Because both lawsuits are in federal courts and raise federal questions, the Court has less discretion to dismiss Plaintiff's Minnesota lawsuit. Therefore, these factors weigh against dismissal.

The Court must next consider whether the Ohio and Minnesota lawsuits involve the same parties and legal issues. If the parties litigate the same questions in two federal jurisdictions, dismissal of one action may be warranted for reasons of judicial economy and practicality [*13] See *Wilton*, 515 U.S. at 288; *Verizon*, 295 F.3d at 873. In this case, the Ohio and Minnesota actions both address the same issues—namely whether reductions in benefits violate retirees' health care plans and labor agreements. The two actions do not involve the same parties however, because Defendant IAM and its retirees are not plaintiffs in the Ohio case. See Kieswether Compl. (Humphrey Aff. Ex. A). Thus, this factor is essentially neutral and neither supports nor disfavors dismissal.

The last factor is when the two actions were filed. Because the parties filed nearly identical cases in different federal courts, the Court must include the first-filed rule in its analysis. When parties file substantially similar lawsuits in two venues, the first-filed rule gives priority to the venue chosen by the party who first establishes jurisdiction in order to conserve judicial resources and avoid conflicting rulings. *Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1006-07 (8th Cir. 1993). The rule however, "yields to the interests of justice," and will not be applied where a court finds "'compelling circumstances' supporting [*14] its abrogation." *Id.* at 1006 (citations omitted). The Northwest court noted two red flags that may signal compelling circumstances. They include whether the plaintiff in the first action had notice that the defendant was considering filing suit, and whether the first-filed action seeks declaratory relief. *Id.* at 1007.

In the present case, Plaintiff Rexam filed its action in Minnesota seven days before Defendants filed their action in Ohio. Payne Aff. P 7. Based on the first-filed rule, this fact weighs against dismissing the Minnesota action unless compelling circumstances dictate otherwise.

Both red flags highlighted in Northwest are present in this case. First, like the plaintiff in Northwest, Rexam had notice that Defendant USWA was considering litigation. Similar to the facts in Northwest however, USWA and Rexam's correspondence did not suggest that litigation was imminent. *Northwest Airlines*, 989 F.2d at 1007; Reilly Aff. Ex. 9; see discussion supra p. 6. The record shows that Defendants mentioned litigation as a possibility, but preferred a non-litigious resolution. Reilly Aff. Ex. 9. Further, Rexam [*15] did not file suit until six months after the parties' last communication. While USWA filed its complaint in Ohio only seven days after the Minnesota suit was filed, unlike the six week gap between filings in Northwest, nothing in the record reveals that Rexam secretly learned of USWA's plans and consequently rushed to file first in Minnesota. *Northwest Airlines*, 989 F.2d at 1007; see discussion supra p. 6.

USWA and its retirees were undoubtedly preparing their complaint before Rexam filed, but this does not mean that Rexam knew of USWA's impending suit, as the parties had not communicated for six months. Payne Aff. P 7. Rexam's actions here are markedly different from the plaintiff's in *Anheuser-Busch, Inc. v. Supreme Int'l Corp.*, 167 F.3d 417 (8th Cir. 1999), where Anheuser, the plaintiff in the first-filed case, initiated a lawsuit eight days after receiving a cease and desist letter from the defendant that explicitly threatened litigation unless Anheuser responded in five days. *Id.* at 418-19. Therefore, that Rexam was on notice of possible litigation does not present a compelling circumstance in this case.

The second [*16] red flag raised in Northwest is also present here as Plaintiff's action is for declaratory judgment. *Northwest Airlines*, 989 F.2d at 1007. As expressed in Northwest, "such an action may be more indicative of a preemptive strike than a suit for damages or equitable relief." *Id.* Like the plaintiff in Northwest however, Rexam has outlined several reasons why declaratory judgment is necessary in this case. See discussion supra pp. 6-7. Rexam has faced a series of grievance proceedings since reducing retiree benefits and needs direction to assess if it risks liability for any current or future changes. Rexam also has financial concerns about providing benefits at their current level. *Id.* Thus, Rexam has not acted in bad faith or "raced to the courthouse" to preempt USWA's Ohio lawsuit. See *Northwest Airlines*, 989 F.2d at 1007, n5

> N5 The Northwest court considered other factors as well, such as whether the lawsuits raised the same issues, and whether one venue was a more convenient forum. The presence of the same issues in both cases favors applying the first-filed rule. *Id.* As noted on page 8 of this Order, the Minnesota and Ohio cases involve the same issues which favors adherence to the rule. See discussion supra p. 8. The Order addresses the convenience of venue issue infra pp. 13-14.

