## NATURE AND STAGE OF PROCEEDINGS

This case involves a fatal auto accident that occurred on June 18, 2001.  Yan Thou,

individually and as the administrator of the estates of Oeurn Mam and Navy Yan and Chan Yan,

Thuha Son, Chieu Thi Huynh filed a lawsuit for damages for personal injuries against Maly Yan

in the Court of Common Pleas of Philadelphia County on June 11, 2003 captioned as Thou et al.

v. Yan Docket No. 030601508.  See Plaintiffs' Complaint Attached as Exhibit "A."[1]

In addition to the above action filed against Maly Yan, the fatal June 18, 2001 accident

gave rise to several other lawsuits filed against Maly Yan and other Defendants by both Maly

Yan and other Plaintiffs.  Originally, there were five (5) other cases which have been filed on

behalf of persons injured in this accident, all filed in the Court of Common Pleas of Philadelphia

County.  All of these cases contain allegations that Maly Yan was working in the course and

scope of her employment with Pack and Process at the time of the accident.   These cases were

consolidated for all purposes with the Yan Thou case by Order of court[2] dated February 21, 2003.

That entire consolidated action was eventually dismissed from the Court of Common Pleas of

Philadelphia County with leave to re-file the actions in Delaware (the Superior Court of

Pennsylvania affirmed the trial court's decision to grant Defendants' *forum non conveniens*

motion).

One action filed against Maly Yan was never consolidated and proceeded to trial on

January 14, 2005, against only defendant Maly Yan before the Honorable Sandra J. Moss, sitting

---

[1]The June 18, 2001 accident gave rise to several other lawsuits filed against Maly Yan and other
Defendants by both Maly Yan and other Plaintiffs.

[2]Unchalee Vong, Et al v. Maly Yan ,et al., Kusti Leman, et al. v. Maly Yan, et al., Bay Thi Nguyun v. First
Fleet Corp, et al., Zair Shah, et al. v. Maly Yan, et al.

without a jury[3].  The trial was concluded on January 20, 2005, and a verdict in favor of all

Plaintiffs and against Maly Yan was entered in the total amount of $10,228,467.00.  The

disposition of that one action (which does not include all Plaintiffs-who have a right to a jury

trial on all issues, including Maly Yan's agency-or all Defendants) gave rise to the instant

declaratory judgment actions that were consolidated on August 24, 2005, to determine whether

Maly Yan was an agent of Pack and Process and was acting in the course and scope of her

employment with Pack and Process or performing a duty related to the conduct of Pack and

Process business[4] while transporting employees to and from the Pack and Process factory on the

date of the fatal accident.  The Defendants' declaratory judgment action requests that this Court

make five (5) declarations:

> 1.    On June 18, 2001, Maly Yan was an agent/employee of Pack and Process and was acting in the course and scope of her employment with Pack and Process while transporting employees to and from the Pack and Process factory.

> 2.    On June 18, 2001, Maly Yan was performing a duty related to the conduct of Pack and Process's business while transporting employees to and from the Pack and Process factory.

> 3.    Pack and Process is responsible to pay the entire judgment imposed upon Maly Yan in the matter of <u>Yan Thou et.al. v. Maly Yan</u>, June Term 2003 No.1503 (less payment from St. Paul, as the insurance carrier for Pack and process).

> 4.    St. Paul, as the insurance carrier for Pack and Process is responsible to pay for Maly Yan's actions in the matter of <u>Yan Thou et.al. v. Maly Yan</u>, June Term, 2003 No.1503, in the amount of the verdict imposed upon Maly Yan, on January 20, 2005, up to and including their policy limits, for negligent acts performed by her while working as

---

[3]Counsel for Pack and Process was given notice of this trial in Pennsylvania, but declined to intervene or participate choosing instead to sit in the public gallery during the proceedings.

