IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ST. PAUL MERCURY INSURANCE COMPANY | ) ) ) | |
| and | ) ) | |
| PACK AND PROCESS, INC. | ) ) | |
| Plaintiffs, | ) ) | |
| v | ) ) | Case No. 05-0022 (KAJ) |
| MALY YAN | ) ) ) | |
| Defendant. | ) | |
| \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* | | |
| YAN THOU, et al. | ) ) ) | |
| Plaintiffs, | ) ) | |
| v | ) ) | Case No. 05-00513 (KAJ) |
| PACK & PROCESS, INC., et al | ) ) | CONSOLIDATED CASES |
| Defendants | ) ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AS TO AGENCY**

In the instant action, Defendant, Maly Yan has filed a Motion for Summary Judgment arguing that on June 18, 2001, she had actual authority to act on behalf of Pack & Process to transport temporary workers to and from the Pack & Process factory. Maly Yan's "actual authority" argument is based entirely on a one time, friendly conversation she had with Pack & Process production manager, Sterling Newsome. As a result of this one time, friendly conversation, Maly Yan alleges that she was caused to "reasonably" determine that transporting temporary workers to

and from the Pack & Process factory was within the course and scope of her employment with Pack & Process. Maly Yan further alleges that her actions on June 18, 2001 constituted a duty related to the conduct of Pack & Process' business, thus making Pack & Process liable for her actions and Pack & Process and/or St. Paul liable to pay the entire judgment imposed upon Maly Yan in the matter of <u>Yan Thou, et al. v. Maly Yan</u>, (CCP June Term, 2003, No. 1508).

Defendant's position is factually inaccurate and legally without merit and, therefore, must fail. Defendant has taken select excerpts of deposition testimony out of context and ignored the totality of the testimony concerning the true scope of Maly Yan's employment relationship with Pack & Process. Additionally, Defendant has completely ignored the entire body of Delaware case law on agency in the context of employment relationships while, at the same time, relying upon a single non-employment case which, in fact, supports Plaintiffs' position in this regard.

## ARGUMENT

As this Honorable Court is aware, questions relating to the course and scope of employment, while highly factual, must be resolved under a totality of the circumstances test. <u>Histed v. DuPont</u>, 621 A.2d 340, 345 (Del. 1993). However, a Court can determine course and scope of employment issues as a matter of law if the answer is clearly indicated. (<u>See</u> Comment (d) Restatement 2d of Agency, § 228). Here, the parties have filed cross motions on this issue. If the court applies the "totality of circumstances test", there is no issue of material fact that Maly Yan was not within the course and scope of her employment with Pack & Process when the accident occurred on June 18, 2001. In that regard, the following facts are not in dispute:

    (1)    Maly Yan was a quality control inspector at Pack & Process, whose duties and responsibilities included <u>only</u> checking on the candy bags,

examining the candy bags . . . making sure there are no rips, no tears and it closed. (Maly Yan deposition; 9/24/03; 54:1-12, attached hereto as Exhibit " A "); (Cheryl Adkins deposition; 6/26/06; 63:12 - 66:23, attached hereto as Exhibit "E"); (Steve Ames deposition; 6/27/06; 134:21 - 135:2, attached hereto as Exhibit "D");

(2) Maly Yan punched a time clock every time she came in and left work at Pack & Process and had punched out her time clock at the time of the June 18, 2001 accident. (Maly Yan deposition 6/5/06; 86:2-5, attached as Exhibit "B" hereto); (Sterling Newsome deposition 6/29/06; 88:1-13, attached hereto as Exhibit "C"); (Steven Ames deposition 6/27/06; 216:9 - 21; attached hereto as Exhibit "D");

(3) Maly Yan was paid by Mr. Thatch to transport workers from Philadelphia to Wilmington. Maly Yan was not paid by Pack & Process to transport workers. (Maly Yan deposition 9/24/03; 70:18;71:2, attached hereto as Exhibit "A");

