Westlaw.

Slip Copy

Page 1

Slip Copy, 2006 WL 1995128 (D.Del.)
**(Cite as: Slip Copy)**

H
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
JURIMEX KOMMERZ TRANSIT G.M.B.H., et al., Plaintiffs,
v.
CASE CORPORATION, Defendant.
No. CIV A. 00-83-JJF.

July 17, 2006.

Thomas C. Grimm, and Jerry C. Harris, Jr., of Morris, Nichols, Arsht, & Tunnell, Wilmington, Delaware, Daniel J. Kornstein, and Daniel A. Cohen, of Kornstein Veisz Wexler & Pollard, LLP, New York, New York, for Plaintiffs, of Counsel.
David McBride, Dawn Marie Jones, and John W. Shaw, of Young, Conaway, Stargatt, & Taylor, Wilmington, Delaware, William E. Deitrick, and Michelle V. Dohra, of Mayer, Brown, Rowe, & Maw LLP, Chicago, Illinois, for Defendant, of Counsel.

*MEMORANDUM OPINION*
FARNAN, J.
*1 Pending before the Court is Defendant Case Corporation's Motion For Summary Judgment And To Dismiss Based Upon The Doctrine Of Forum Non Conveniens (D.I.123). For the reasons discussed, the Motion will be granted.

I. FACTUAL BACKGROUND

In April 1999, Patrice Loiseleur of Case France S.A. ("Case France") contacted Sascha Divis at Jurimex Kommerz Transit G.m.b.H ("Jurimex"), asking whether Jurimex would be interested in brokering a sale of combines to Agro Industrial Corporation Golden Grain, Ltd. ("Golden Grain"), a company in Kazakhstan. On May 4, 1999, a meeting was conducted regarding this proposal.

Present at the meeting were Thomas Karner and Mr. Divis of Jurimex, Mr. Loiseleur, and representatives of IP Consult ("IPC"). Those present at the meeting discussed a $20-40 million transaction in which Golden Grain would purchase several hundred combines from Case France in exchange for wheat. Plaintiffs and IPC would sell the wheat to offtakers, in order to finance the purchase of the farm equipment. Plaintiffs contend that this meeting resulted in a binding oral contract, though Plaintiffs admit that the price and other terms were not specified and that the contract was subject to modification. (D.I. 125, Ex. D at 72-77).

Several more meetings regarding the Golden Grain transaction were conducted during May and June 1999:
• May 26, 1999: Jurimex, IPC, and Case Europe representatives and Mr. Loiseleur met in Paris to discuss the next steps in the Golden Grain transaction.
• June 8, 1999: Jurimex, IPC, Mr. Loiseleur, Elena Garmash, a Case France employee, and Leopold Plattner, the President of Case Europe, met in Paris again.
• early June 1999: Jurimex and Case France representatives, met with three European banks, ING, West LB, and Societe Generale, to discuss the possibility of financing. The parties dispute whether any of these meetings eventually resulted in a financing agreement.

During May and June 1999, Jurimex contends that it acted in reliance on the May 4 agreement. Jurimex contends that representatives traveled to Kazakhstan to conduct project and feasability studies, meet with Golden Grain representatives and local government officials, and discuss an extension of credit with a Kazakh bank. Jurimex further contends that it and IPC agreed to form Arge-IPC-Jurimex, for the purpose of completing the Golden Grain transaction. Finally, Jurimex contends that it negotiated with offtakers to buy

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                    Page 2

Slip Copy, 2006 WL 1995128 (D.Del.)
**(Cite as: Slip Copy)**

295,000 of the 300,000 tons of wheat and that it secured a $5.8 million non-delivery guarantee from a Kazakh bank.

In mid-June 1999, letters were exchanged between Jurimex, IPC, and Case France discussing, inter alia, financing issues. The letters exchanged indicated that ING was not willing to work with Jurimex, but that Case France would continue working with Jurimex if Jurimex would assist in securing other financing. (D.I.125, Ex. L-P). By the end of June 1999, for reasons disputed by the parties, Jurimex was no longer considered a part of the Golden Grain transaction.