[*17]

Case 1:05-cv-00022-MPT    Document 11-6    Filed 03/17/2005    Page 15 of 16

Page 5
2003 U.S. Dist. LEXIS 19495, *17; 31 Employee Benefits Cas. (BNA) 2562

The factors outlined above disfavor dismissal of Plaintiff Rexam's declaratory judgment action. Plaintiff neither initiated litigation as an improper preemptive strike nor engaged in forum shopping. Additionally, there is no parallel state proceeding and the case raises federal questions. Finally, Plaintiff filed its action first, and there are no compelling circumstances present that warrant an exception to the first-filed rule. Therefore, the Court, in its discretion, will retain jurisdiction of Plaintiff's case.

### C. Ripeness of the IAM Claims

Defendants' next argument is that Plaintiff's claims against the IAM class should be dismissed on ripeness grounds because IAM retirees have not lost any vested benefits. In order for a court to issue a declaratory judgment, the complaint must present an actual controversy within the meaning of the DJ Act. *Lake Carriers' Ass'n et al v. MacMullian et al.*, 406 U.S. 498, 506, 32 L. Ed. 2d 257, 92 S. Ct. 1749 (1972). This means "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 85 L. Ed. 826, 61 S. Ct. 510 (1941)) [*18] Determining whether the complaint contains an abstract question or an actual controversy requires careful analysis of a case's particular facts, as the difference between the two is "necessarily one of degree." See *Maryland Cas. Co.*, 312 U.S. at 273.

While there is not a precise test for deciding when a controversy exists, courts should examine "the fitness of the issues for judicial decision" and the "hardship to the parties of withholding court consideration." *Neb. Pub. Power Dist. v. Midamerican Energy Co.*, 234 F.3d 1032, 1038 (8th Cir. 2000) (citations omitted). This analysis contains several factors including the following: (1) the hardship to the plaintiff by delaying review; (2) whether the plaintiff's claim is focused; (3) whether further factual development would benefit the court; and (4) whether the claim rests upon "contingent, future events that may or may not occur as anticipated." *Texas v. United States et al.*, 523 U.S. 296, 300, 140 L. Ed. 2d 406, 118 S. Ct. 1257 (1998) (holding that a claim is not ripe if based on contingent future events); *Nat'l Right to Life Political Action Comm. et al v. Connor et al*, 323 F.3d 684, 692-694 (8th Cir. 2003). [*19] Courts normally resist adjudicating disputes that are contingent in part on future events. There is an exception however, if the claim presents chiefly legal issues or where judicial resolution will largely settle the lawsuit. *Midamerican*, 234 F.3d at 1038.

The IAM claims are ripe based on the factors outlined above. Starting with the hardship prong, harm includes "the heightened uncertainty and resulting behavior modification that may result from delayed resolution." *Id.* Though IAM states that the current change to prescription drug benefits is permissible since it affects an optional feature in the IAM retirees' plan, IAM contests whether Plaintiff can freely alter vested benefits. McGarry Dec PP 7, 10 (Payne Aff. Ex. 2); Humphrey Aff. of 8/21/03, Exs. 2-3. Further, several individual IAM retirees have complained that the change violates their rights. Evans Aff. Exs. 1-2; Werner Aff. P 4. Even assuming that the current change complies with the IAM retirees' healthcare plan, Plaintiff is unsure whether it can legally amend other plan provisions. This in turn hinders Plaintiff's ability to effectively administer benefits programs. Plaintiff faces a second harm [*20] because it must maintain a seventy-nine million dollar liability on its balance sheet to cover retiree benefits. Plaintiff cannot lower this amount unless it reduces retirees' benefits, an action that IAM and its retirees would likely oppose. Am. Compl. P 31; Humphrey Aff. of 8/21/03, Exs. 2-3.