[4]St. Paul's insurance contract with Pack and Process provides coverage for employees and volunteer workers for "work done within the scope of their employment by (Pack and Process); or their performance of duties related to the conduct of (Pack and Process) business."  <u>See</u> copy of St. Paul's General Liability Policy Pg. 6; Umbrella Excess Liability Policy Pg. 7, covering Pack and process attached as Exhibit "B."

an agent/employee of Pack and Process on June 18, 2001.

       5.     For such other and further relief as to this court may seem just and proper.

<u>See</u> Defendants' Declaratory Judgment Action attached hereto as Exhibit "C." D.I. 05-00513, No. 17.

## SUMMARY OF ARGUMENT

Defendant Maly Yan was given actual authority to act on behalf of Pack and Process and to transport employees to and from the Pack and Process Factory. The creation of this "actual authority" arises out of a conversation between Maly Yan and her Pack and Process supervisor, Sterling Newsome. As a result of the words and conduct of Mr. Newsome, Maly Yan was caused to "reasonably determine" that Pack and Process (the principal) wished her (the agent) to act on Pack and Process's behalf in transporting employees to and from the factory on the day of the June 18, 2001, accident. Sterling Newsome was a production manager for Pack and Process and his actions bind Pack and Process to his representations. All parties that have given testimony are in agreement as to the content of the conversation between Mr. Newsome and Maly Yan. Therefore, no issue of material fact exists that Maly Yan was acting on behalf of Pack and Process in transporting employees to and from the factory, working within the course and scope of her employment and performing duty related to the conduct of Pack and Process's business and Defendants are entitled to judgement as a matter of law.

Pack and Process and its insurance carrier, St. Paul are responsible and liable for the actions of Maly Yan on June 18, 2001. Accordingly, Pack and Process and St. Paul are responsible to pay the entire judgment imposed upon Maly Yan in the matter of Yan Thou et.al. v. Maly Yan, June Term, 2003, No.1503. No issue of material fact exist and the Defendants are entitled to judgment as a matter of law as to all of the declarations requested in the Defendants' Declaratory Judgment Action and Summary Judgment should be granted.

## STATEMENT OF FACTS

On or about June 18, 2001, Yan Thou, Oeurn Mam, Navy Yan, Chan Yan, Thuha Son, Chieu Thi Huynh, Bay Thi Nguyen, Uchalee Vong, Donkeo Phravichit, Kusti Leman, Lani Chandra, Zair Shah, Khan Gul, Mohammed Azim, Lang Khem and Lam Khem were returning from work at Pack and Process and were passengers in a 1992 Dodge Ram Van, bearing Pennsylvania license plate No. DZK8292, traveling northbound on I-495 toward Philadelphia. The 1992 Dodge Ram van was owned and operated by Maly Yan, who, twice under oath, admitted to acting as the agent of Defendant Pack and Process in transporting nineteen passengers in the van back and forth to the Pack and Process factory in New Castle, Delaware. Eighteen of the passengers were contract workers supplied by Lam to work at Pack and Process, and were transported by Maly Yan, acting as the agent of Pack and Process, from their neighborhood in Philadelphia to work at the Pack and Process facility in New Castle, Delaware, and back again to Philadelphia at the end of the work day.

At around 4:50 p.m. on June 18, 2001, Maly Yan attempted to drive the 1992 Dodge van past a Motiva tractor-trailer driven on northbound I-495. At this time, the 15 passenger van was carrying nineteen passengers[5]. At about 3.4 miles north of Wilmington, the operator of the tractor trailer steered the tractor-trailer close to the van so as to make it unsafe for Maly Yan to operate the van and thereby created a dangerous roadway condition. Maly Yan also negligently lost control of the van and swerved into the tractor-trailer. The van careened off of the left edge of the road and over a median strip and rolled over several times, causing severe injuries to all of

---

[5]The van was dangerously overloaded because of the acts and omissions of Pack and Process. Plaintiffs' Complaint ¶ 39(h). This is the basis for direct (non-vicarious) claims of Pack and Process's liability for damages that were brought by the injured Plaintiffs' and decedents' estates. Plaintiffs' Complaint Count III.

the occupants of the van, and killing Navy Yan, Oeurn Mam, Mohammed Azim, Lang Khem and Lam Khem.