(4) Maly Yan was not hired by Pack & Process to drive vehicles; employees of Pack & Process were not hired to drive temporary workers to the plant; Maly Yan was not hired by Pack & Process to drive a vehicle; Maly Yan was not paid by Pack & Process to drive a vehicle; Maly Yan was never authorized to drive a vehicle on behalf of Pack & Process; Maly Yan was never expected to drive a vehicle on behalf of Pack & Process; driving a vehicle was not within the course and scope of Maly Yan's duties as a quality line inspector at Pack & Process (Sterling Newsome deposition; 6/9/06; 145:1; 148:12, attached as Exhibit "C" hereto); (Cheryl Adkins deposition; 6/26/06; 63:12 - 66:23, attached hereto as Exhibit "E");

(5) Pack & Process had an agreement with Lam Staff, Inc., whereby Pack & Process compensated Lam Staff Inc., for the delivery of temporary workers and the work performed by the temporary workers. Lam Staff Inc., provided Pack & Process with an invoice for these services.(Steven Ames deposition; 6/27/06; 83:8 -17, attached as Exhibit "D" hereto); (Sterling Newsome deposition; 6/9/06; 145:1; 148:12, attached as Exhibit "C" hereto)

(6) Maly Yan was employed as a quality control inspector. At no time did her job description include transporting temporary workers to and from Pack & Process and Lam Staff Inc. She was never paid by Pack & Process to transport temporary workers from Lam Staff Inc., to Pack& Process. (Steven Ames deposition; 6/27/06; 214:24; 215:24, attached hereto as Exhibit "D"); (Cheryl Adkins deposition; 6/26/06; 63:12 - 66:23, attached hereto as Exhibit

3

E"); (Sterling Newsome deposition; 6/9/06; 145:1; 148:12, attached as Exhibit "C" hereto)

When viewed under a "totality of the circumstances test" it is beyond dispute that transporting temporary workers to and from the Pack & Process factory was not within the course and scope of Maly Yan's employment with Pack & Process. Her own admissions in this regard doom her argument. As a quality control inspector, she was responsible for checking and examining product, not transporting workers to and from the Pack & Process factory. In fact, on more than one occasion, Maly Yan has testified under oath that transporting workers to and from the Pack & Process factory was not within the course and scope of her employment with Pack & Process. The following testimony clearly establishes this point: In her September 24, 2003 deposition, Maly Yan admitted that Lam Staffing contacted her to transport temporary workers to the Pack & Process factory (see Maly Yan deposition 9/24/03; 22:22-24; 23:15, attached hereto as Exhibit "A"); then in this same deposition, Maly Yan admitted that Lam Staffing (David Thatch), not Pack & Process paid her to drive the van in June 2001 (Maly Yan deposition 9/24/03; 70:18; 71:2, attached as Exhibit "A" hereto); once again in her deposition on June 5, 2006, Maly Yan admitted that it was only David Thatch (of Lam Staffing) who told her it was part of her job to transport workers to and from Pack & Process (Maly Yan deposition 6/5/06; 98:9; 100:6, attached as Exhibit "B" hereto)

Regarding payment for transporting the temporary workers, Maly Yan has admitted that she was paid **in cash by Lam Staffing** (David Thatch), NOT Pack & Process, for transporting workers to and from the Pack & Process factory (see Maly Yan deposition 6/5/06; 104:3-22, attached as Exhibit "B"; and Maly Yan deposition 9/24/03; 69:12; 72:22, attached as Exhibit "A"). Once again, applying the totality of the circumstances test, it is beyond dispute that Maly Yan's actions in

transporting temporary workers to and from the Pack & Process factory was within scope of her employment relationship with Lam Staffing (David Thatch) and NOT Pack & Process.