## II. PROCEDURAL BACKGROUND

*2 On February 9, 2000, Plaintiffs filed their Complaint, asserting claims for (1) breach of contract and implied covenant of good faith and fair dealing, (2) breach of implied contract, (3) promissory estoppel, (4) quasi-contract/unjust enrichment/restitution, (5) tortious interference, (6) unfair competition and misappropriation, and (7) prima facie tort. (D.I.1). Defendant filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(7), and 19 and the doctrine of forum non conveniens. (D.I.13). The Court granted Defendant's motion to dismiss, concluding that Defendant's subsidiaries, with whom Plaintiffs' interactions took place, were indispensable parties and could not be joined without destroying jurisdiction. (D.I.44). The Court, however, did not address Plaintiffs' argument that Defendant could be sued due to the agency relationship between Defendant and its subsidiaries, because Plaintiffs had not alleged an agency relationship in their Complaint. *Id.* Plaintiffs subsequently sought leave to amend their Complaint (D.I.46), but the Court denied that motion, concluding that an amendment would be futile (D.I.51).

The Third Circuit Court of Appeals affirmed the Court's decision on the motion to dismiss, but reversed the Court's decision on the motion for leave to amend, concluding that Plaintiffs had sufficiently alleged agency in their Amended Complaint. *Jurimex Kommerz Transit G.m.b.H v. Case Corp.*, 65 Fed. Appx. 803 (3d Cir.2003). The Third Circuit concluded that Plaintiffs were not required to clearly establish an agency relationship at the pleading stage and remanded, stating that Plaintiffs should be permitted to conduct discovery on the agency issue. *Id.*

## III. PARTIES' CONTENTIONS

By its Motion, Defendant contends that the Court should grant summary judgment in its favor because no contract was ever formed. Defendant further contends that Plaintiffs have failed to establish an agency relationship between Defendant and its subsidiaries, and therefore, summary judgment must be granted for failure to join indispensable parties. Finally, Defendant contends that the Court should dismiss the case based upon the doctrine of forum non conveniens.

In response, Plaintiffs contend that there are genuine disputes of material fact as to the existence of a contract and an agency relationship between Defendant and its subsidiaries. Plaintiffs also contend that Defendant may not raise the defense of forum non conveniens because the Court has already rejected the defense twice.

## IV. LEGAL STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c). In determining whether there are triable issues of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976). However, a court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                Page 3

Slip Copy, 2006 WL 1995128 (D.Del.)
**(Cite as: Slip Copy)**

U.S. 133, 150 (2000).

*3 To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial." ' *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) (citations omitted). However, the mere existence of some evidence in support of the nonmovant will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmovant on that issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

## V. DISCUSSION

The Court must first consider whether the subsidiaries were acting as Defendant's agents in the Golden Grain Transaction. If they were not acting as Defendant's agents, the Court will grant Defendant's motion for summary judgment, because the subsidiaries must be joined as necessary parties in order to hold the parent company liable.[FN1]

> FN1. As a general rule, the existence of an agency relationship is decided in a trial on the merits. However, where the parties have been given an opportunity to conduct discovery on the agency relationship, and where the plaintiffs have failed to put forth sufficient evidence of such a relationship, the policy of judicial economy is served by a decision on summary judgment. *Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc.,* 456 F.Supp. 831, 838 (D.Del.1978) (court granted summary judgment on the agency issue and dismissed the case for failure to join indispensable parties following discovery).

A principal is liable for the actions of its agent that are within the scope of the agent's actual or apparent authority. *Restatement (Second) of Agency* § 140. It is well-settled that a subsidiary does not become an agent of its parent corporation merely because the parent corporation owns a majority of the its voting shares. *Restatement (Second) of Agency* § 14M. Rather, actual authority is created by words or conduct of the principal, which reasonably cause the agent to determine that the principal wishes the agent to act on the principal's behalf. *Edwards v. Born, Inc.,* 792 F.2d 387, 389-90 (3d Cir.1986).[FN2] Apparent authority, on the other hand, can be created by words or conduct of the principal, which reasonably cause a third party to believe that the agent is acting on the principal's behalf. *Id.* at 390.

> FN2. The parties cite to case law from the Third Circuit, District of Delaware, and Delaware state courts in discussing agency. In their briefs, the parties suggest that Austrian, Kazakh, French, or English law may apply to the issue of whether there is a contract. For the purpose of determining whether there is an agency relationship, the Court will refer to general agency principals, as discussed in the case law cited by the parties. *Japan Petroleum,* 456 F.Supp. at 840, n. 17.