The IAM claims also present issues fit for judicial review. Conceding that the claims may rest in part upon the assumption that Plaintiff will change plans in the future, other factors favor adjudication now. First, Plaintiff's claim is focused. Plaintiff straightforwardly asks the Court to determine whether it can amend retirees' healthcare plans. Am. Compl. at 18. Second, further factual development will not benefit the Court because this claim involves interpreting the language in the retirees' benefits plans, a question of law. The court in Midamerican faced the same issue, contract interpretation, and held that the plaintiff's claim was ripe even though the disputed contractual provisions would not take effect, if at all, until nearly three years later. 234 F.3d at 1039. The court reached this holding because the case presented chiefly legal issues that did not require [*21] additional factual development. *Id.* In the case at bar, the facts in their current form will sufficiently guide the Court in resolving Plaintiff's purely legal claim. Finally, like the Midamerican case, judicial resolution of this matter will "largely settle the parties' suit" because after adjudication Rexam will know whether it can amend plans. Id. Because the issues presented are well posited for judicial decision, and because Plaintiff faces hardship from delayed review, the Court will adjudicate Plaintiff's IAM claims.

### D. Transferring Venue to the Northern District of Ohio

In the alternative, Defendants move to transfer venue to Toledo in the Northern District of Ohio. Courts should transfer venue based on the convenience of the parties and witnesses, and in the interests of justice. *28 U.S.C. § 1404(a).* The analysis is not limited to these factors however, but requires a case-by-case evaluation of all relevant

Page 6

2003 U.S. Dist. LEXIS 19495, *21; 31 Employee Benefits Cas. (BNA) 2562

circumstances. See *Terra Int'l, Inc. v. Miss Chem Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). The party seeking transfer bears the burden of proving that a transfer is warranted, as courts normally defer to the [*22] plaintiff's choice of forum. *Id. at 695.*

In the present case, Defendants have not shown that Ohio is a superior forum. Beginning with the convenience to the parties, none of the parties is based in Toledo, Ohio. Plaintiff has offices in Chicago and Charlotte, but Minneapolis is easily accessible by air travel. Plaintiff states further that while Toldeo is actually closer to its offices based on mileage, traveling there is less convenient because there are fewer direct flights. Beirne Aff. P 5. Defendant Unions are based in Washington, D.C. and Pittsburgh and can also readily fly to Minneapolis Id. P 6. As Defendants would still be forced to travel hundreds of miles to litigate in Toledo, transferring venue will not be appreciably more convenient. Payne Aff. P 8.

Defendants have also not illustrated that Ohio is a more convenient forum for the witnesses. Defendants do not name specific witnesses with any certainty, but suggest that they may call retirees who reside in Pittsburgh and Toledo. Id. P 9. Given that retirees reside in forty-eight states and Puerto Rico, however, including over 100 who live in Minnesota, Defendants have not proven that Toledo is [*23] the more convenient venue.

The interests of justice likewise do not favor transferring venue to Toledo. As explained in detail above, Plaintiff did not file this action as an improper preemptive strike. Plaintiff instead has legitimate concerns about whether it can amend retiree benefit plans. Further, Plaintiff has multiple contacts with Minnesota which suggests that Plaintiff's choice to litigate here was premised on something more than flagrant forum shopping. Certain Defendants have filed a separate action in Ohio, but this was filed after Plaintiff brought its Minnesota claim. As explained above in the first-filed analysis, there are no compelling circumstances present that justify dismissing Plaintiff's claim. Transferring venue to the Northern District of Ohio, therefore, is not warranted based on the interests of justice. Because neither the convenience nor justice factors supports transfer, the Court denies Defendants' Motion.

### E. Plaintiff's Motion to Enjoin the Parallel Proceeding in Ohio

The final issue presented is Plaintiff's Motion to enjoin the parallel Ohio action. Plaintiff asks the court to grant an injunction that will stop Defendants from proceeding with [*24] their subsequently filed lawsuit in the Northern District of Ohio. Because the Minnesota and Ohio suits present the same factual and legal issues, the Court must apply the first-filed rule unless compelling circumstances dictate otherwise. *Northwest Airlines, 989 F.2d at 1006-07.* As discussed in detail above, no compelling circumstances justify an exception to the first-filed rule in this case. See discussion supra pp. 8-10. Therefore, the Court grants Plaintiff's Motion to enjoin the Ohio action.

### IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion to Enjoin a Parallel Proceeding [Docket No. 17] is **GRANTED,** and

2. Defendants' Motion to Dismiss or In the Alternative to Transfer Venue

[Docket No. 16] is **DENIED.**

BY THE COURT:

ANN D. MONTGOMERY

UNITED STATES DISTRICT JUDGE

Dated: October 30, 2003.