**ARGUMENT**

## I.    THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there are no genuine issues of material fact, and the evidence is so one-sided that a party is entitled to judgment as a matter of law. Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991) (quoting Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 251-52 (1986)). See also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The Court will consider the pleadings, admissions on file and affidavits in making its determination. FED. R. CIV. P. 56(c).

To be sure, the moving party initially bears the burden of showing that no genuine issues of material fact exist. Celotex Corp. v. Catrett, 477 U.S. at 423 (1986); Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp., 812 F.2d 141, 144 (3d Cir. 1987). If a properly supported motion shows no genuine issues of material fact, however, the burden shifts to the nonmoving party to prove the existence of genuine issues of material fact. Anderson v. Liberty Lobby. Inc., 477 U.S. at 248 (1986). Further, the nonmoving party cannot create a genuine issue for trial with bare assertions, conclusory allegations, vague statements or general denials. See Celotex, 477 U.S. at 324. See also Marcangelo v. Boardwalk Regency Corp., 847 F. Supp. 1222, 1226 (D.N.J. 1994).

II.    **DEFENDANT MALY YAN WAS ACTING ON BEHALF OF PACK AND PROCESS IN TRANSPORTING EMPLOYEES TO AND FROM THE FACTORY, WORKING WITHIN THE COURSE AND SCOPE OF HER EMPLOYMENT AND PERFORMING A DUTY RELATED TO THE CONDUCT OF PACK AND PROCESS'S BUSINESS**

Defendant Maly Yan was given "actual authority" to act on behalf of Pack and Process and to transport employees to and from the Pack and Process Factory, as outlined in detail below. Maly Yan's actions on the June 18, 2001, in transporting these employees from the Pack and Process factory at the time of the accident were within the course and scope of her employment and constituted a duty related to the conduct of Pack and Process's business. Accordingly, the principal, Pack and Process, is liable for her actions. As more fully explained in footnote 4, supra, the usage of the language "a duty related to the conduct of Pack and Process's business" is taken out of the subject insurance contract and imposes a separate and distinct obligation for St. Paul to pay the policy limits.

A.  **Agency Law**

The law of agency is clear and unambiguous. A principal is liable for the actions of its agents that are within the scope of the agent's actual or apparent authority. See Restatement (Second) of Agency § 140. Actual authority is created by words or conduct of the principal, which reasonably cause the agent to determine that the principal's wishes the agent to act on the principal's behalf. Jurimex Kommerz Transit G.M.B.H. v. Case Corporation, 2006 WL 1995128 (D.Del.) See Slip Copy attached hereto as Exhibit "D." citing Edwards v. Born, Inc.,792 F.2d 387, 389-90 (3d Cir.1986). Apparent authority, on the other hand, can be created by words or conduct of the principal, which reasonably cause a third party to believe that the agent is acting

on the principal's behalf. Id. at 390[6].

**B.    No Genuine Issues of Material Fact Exist and Defendants are Entitled to Judgment as a Matter of Law as to Maly Yan's "Actual Authority" to Act on Behalf of Pack and Process in Transporting Employees on June 18, 2001**

The testimony elicited from all parties in this case during the discovery process of the present Declaratory Judgment action and the other related actions demonstrate that no genuine issues of material fact exist and Defendants are entitled to judgment as a matter of law as to Maly Yan's "actual authority" to act on behalf of Pack and Process in transporting employees on June 18, 2001.  Outlined below are the relevant portions of trial and deposition testimony from Defendant Maly Yan, Pack and Process Owner Steven Ames, and Pack and Process Production Manager Sterling Newsome, in which all agree that Mr. Newsome was in a managerial position within the Pack and Process organization and that Maly Yan was asked to drive employees to and from the factory by Mr. Newsome on behalf of Pack and Process.