Essentially, on June 18, 2001, Maly Yan had two principals. While an "on the clock" employee acting as a quality control inspector, Maly Yan was in the course and scope of her employment at Pack & Process. Her actions in transporting temporary workers to and from the Pack & Process factory (<u>both</u> before she clocked in and after she clocked out at Pack & Process) constituted actions within the scope of her employment relationship with Lam Staffing (David Thatch). To avoid this inevitable conclusion, Maly Yan references a one time, friendly conversation with Sterling Newsome in a futile effort to support her untenable claims. As will be pointed out below, the words of Sterling Newsome do not support Maly Yan's contention that her duties as a quality control inspector included transporting temporary workers to and from the Pack and Process factory. Assuming arguendo, that the holding in <u>Jurimex Kommerz Transit GMBH v. Case Corporation</u>, 2006 WL 1995128 (D. Del.) has any relevance to the issue before this Honorable Court, it is impossible for Maly Yan to have "reasonably determined" that transporting temporary workers to and from the Pack & Process factory was within the course and scope of her employment with Pack & Process. This fanciful proposition is simply ludicrous.

Maly Yan's Motion for Summary Judgment includes selective excerpts of portions of deposition testimony from Pack & Process owner, Steven Ames, and Pack & Process production manager, Sterling Newsome, and is noteworthy for the relevant excerpts of deposition testimony that Ms. Yan has failed to include. More importantly, it should be noted that the "trial" testimony that Maly Yan submits at pages 9 through 11 of her Motion is her testimony under "cross examination" conducted by the very lawyers who are presently representing her in the instant Declaratory

Judgment action. Neither Pack & Process nor St. Paul had the ability to cross-examine Maly Yan at the "trial" from which this testimony is excerpted. Further, this same testimony has been repeatedly contradicted by Maly Yan, as set forth in the excerpts of her deposition testimony contained in Pack & Process and St. Paul's Motion for Summary Judgment, as well as the instant response to Ms. Yan's Motion for Summary Judgment. Thus, it is respectfully submitted that Maly Yan's "trial" testimony conducted under "cross examination" should be afforded no weight by this Honorable Court in deciding the instant Motion.

In support of her Motion for Summary Judgment, Maly Yan also refers to her September 24, 2003 deposition testimony (see pages 11 and 12 of Maly Yan's Motion for Summary Judgment). Maly Yan's selective excerpts of these specific portions of her September 24, 2003 deposition is a disingenuous attempt to leave this Court with the impression that Pack & Process paid her to drive temporary employees to and from the Pack & Process factory in May and June of 2001. The portion of her deposition testimony contained in her Summary Judgment Motion states as follows:

> Q   Did Sterling Newsome or Pack & Process pay you to
>     drive the van in May and June 2001?
>
> A   Mr. Urban: you mean directly or indirectly?
>
> MR. VALLALOBOS:
>
> Directly
>
> THE WITNESS:
>
> Yes, Pack & Process paid me.

(Maly Yan deposition 9/24/03; 70:5-16, attached hereto as Exhibit "A"). However, the very next two questions posed to Ms. Yan in this line of questioning are as follows:

> Q    As opposed to Mr. Thatch.
>
> A    Actually, Mr. Thatch paid me for transporting.
>
> Q    Did you ever receive any monies directly from Pack & Process for transporting workers from Wilmington to Philadelphia or from Philadelphia to Wilmington?
>
> A    No.

(Maly Yan deposition 9/24/03; 70:18; 71:2, attached as Exhibit "A").

Clearly, the entire context of this line of questioning reveals that Ms. Yan admitted that she was not paid by Pack & Process to transport temporary workers to and from the Pack & Process factory, but rather, she was paid for these services by Lam Staffing, the employment agency that supplied the temporary workers to Pack & Process.