The Court concludes that no jury could reasonably find that Defendant's subsidiaries had actual authority to act on Defendant's behalf. Plaintiffs contend that Defendant's subsidiaries had actual authority based on oral authorization. However, Plaintiffs admit that there is no written record of such authorization and have failed to put forth any other evidence of this oral authority. (D.I. 127 at 6). At this stage of the proceedings, the Court cannot accept Plaintiffs' bald assertions that such authority existed. Furthermore, in its opinion reversing the Court's decision on Plaintiffs' motion to amend, the Third Circuit suggested that evidence of an agency relationship could be found in "documents concerning the communications between Case and its subsidiaries specifically limited to the Golden Grain transaction." *Jurimex,* 65 Fed. Appx. at 808. Plaintiffs have failed to put forth any such evidence. Accordingly, the Court concludes that Plaintiffs have failed to establish actual authority sufficient to survive a motion for summary judgment.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 1995128 (D.Del.)
**(Cite as: Slip Copy)**

*4 The Court also concludes that no jury could reasonably find that Defendant's subsidiaries had apparent authority to act on Defendant's behalf. Plaintiffs contend that apparent authority was created through (1) the statements and actions of several parties to the Golden Grain transaction, (2) a duplication of one officer on Defendant's and Case Europe's boards, and (3) Jurimex's previous transactions with Defendant. The Court will address each of these contentions in turn.

Plaintiffs point to the words and actions of every person involved in the transaction, except Defendant's, in an attempt to demonstrate an agency relationship.FN3 For example, Plaintiffs have put forth the internal communications of ING's attorneys and a letter furnished by the Kazakh government. (D.I.127). Plaintiffs also contend that the actions and words of Defendant's subsidiaries created apparent authority. (D.I. 127 at 32-35). However, "apparent authority can never be derived from the acts of the agent alone." *Finnegan Const. Co. v. Robino-Ladd Co.,* 354 A.2d 142, 144 (Del.Super.1976). Furthermore, in order to establish an agency relationship, Plaintiffs must point to words or actions *of the principal,* which Plaintiffs have admitted they cannot do. (D.I.125, Ex. E).

> FN3. The Court suggests that the references made by other parties involved in the Golden Grain transaction to "Case Corporation" were in fact references to Case France. Plaintiffs also failed to make this distinction in their briefing, by using "Case Corporation" and "Case" to refer to Case France and Defendant.

Plaintiffs also contend that there is apparent authority based on Mr. Chiffert's dual roles on Defendant's board and as Case Europe's president. However, "the fact that a parent and a subsidiary have common officers [does not] necessarily indicate an agency relationship." *Japan Petroleum,* 456 F.Supp. at 841. The Court notes Plaintiffs' argument that Mr. Chiffert sent a letter to a bank in Kazakhstan on Defendant's letterhead. However, the Court finds this letter irrelevant to the creation of apparent authority. The letter was sent on August 18, 1999, long after Plaintiffs were "cut out" of the transaction, and therefore, could not have contributed to Plaintiffs' belief that Defendant's subsidiaries were acting on Defendant's behalf. (D.I.128, Ex. 19).

Finally, Plaintiffs argue that there is apparent authority based upon a transaction that took place in 1998 ("the Volgograd transaction"), which involved Case Corporation, Case France, and Jurimex Kommerz Agrar and Steel, who is not a party to this case. An agency relationship can only be established through acts "relevant to the plaintiff's claim of wrongdoing." *Phoenix Canada Oil Co. v. Texaco, Inc.,* 842 F.2d 1466, 1477-78 (3d Cir.1988) (citing *Fisser v. Int'l Bank,* 282 F.2d 231, 238 (2d Cir.1960)). Plaintiffs have admitted that the Volgograd transaction is entirely unrelated to the Golden Grain transaction. (D.I. 125, Ex. D at 55). Accordingly, the Court is not persuaded by any of Plaintiffs' arguments.

### VI. CONCLUSION

For the reasons discussed, the Court concludes that Plaintiffs have failed to establish an agency relationship between Defendant and its subsidiaries sufficient to survive a motion for summary judgment. Accordingly, the Court concludes that the subsidiaries are indispensable parties, and therefore, Defendant Case Corporation's Motion For Summary Judgment And To Dismiss Based Upon The Doctrine Of Forum Non Conveniens (D.I.123) will be granted.

*5 An appropriate Order will be entered.

### ORDER

At Wilmington, the 17th day of July 2006, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that Defendant Case Corporation's Motion For Summary Judgment And To Dismiss Based Upon The Doctrine Of Forum Non Conveniens (D.I.123) is *GRANTED.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.