**1.  Maly Yan**

Maly Yan testified on January 20, 2005, before the Honorable Sandra Mazer Moss and stated as follows:

> Q.    Ms. Yan, I know you understand some English, but we're going to go through the interpreter, okay?
>
> A.    Okay.
>
> Q.    State your full name and your present home address.

_____

[6] As a general rule, the existence of a agency relationship is decided in a trial on the merits. However, where the parties have been given an opportunity to conduct discovery on the agency relation, and where a party is able to put fort sufficient evidence of such a relationship, the policy of judicial economy is served by a decision on summary judgment. Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc., 456 F.Supp. 831, 838 (D.Del. 1978).

> A.    My name is Yan, Maly. My residence is 2007 South 9th Street, 19148.

NT. pg.6,  L12-18.

> Q.    And what is your country of origin?
>
> A.    Cambodia.
>
> Q.    Okay. Were you the operator of one of the vehicles involved in the accident that we're here about from back on June 18th of 2001?
>
> A.    Yes.
>
> Q.    And what kind of vehicle -- what kind of vehicle were you driving at the time of the accident?
>
> A.    Van,1992.
>
> Q.    Where were you coming from and where were you going?
>
> A.    From work and heading home.
>
> Q.    And home was Philadelphia?
>
> A.    Correct.

NT. pg. 7, L 4-5 and L10-22.

> Q.    On the date of the accident, on June 18th of 2001, you were working for Pack and Process located in Delaware, right?
>
> A.    Correct.
>
> Q.    And you were working as a quality control employee at the factory?
>
> A.    Yes.
>
> Q.    And as part of your duties, you would transport workers from their homes in Philadelphia to the factory and back home to Philadelphia, right?

10

          A.     Correct.

NT. pg.9, L7-17.

<u>See</u> the transcript from the January 20, 2005, trial attached hereto as Exhibit "E."

     Maly Yan was deposed on September 24, 2003 and stated as follows:

        Q.     Did anyone at Pack & Process ever instruct you to drive a vehicle?

        A.     My supervisor told me.

        Q.     Your supervisor told you to drive a vehicle?

        A.     Yes, transferring people to work and also working as an employee there.

        Q.     What supervisor was it that told you to transport people to and from work?

        A.     Sterling.

        Q.     Sterling Newsome?

        A.     Yes.

        Q.     And when was it that Sterling Newsome told you to drive a van to transport workers?

        A.     After my father got his license suspended.

        Q.     Under what circumstances was it that Sterling Newsome first came to you and spoke to you about driving a vehicle?

        A.     Because he does not want my father to leave the place and he does not want to lose us from the company.

        Q.     So what did Sterling Newsome say to you?

        A.     Told me to bring people to work into that company and also work at that company as employee.

> Q.    And did Sterling Newsome provide you with a vehicle to
>        drive or would you just drive your van?
>
> A.    Drive my own vehicle.
>
> Q.    Did Sterling Newsome or Pack & Process pay you to drive
>        the van in May and June of 200l?
>
> MR. URBAN: You mean directly or indirectly?
>
> MR. VILLALOBOS: Directly.
>
> THE WITNESS: Yes, Pack & Process paid me.

P.69, L1-70 and L16.

During the September 24, 2003, deposition of Maly Yan, she was questioned about a

form that she was asked to sign by Pack and Process owner Steven Ames upon her return to work

at Pack and Process after the June 18, 2001, accident.  The form indicated, among other things,

that it is not a condition of her employment to drive employees to and from the accident.  See  the

July 27, 2001, Pack and Process Memorandum attached hereto as Exhibit "F."  Maly Yan stated

as follows:

> Q.    When you received this form, did you have a belief that the
>        conditions that were set forth on this form represented a change
>        in your work relationship with Pack & Process?
>
> A.    Yes, in a way.
>
> Q.    Well, let me see what we mean by in a way. Before you signed
>        this form did you believe that as a condition of your employment
>        with Pack & Process you were to assist the transport of labor to
>        Pack & Process?
>
> A.    My supervisors told me that starting from this date that I sign,
>        which is July 24, I can no longer transport people to work there.