In further support of her Motion for Summary Judgment, Maly Yan submits testimony from her subsequent deposition on June 5, 2006 (page 13 of her Motion for Summary Judgment) in which she purports to testify that both David Thatch and Steve Ames told her that it was part of her job to transport temporary workers to and from the Pack & Process factory. However, it is beyond dispute that David Thatch was neither an agent nor employee of Pack & Process. Rather, Mr. Thatch was associated with the temporary employment agency that contracted with Pack & Process to supply temporary workers to its facility. Once again, Maly Yan has failed to include the entirety of her testimony regarding this line of questioning. The complete excerpt of Maly Yan's testimony in this regard is as follows:

> Q    Now, did any employee of Pack & Process ever tell you that it was part of your job to transport workers to and from Pack & Process?
>
> A    David and Steve he told me to do that

7

> Q. Well David who?
>
> A David. Sday.
>
> Q. David Thatch?
>
> A. Yes.
>
> Q And Steve who?
>
> A The boss in the company
>
> Q Does Steven - does Steven, the boss ever tell you directly that you had to drive workers to and from Pack & Process?
>
> A No he did not. He just told David.
>
> Q Now how do you know Steve told David that?
>
> A Because David told me that Steve was agree to allow me to transport worker to and from the company
>
> Q. Other than David telling you that did anyone else ever tell you that it was part of your job to transport workers to and from Pack & Process?
>
> A No, just David

(Maly Yan deposition 6/5/06: 98:9; 100:6, attached as Exhibit "B"). It is noteworthy that Ms. Yan never mentioned Sterling Newsome as someone who told her that it was part of her job to transport workers to and from Pack & Process during her June 5, 2006 deposition

The foregoing testimony clearly reveals that Mr. Ames never told Maly Yan that it was part of her job to transport workers to and from the Pack & Process factory as Maly Yan has attempted to imply with the selective submission of "part" of foregoing deposition testimony When viewed in its complete context, the foregoing testimony clearly undermines any credible argument that Maly

8

Yan had a "reasonable belief" that it was part of her job as a quality control inspector at Pack & Process to transport temporary workers to and from the Pack & Process factory.

Maly Yan's submission of Sterling Newsome deposition testimony regarding their conversation is also incomplete. In addition to the deposition testimony of Mr. Newsome proffered by Maly Yan, Mr. Newsome testified as follows:

> Q    Did Maly Yan ever approach you or did she ever approach you and ask you for permission to drive the van to and from?
> A.   No.
> Q    Did she ever express to you any concerns about working for two different agent -- to (sic) different companies at the same time?
>
> THE WITNESS: No, as long as she was off the clock we had no control over what she did as long as -- that was her business.
> Q    Do you know if Maly Yan ever approached anybody in the Pack and Process organization to ask for their permission to drive these workers to and from work?
> A.   To my knowledge, no.
> Q    Do you know if she ever approached David Thatch or someone from Lam Staffing and asked them to ask someone in Pack and Process for permission for her to drive?
> A    I don't know.
> Q    Did David Thatch or anybody from Lam Staffing approached you asking if it was okay if Maly Yan could transport these people?
> A    No.
> Q    Anybody else from the Lam organization approach you and ask you if it was okay if Maly would drive the van?
> A    No.

(Sterling Newsome Deposition; 6/9/06; 88:1-89:8; attached as Exhibit "C"). Other portions of Mr. Newsome's testimony add context to his foregoing testimony as follows:

> Q    Do you know what her position was as a permanent employee?
> A    Quality control was her primary position.
> Q    Was she a quality control line inspector?
> A    Yes.
> Q    Was she a quality control line inspector on June 18, 2002 (sic)?
> A    Yes.