12

P.92, L18 - P.93, L23.

> Q.     Did you believe, prior to signing this, when you were transporting workers to Pack & Process, that you were transporting people to Pack & Process to assist Pack & Process?

> A.     Well, yes, but at the time when I was transporting people to work there, I never received this kind of document. This is the first time I received this document, which is under date that I signed. (Indicating).

> Q.     You received this document after the accident?

> A.     Yes

P.94, L9-22.

<u>See</u> Maly Yan's September 24, 2003, Deposition Transcript attached hereto as Exhibit "G."

Maly Yan was deposed again on June 5, 2006 and stated as follows:

> Q.     Now, did any employee of Pack & Process ever tell you that it was part of your job to transport workers to and from Pack & Process?

> A.     David and Steve who told me to do that.

> Q.     Well, David who?

> A.     David, Sdey.

> Q.     David Thatch?

> A.     Yes.

> Q.     And Steve who?

> A.     The boss in the company.

P.98, L9-20.

It is clear from Maly Yan's testimony that the words of her Production Manager, Sterling

Newsome reasonably caused her to determine that Pack and Process wished her to transport

employees to and from the factory.  This is a subjective test and the inquiry need not go further,

however it is important to also note that the Production Manager, Sterling Newsome, agreed that

he did have such a conversation with Maly Yan regarding her responsibility for transporting

workers on behalf of Pack and Process.

<u>See</u> Maly Yan's June 5, 2006, Deposition Transcript attached hereto as Exhibit "H."


### 2. Sterling Newsome

Sterling Newsome was the production manager for Pack and Process at the time of

the June 18, 2001, accident and in his June 29, 2006, deposition stated as follows:

> Q.    She [Maly Yan] was also, just like you, sat down for a deposition on
> September 24, 2003. She was sworn under oath and I'll go
> through with you again some stuff. She was asked on page 69,
> line 6, the question was posed to her, this was by Mr. Villalobos,
> who is defense counsel. What supervisor was it that told you to
> transport people to and from work, Her answer was Sterling. The
> question was then posed to her, Sterling Newsome? And her
> answer was yes. Do you disagree with that?
>
> A.    I think that I said to her one time, but not in a official capacity,
> I said, she asked how are we going to get back and forth to work.
> And said, I guess you'll have to drive. But that was not in an
> official capacity of Pack and Process. That was just as two friends
> talking.
>
> Q.    That conversation, did that occur at the plant?
>
> A.    Yes.
>
> Q.    So it occurred, it occurred during the hours in which she was
> working as a QC operator?
>
> A.    It was either some time during the day there one time.

Q.    She was on the clock at the time that you had this conversation, correct?

A.    Correct. But I didn't make it in the official capacity of being plant supervisor.

Q.    Did you express that to her, and say listen, we're having this conversation just as two friends and this is in no way, I'm in no way talking to you as your supervisor?

A.    I guess I assumed.

Q.    But you didn't explicitly say that to her.

A.    I didn't say, Maly, you're going to have to do it, no.

Q.    The next question was and when it was, and when was it that Sterling Newsome told you to drive the van to transport workers. And her answer was after my father got his license suspended. As far as the time frame is concerned, do you agree with that?

A.    It was after that, yes.

Q.    Okay. And then the next question was under what circumstances was it that Mr. Sterling Newsome first came to you and spoke to you about driving the vehicle. And the answer was because he did not want my father to leave the place, and he does not want to lose us from the company. Would you agree with that?

A.    Yes, I'll agree with that.

Q.    And then it says, so what did Sterling say to you. Answer, told me to bring people to work into the company and also work at the company as employee. Do you remember having that conversation with her?

A.    I would say that's sort of chopped up there but it's, probably discussed. But, once again,  that was as two friends talking, not as me being – I wasn't her supervisor. Cheryl was her supervisor. She worked for Cheryl. I made two separate, even though I was responsible for both of them, I maintained

15

> deferitian (ph.) between the two. Cheryl ran her department,
> I ran mine.