9

Q    Are you familiar with the job duties of a quality control line inspector at Pack and Process?
A    Yes.
Q    Were any quality control line inspectors employed at Pack and Process hired by Pack and Process to drive vehicles?
A    No.
Q    Were any employees of Pack and Process hired by Pack and Process to drive the temporary workers to the plants?
A    No.
Q    Was Maly Yan hired by Pack and Process to drive a vehicle?
A    No
Q    Did Pack and Process ever pay Maly Yan for driving a vehicle?
A    To my knowledge, no
Q    Was Maly Yan ever authorized to drive a vehicle on behalf Pack and Process?
A    To my knowledge, no
Q    Was Maly Yan ever expected to drive a vehicle on behalf of Pack and Process?
A    No.
Q    Was driving a vehicle within the course and scope of the duties of Maly Yan as a quality line inspector at Pack and Process?
A    No

Q    Did Maly Yan ever ask you for permission to drive a car or a van?
A    No, she never asked me permission to, no.
Q    Did you have anything to do with the decision of Maly Yan to drive the van on June 18, 2001 or any other days that she drove the van prior to that date?
A    I don't think so.
Q    Did you ever request that Maly Yan drive the van on behalf of Pack and Process?
A    No.
Q    Did you ever instruct or order Maly Yan to drive a van on behalf of Pack and Process?
A    I may have mentioned it casually but not in a, as much as a production supervisor
Q    Did you ever have any discussions with Steve Ames regarding Maly Yan driving the van?
A    No.
Q    To your knowledge whose responsibility was it for making the arrangements to transfer or to transport the workers to and from Pack and Process?
A    The temporary agency

> Q   We talked about this a little bit on in the time you and I had together, but I just want to make it clear. You will agree that you had a conversation with Maly Yan whereby she told you that her dad's license was suspended, correct?
> A.  Correct.
> Q.  And in that conversation you said to her, well, then you're going to have to drive, right?
> A   I said I guess you'll have to drive.
> Q.  Okay
>
> Q.  What was the context of the conversation that you had with Maly Yan about her driving the van?
> A.  She was telling me that Ken was being transferred and then she said that my dad can't drive anymore. I said, well, you got a license, you can drive. That's all I said.

(Sterling Newsome Deposition; 6/9/06; 145:1-148:12; attached as Exhibit "C")

Contrary to Maly Yan's assertion that she was reasonably led to believe that Pack & Process wished her to act on its behalf in transporting temporary workers to and from the Pack & Process facility, it is clear from the "totality" of Sterling Newsome's testimony that Sterling Newsome's words could not have reasonably lead her to hold this belief. Moreover, as illustrated above, Maly Yan's own testimony undermines her assertions.

Finally, Maly Yan has completely ignored the testimony of her direct supervisor, Cheryl Adkins. Ms Adkins was the Pack & Process quality assurance manager who supervised the quality control inspectors, including Maly Yan. (Cheryl Adkins Deposition; 6/26/06; 10:9-14, and 12:16-23; attached hereto as Exhibit "E") Ms Adkins' testimony completely contradicts Maly Yan's purported reasonable belief that Pack & Process wished her to act on its behalf in transporting temporary workers to and from its facility. Less than a week before the accident, Maly Yan was

11

advised by Cheryl Adkins that she intended to switch Maly Yan to the night shift. In this regard, Ms Adkins testified as follows:

> A.   A week before the accident I was going on - - getting ready to go on vacation. I was actually on vacation when this accident occurred. Thursday, I think it was, because it was the end of the week, and I expressed to her that I needed her to go to night shift once I got back from vacation, meaning that she was on day shift, and I needed her to switch over to night shift because she had to rotate, and take a couple weeks of night shift. I think it was like every two weeks they would switch who was doing days to nights. And she told me that she was unable to do so because she was driving for her father, Yan. That her father had lost his license, and he was one of the drivers, and she was helping him out in driving the van. And I told Maly that that was not my concern, that her responsibilities at Pack & Process was not to drive, it was to do the quality control inspection, and I didn't think it was a good idea for her to be driving the van anyway. And I told her I'd expected her to be on night shift the week I got back.