> Q.    But like you said, I understand that. But you were responsible
> for Cheryl and for Maly, correct?

> A.    Theoretically, yes.

P.119, L24 - P.122, L17.


There is certainly no issue of material fact that Mr. Newsome was a production manager

for Pack and Process at the time of his conversation with Maly Yan and that he had supervisory

responsibility over her.  He is the principal and Maly Yan is the agent.  Mr. Sterling's words and

conduct reasonably caused Maly Yan to determine that Pack and Process wished her to transport

employees to and from the factory.  There can be no issue of material fact on this subject as both

the agent and the principal agree that this conversation took place and as such the principal is

liable to the agent.  However, in the interest of being complete, the testimony of Pack and

Process owner Steven Ames was taken and further demonstrated no issue of material fact on this

issue.  Mr. Ames confirmed that Sterling Newsome was the production manager at the time of

the June 18, 2001, accident and that he had supervisory powers over Maly Yan.

See Sterling Newsome's June 29, 2006, Deposition transcript attached hereto as Exhibit "I."

### 3. Steven Ames

Steven Ames is the president of Pack & Process and was the president at the time of

the June 18, 2001, accident and in his June 27, 2006 deposition, stated as follows:

> Q.    Okay. As you sit here today, are you the president of Pack
> & Process, Incorporated?

> A.    Yes, I am.

16

Q.      And have you held that position since 1986?

A.      That's correct.

Q.      And my understanding is that in 1986 you bought the company
        from your father Herbert Ames?

A.      That's correct.

Q.      And your father Herbert M. Ames was the founder of Pack &
        Process, Incorporated, correct?

A.      Yes.

Q.      And Pack & Process is a company that is incorporated under
        the laws of the State of Delaware; is that accurate?

A.      That is accurate.

P.10, L1-15.

Q.      There were various different of these labor companies that
         you had contracted with over the years, correct?

A.      Yes.

Q.      All right. And was there a standard type of agreement form
        that each one of these companies would have to sign in to in
        order -- in order to -- to provide you with the work?

A.      Yes.

P.60, L5-12.

Q.      The production manager would talk to these temporary
        employment agencies. Is that -- is that accurate?

A.       Yes.

Q.      And during this period of time, at least in June, it would have
        been Sterling Newsome?

A.      Yes, sir.

P.64, L20 -P.65 L1.

17

Q.      And I will mark as Ames-l a copy of a purchase order and then an addendum to a purchase order. I will ask you if you take a look at it and tell me if you recognize it?

THE WITNESS: Yes, I do.

P.69, L5-8 and L11.

Q.      Okay. And describe for me what Exhibit-1 is?

P.69, L13-14.

Q.      I said, can you describe for me what that document is?

A.      The first page is a purchase order.

Q.      And who is the purchase order with? Who are the parties involved in the purchase order?

MR. DEASEY: Objection.

THE WITNESS: The parties are Lam Staff, Inc. and Pack & Process, Inc.

P.69, L20 - P.70 L l3.

Q.      And if you flip over to the second page it says, Addendum to Purchase Order.

A.      Right.

Q.      All right? Do you recognize what that is?

A.      Yes.

Q.      What is it?

A.      That's the contract that we seek to controlthe project with.

Q..     And who are the parties to this particular contract?

A.      Lam Staff, Inc. and Pack & Process, Inc.
Q.      Other than this -- this purchase order and the addendum

18

to the purchase order, are there any other documents memorializing your agreement with Lam Staff, Inc. to provide services to Pack & Process?

A.    Not that I recall.

Q.    So this was like a -- what I'm trying to --to tie down, it was a one time agreement, a purchase order, and an addendum that you -- both parties signed, and that was going to be the agreement that was going to dictate the relationship between the parties; is that accurate?

A.    That's accurate.

P71 L18 - P72 L18.

Q.    On the signature page at the back of the addendum, do you recognize the signature of the individual under the Pat's -- Pack & Process, Incorporated?