(Cheryl Adkins Deposition: 6/26/06; 41:3-42:3; attached hereto as Exhibit "E")

> Q   You testified earlier about a conversation that you had with Maly Yan in which you informed her that when you were going to return from vacation that you wanted Maly Yan to work night shift?
> A   Yes
> Q   And I believe you testified that Maly Yan told you she could not work the night shift because she was driving for her father who had lost her license?
> A   Lost his license, yes.
> Q   I'm sorry. Lost his license.
> A   Yes.
> Q   At that point, did you tell Maly Yan that driving a van was not her responsibility?
> A   I did tell her that
> Q   Did Maly Yan tell you that someone for Pack & Process had indeed told her that driving a van was her responsibility?
> A   No, she did not
> Q   Did Maly Yan tell you that, during this conversation, that anyone from Pack & Process had asked her to drive the van as a result of her father having lost his license?
> A   No.

> Q. Was it your understanding at the end of that conversation that Maly Yan was going to work the night shift as you had told her she would when you returned from vacation?
> A. I expected her to be there.

(Cheryl Adkins Deposition; 6/26/06; 65:19-66:23; attached hereto as Exhibit "E").

The absence of this testimony in Maly Yan's Motion is telling. Given Ms. Adkins' testimony, it is inconceivable that Maly Yan was caused to reasonably determine that Pack & Process wished her to act on its behalf in transporting temporary workers to and from its factory. When questioned at her own deposition regarding her reaction to Ms. Adkins directive that she would be transferred to the night shift, Maly Yan made no mention of her "reasonable belief" that it was part of her job at Pack & Process to transport temporary workers to and from its facility. Her reaction to Ms. Adkins' directive was as follows:

> Q. Did Cheryl come – did Cheryl tell you the week before the accident that you needed to change to the night – the second shift?
>
> A. Yes, she – she did tell me about that, but I did not accept it because I have to take care of my children at nighttime.

(Maly Yan Deposition; 6/5/06; 98:9-100:6; attached as Exhibit "E")

The law in Delaware is clear. An employee's conduct is within the course and scope of employment if, but only if:

> (a) it is of the kind he is employed to perform;
>
> (b) it occurs substantially within the authorized time and space limits;
>
> (c) is actuated, at least in part, by a purpose to serve the master; and

    (d)    force is intentionally used by the servant against another, the use of force is not unexpectable by the master

Section 228 of the Restatement 2d of Agency, Coates v. Murphy, 270 A.2d 527, 528 (Del 1970)(adopting Section 228 of the Restatement 2d of Agency).

In the context of an employment relationship, Section 229 of the Restatement 2d of Agency sets forth the kind of conduct that falls within the course and scope of employment as follows:

§ 229 Kind of Conduct Within Scope of Employment

(1) to be within the scope of employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized.

(2) in determining whether or not the conduct, although not authorized is nevertheless so similar to or incidental to the conduct authorized as to be within the course of employment, the following matters of fact are to be considered:

    (a)    whether or not the act is one commonly done by such servant;

    (b)    the time, place or purpose of the act;

    (c)    the previous relations between the master and the servant;

    (d)    the extent to which the business of the master is apportioned between different servants;

    (e)    whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;

    (f)    whether or not the master has reason to expect that such an act will be done;

      (g)    the similarity and quality of the act done to the act authorized;

      (h)    whether or not the instrumentality to which the harm is done has been furnished by the master to the servant;

      (I)    the extent of departure from the normal method of accomplishing unauthorized results;

      (j)    whether or not the act is serious and criminal

See Draper v. Olivere Paving and Construction Co., 181 A.2d 565, 570 (Del. 1962).

When this Honorable Court analyzes Maly Yan's actions in transporting temporary workers to and from the Pack & Process facility against the backdrop of § 229 of the Restatement 2d of Agency, it is indisputable that such actions were not within the course and scope of Maly Yan's employment relationship with Pack & Process. Lam Staffing (David Thatch) paid Maly Yan to transport temporary workers to and from the Pack & Process facility, not Pack & Process. Maly Yan transported temporary workers to and from the Pack & Process factory for Lam Staffing after she had clocked out at Pack & Process. Maly Yan was a quality control inspector at Pack & Process, whose duties and responsibilities did not include transporting workers to and from the Pack & Process factory. Pack & Process did not furnish Maly Yan the van she was driving on June 18, 2001. The "totality of circumstances" as contained in the record cited above leaves no doubt that Maly Yan's actions in transporting temporary workers to and from the Pack & Process facility were not within the course and scope of her employment with Pack & Process, but were, if anything, within the course and scope of her relationship with Lam Staffing.