A.    Yes.

Q.    And is that again Steve's signature?

A.    No.

Q.    Whose signature is it?

A.    It's mine.

P74, L24 - P75, L8.

Q.    Okay. The addendum to the purchase order, do you know who drafted it?

A.    I believe I do.

Q.    Who would that be?

A.    An attorney named Jerry Grossman.

Q.    Is that an attorney that at some point or another represented Pack & Process?

19

A.    Yes.

P.76,L23 - P.77, L6.

Q.    So now I'm just going to refer to this as the -- as the agreement, and if I do that, we're both on the same page.

A.    Yes.

Q.    All right. Then it talks about services. LSI, which -- that's Lam, correct?

A.    Yes

Q.    Will provide to P & P, Pack & Process, those individuals, LSI personnel, to perform the job/functions listed below. All right. Is that one of the purposes of this agreement, to outline the responsibilities –

A.    Yes.

Q..    -- and duties of LS -- Lam Staffing?

A.    Yes.

P.81, L13 - P.82, L4.

Q.    At the date that this accident occurred, June 18th of 2001, do you believe that this agreement was still in effect?

A.    Yes.

P.83, L4-7.

Q.    Okay. Then it goes on to talk about the duties and rights of LSI, correct? Number four.

A.    Yes

Q.    It says, LSI agrees to provide the following services to Pack & Process under this agreement, and then there are ten numbers corresponding to the services that LSI will be

providing to Pack & Process, correct?

20

      A.     Right.

P.92, L17 - P.93, L1.

      Q.     The contract that you entered into, this agreement, was for Lam Staffing to provide workers to work in your factory. Isn't -- isn't that basically what it is?

      A.     Right.

      Q.     All right. Other than the contents of this purchase order and the addendum to purchase order, is there any document that you believe exists that actually sets out with specificity the fact that Lam Staffing is to provide transportation for the workers from their home to the factory?

MR. DEASEY: Objection to form. You can answer.

THE WITNESS: No.

P.95, L7 -18, L21.

      Q.     Number six, it says, general provisions, Correct?

      A.     Yes.

      Q.     And under A it says, this agreement, and Exhibit A incorporated by reference herein, is the entire agreement between the parties and supersedes any previous agreement or representation, written or oral, with respect to the subject matter between Pack & Process and LSI.

      Q.     Did I read that correctly?

      A.     Yes.

      Q.     And did you read that before you signed document?

      A.     Yes, I did.

      Q.     All right. So you understood then that any type of oral agreement that you may or may not have had with Lam Staffing would have been superseded by the actual contents and terms in this agreement; is that accurate?

21

P.97, L24 - P.98, L20.

        THE WITNESS: Yes. That is accurate

P.99, L12.

    Q.    Okay. What type of relationship, as far as a supervising capacity, did Sterling Newsome have for the quality control personnel, if any?

    A.    He didn't.

    Q.    None?

    A.    No.

    Q.    So under no circumstances should -- should he have been directing the way that a quality control person was conducting business with - inside Pack & Process?

    A.    I -- I wouldn't -- I wouldn't be so absolute in -- in the way I state that. I would state that her supervisor was Charlotte -- I'm sorry, Cheryl. And then in the normal course of events, Cheryl would tell -- would be her supervisor.

    Q.    Okay.

    A.    There could be an event in which Sterling who as -- as the plant manager might give her a direction to do something and she would always --you know, if there is a problem she would go back and check with her supervisor. But if her supervisor were not around, I presume he would give her instruction and she would follow it. And she would also interface with him when --when -- when she was working on something, and it was out of specification. It was her obligation to inform production that something was going on that was not right.

See Steve Ames's June 27, 2006, Deposition transcript attached hereto as Exhibit "J."

        Pack and Process has claimed that Maly Yan was driving on behalf of the temporary employment agency, Lam Staffing, and that it was part of the agreement between Pack and Process and Lam Staffing for the latter to provide transportation to and from the Pack and

Process factory.  During the deposition of Pack and Process owner Steven Ames, the written agreement between Pack and Process was present to Mr. Ames and he admitted that no such language existed in the document.