Maly Yan's Motion for Summary Judgment fails to reference any of to the principles of Delaware law cited above. Rather, Maly Yan relies solely upon one case, <u>Jurimex Kommerz Transit G.M.B.H. v. Case Corporation</u>, 2006 W.L. 1995128(D.Del., July 17, 2006). The <u>Jurimex</u> case does not involve the issue of agency in the context of an employment relationship. Rather, <u>Jurimex</u> stands only for the general proposition that a principal is liable for the actions of its agent that are within the scope of the agent's actual or apparent authority, and that actual authority is created by words or conduct of the principal which reasonably cause the agent to determine that the principal wishes the agent to act on the principal's behalf. <u>Id.</u> at *9-10. The Court in <u>Jurimex</u> was called upon to decide whether the words and conduct of a corporate subsidiary could bind the parent corporation in a commercial transaction. The <u>Jurimex</u> Court does not even mention Sections 228 and 229 of the Restatement 2d of Agency, the relevant sections that address the issue of course and scope of employment.

It is difficult to conceive how the <u>Jurimex</u> Court's holding supports Ms. Yan's contention that she reasonably determined that Pack & Process gave her actual authority to act on its behalf and transport temporary workers to and from its factory. The only evidence of record in the <u>Jurimex</u> case was "oral authority." Central to the Court's holding in <u>Jurimex</u> was lack of any written record of such authorization. On this basis, the <u>Jurimex</u> Court concluded that the plaintiff (the party seeking to assert the actual authority of the subsidiary) had failed to put forth sufficient evidence to survive the parent corporation's motion for summary judgment on the actual authority issued.

In the present action, Maly Yan has offered no documentation to support her claim that she had actual authority from Pack & Process to transport temporary workers to and from the Pack & Process factory. In fact, her only evidence is a one time, friendly conversation with Sterling

Newsome. When viewed against the backdrop of the "totality of circumstances" of her employment relationship with Pack & Process, it is clear that Maly Yan's actions in transporting temporary workers to and from Pack & Process were not within the course and scope of her employment with Pack & Process. As such, her Motion for Summary Judgment must be denied.

## CONCLUSION

No issue of material fact exists and Plaintiffs are entitled to judgment as a matter of law. Defendant, Maly Yan had no "actual authority" to act on behalf of Pack & Process in transporting employees to and from the Pack & Process factory. As such, Pack & Process is not responsible or liable for Maly Yan's actions that resulted in the June 18, 2001 motor vehicle accident. Likewise, neither Pack & Process nor Maly Yan are liable to pay the amount of the verdict imposed upon Maly Yan in the matter of <u>Yan Thou, et al. v. Maly Yan</u>, CCP June Term, 2003, No. 1508. For these reasons, Plaintiffs respectfully request that this Court deny Defendant's Motion for Summary Judgment and grant Plaintiffs' Motion for Summary Judgment.

Dated: August 25, 2006

BIFFERATO, GENTILOTTI, BIDEN & BALICK

Ian Connor Bifferato (#3273)
Joseph K. Koury (#4272)
1308 Delaware Avenue
P.O. Box 2165
Wilmington, Delaware 19899
(302) 429-1900
      and
Francis J. Deasey, Esq.
Henri Marcel, Esq.
Deasey, Mahoney & Bender, Ltd.
1800 John F. Kennedy Blvd., Suite 1300
Philadelphia, Pennsylvania 19103-2978
(215) 587-9400