_____The language contained in Mr. Newsome's conversation with Maly Yan is precisely the type of evidence that the Jurimex court deemed sufficient to reasonably cause an agent to act on the principal's behalf giving the agent "actual authority."  Jurimex Kommerz Transit G.M.B.H. v. Case Corporation, 2006 WL 1995128 (D.Del.).  See Slip Copy attached hereto as Exhibit "D."  The confirmation of the content of this conversation, without evidence to the contrary, is sufficient to demonstrate that no issue of material fact exists and that the Defendants are entitled to judgment as a matter of law.  Id.  The evidence regarding the conversation between Maly Yan and Sterling Newsome is clear and unequivocal.  This conversation caused Maly Yan to act on behalf of Pack and Process, this evidence is so one-sided that Defendants are entitled to judgment as a matter of law.  Celotex Corp v. Catrett, 477 U.S. 317, 322 (1987).

III.    **PACK AND PROCESS AND ITS INSURANCE CARRIER, ST. PAUL ARE RESPONSIBLE AND LIABLE FOR THE ACTIONS OF MALY YAN ON JUNE 18, 2001**

The law is well settled that a principal is liable for the acts within the scope of an agent's actual authority.  <u>Taylor v. Peoples Natural Gas Co.</u>, 49 F.3d 982 (3rd Cir. 1995).  As discussed more fully <u>supra</u>, Maly Yan had "actual authority" to act on behalf of Pack and Process.  The creation of Maly Yan's "actual authority" to transport employees to and from the Pack and Process factory also creates an obligation for Pack and Process and St. Paul, as its insurance carrier, to indemnify Maly Yan as a result of her negligence on June 18, 2001.  Once it is established that no genuine issue of material fact exists and the Defendants are entitled to judgment as a matter of law as to the creation of Maly Yan's "actual authority" to transport employees, then Pack and Process and St. Paul becomes responsible and liable for her actions.  Pack and Process and St. Paul are responsible to pay the entire judgment imposed upon Maly Yan in the matter of <u>Yan Thou et.al. v. Maly Yan</u>, June Term, 2003, No.1503.  No issue of material fact exist and the Defendants are entitled to judgment as a matter of law as to all of the declarations requested in the Defendants' Declaratory Judgment Action and Summary Judgment should be granted.

24

**CONCLUSION**

Defendant Maly Yan was given "actual authority" to act on behalf of Pack and Process and to transport employees to and from the Pack and Process Factory, as outlined in detail above. Maly Yan was acting on behalf of Pack and Process in transporting employees to and from the factory, working within the course and scope of her employment and performing duty related to the conduct of Pack and Process's business. The principal is responsible and liable for the actions of the agent and as such Pack and Process and St. Paul, its insurance carrier, are responsible for the actions of Maly Yan on June 18, 2001. Pack and Process and St. Paul are obligated to pay for Maly Yan's actions in the matter of <u>Yan Thou et.al. v. Maly Yan</u>, June Term, 2003, No.1503 in the amount of the verdict imposed upon Maly Yan, on January 20, 2005. No issue of material fact exist and the Defendants are entitled to judgment as a matter of law as to all of the declarations requested in the Defendants' Declaratory Judgment Action and Summary Judgment should be granted.

Respectfully submitted,

**Weiss & Saville**, **P. A.**
BY: **S/Yvonne Takvorian  Saville**
Yvonne Takvorian Saville, Esquire
1220 North Market Street, Suite 604
P.O. Box 370
Wilmington DE 19801
(302) 656-0400

DATED:   8/4/06                           and

**Kline & Specter, P.C.**
BY: **S/ Joshua Van Naarden**
Jonathan Cohen, Esquire
Joshua Van Naarden, Esquire
1525 Locust Street, 19th Floor
Philadelphia PA 19102
215-772-1000

25