Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2003 WL 145407 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

C
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
XL SPECIALTY **INSURANCE** COMPANY, Plaintiff,
v.
ENVISION PERIPHERALS, INC., Defendant.
**No. 01-769 GMS.**

Jan. 21, 2003.

*MEMORANDUM AND ORDER*

SLEET, J.

I. INTRODUCTION

*1 On November 21, 2001, the plaintiff, XL Speciality **Insurance** Company ("XL") filed the above-captioned declaratory action against the defendant, Envision Peripherals, Inc. ("Envision"). In this action, XL seeks a declaration that it is not **contractually** obliged to provide Envision with indemnification or a defense in a separate patent infringement action.

Presently before the court are XL's motion for summary judgment and Envision's cross-motion for partial summary judgment. For the following reasons, the court will grant XL's motion and deny Envision's motion.

II. STANDARD OF REVIEW

The court may grant summary judgment only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue is "genuine" if, given the evidence, a reasonable jury could return a verdict in favor of the non-moving party. *See, e.g., Abraham v. Raso,* 183 F.3d 279, 287 (3d Cir.1999) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-51 (1986)); *Lloyd v. Jefferson,* 53 F.Supp.2d 643, 654 (D.Del.1999) (citing same). A fact is "material" if it bears on an essential element of the plaintiff's claim. *See, e.g., Abraham,* 183 F.3d at 287; *Lloyd,* 53 F.Supp.2d at 654. On summary judgment, the court cannot weigh the evidence or make credibility determinations. *See Anderson,* 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict ."); *International Union, United Auto., Aerospace & Ag. Implement Workers of America, U.A.W. v. Skinner Engine Co.,* 188 F.3d 130, 137 (3d Cir.1999) ("At the summary judgment stage, a court may not weigh the evidence or make credibility determinations; these tasks are left to the fact finder."). Instead, the court can only determine whether there is a genuine issue for trial. *See Abraham,* 183 F.3d at 287. In doing so, the court must look at the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences, and resolving all reasonable doubts in favor of that party. *See, e.g., Pacitti v. Macy's,* 193 F.3d 766, 772 (3d Cir.1999). With this standard in mind, the court will now describe the facts leading to the motions presently before the court.

III. BACKGROUND

XL issued a policy of Commercial Liability **Insurance** ("the Policy") to Envision for the period between April 1, 2000 to April 1, 2001. The Policy is written on American Association of **Insurance** Services ("AAIS") Commercial Liability Coverage Form GL-200. AAIS is a licensed rating organization that publishes standardized **insurance** forms that are widely used throughout the **insurance** industry. The GL-200 corresponds closely to the **Insurance** Services Office ("ISO") commercial

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 2
Not Reported in F.Supp.2d, 2003 WL 145407 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

general liability coverage form that is the most prominently used commercial liability form.

*2 The principal coverages identified in the Policy include "bodily injury and property damage," "medical payments," "products and completed work," "fire legal liability" and "personal injury and advertising injury." [FN1] A tendered claim must be a "covered claim" under one of the principal coverages before XL has any obligation to indemnify or defend.

> FN1. The Policy defines "advertising injury" as an injury arising out of:
> a. oral or written publication of material:
> 1) that slanders or libels a person or organization;
> 2) that disparages a person's or organization's goods, products, or services; or
> 3) that violates a person's right of privacy.
> b. misappropriation of advertising ideas or style of doing business.
> c. Infringement of copyright, title, slogan, trademark, or tradename.
> See Policy, pg. 2.

On February 13, 2001, Elonex Holdings, Ltd. and EIP Licensing, B.B. ("the Underlying Plaintiffs") filed a complaint for patent infringement against Envision ("the Underlying Complaint) in the United States District Court for the District of Delaware. In this complaint the Underlying Plaintiffs sought injunctive relief and damages, or alternatively, a reasonable royalty for Envision's alleged infringement of U.S. Patent Nos. 5,389,952, 5,648,799, and 5,880,719 ("the Patents"). In essence, the Underlying Complaint alleges that Envision is engaging in patent infringement of one or more claims of the Patents by making, using, offering for sale, and/or selling computer monitors in the United States. See id. at ¶¶ 21, 27, 33. Patent infringement is the only cause of action contained in the Underlying Complaint.

On March 26, 2001, Envision gave XL notice of loss through the broker that issued its policy. Contemporaneously with the notice of loss, Envision tendered the patent infringement claim to XL. Envision sought defense and coverage pursuant to the provisions of the Policy in accordance with the Policy's coverage for "advertising injury."

On June 20, 2001, XL undertook Envision's defense as to the allegations in the Underlying Complaint pursuant to a full and complete reservation of rights as to coverage of the claims under the Policy and its duty to defend. In its reservation of rights letter, XL stated the following:

[w]e also question the applicability of coverage [under the Policy] in that the allegations of patent infringement raised in this case [the Underlying Complaint] do not appear to be claims of "advertising injury." Even if any of the claims in question are advertising injury claims, we question whether such advertising injury claims are seeking damages such as to invoke the duty to defend under the Policy.

[i]t appears that your interest, and The Company's interest, may be better served and protected by a continuing investigation of the facts on the questions of coverage or liability or the entering of a defense on your behalf in any litigation started, or which may arise out of this alleged incident.

[i]t is agreed that The Company, in full and complete reservation of its rights under this policy, may continue to investigate the said incident, undertake the defense or settle any action or claim arising out of said incident. However, The Company does not agree to make payment of any possible verdict or judgment.

See Appendix to XL's Motion for Summary Judgment at 55, 61-62. Following this initial reservation of rights, XL undertook a further investigation of its obligations under the Policy and determined that under the applicable laws of California, it has no obligation to defend or indemnify Envision.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                             Page 3
Not Reported in F.Supp.2d, 2003 WL 145407 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

## IV. DISCUSSION

*3 As an initial matter, the court notes that the Policy does not contain a choice of law provision. The parties agree, however, that California law applies in determining whether Envision is entitled to defense or indemnification under the Policy. This is so because (1) the policy was negotiated in California, (2) the Policy was entered into, and delivered, in California, (3) it was to be primarily performed in California, (4) Envision's principal place of business is in California, (5) Envision paid its premiums in California, and (6) the Policy contained an "Amendment of Policy Terms-California" which amended the Policy to correspond to the cancellation and renewal requirements imposed by California law. The court will therefore apply California law to its analysis.

The construction of an **insurance** policy is a matter of law for the court to decide. *See Barnett v. Fireman's Fund Ins. Co.,* 108 Cal.Rptr.2d 657, 661-62 (Cal.Ct.App.2001). The goal of **contractual interpretation** of **insurance** policies is to give effect to the mutual intention of the parties. *See Bank of the West v. Superior Court,* 10 Cal.Rptr.2d 538, 545 (Cal.1992). Where the parties differ regarding the meaning of an **insurance contract,** the court will be guided by "a reasonable reading of the plain language of the policy." *Id.*

In its **interpretation,** a court must construe the policy as a whole, and its provisions in their full context. *See id.* If the language of the **insurance contract** is clear and explicit, that language will govern, and no further analysis is necessary. *See id.* If the terms of the policy are ambiguous, they must be **interpreted** to protect the "objectively reasonable expectations" of the **insured.** *See id.* This **interpretation** is based upon what the insurer believed the **insured** reasonably understood at the time the policy was made. *See id.* Thus, under California law, even if the policy language is ambiguous, an **insured** will not be able to claim coverage where a reasonable person would not expect it under the language of the policy.

In 1994, Congress amended the Patent Act, effective January 1, 1996, to add the language that " offers to sell" infringing devices constitute an act of direct infringement under 35 U.S.C. § 271(a). The addition of the "offers to sell" language prompted lawsuits against insurers for indemnification and defense costs under Commercial Liability policies. [FN2] While the California Supreme Court has not yet spoken definitively on this issue, the court will take guidance from the California Court of Appeals and the Ninth Circuit Court of Appeals in deciding these motions.

> FN2. Prior to the 1994 amendment, California courts held that, under Commercial Liability Policies similar to the Policy presently at issue, patent infringement was not a covered claim. *See e.g. Aetna Casualty & Surety Co. v. Superior Court,* 23 Cal.Rptr.2d 442 (1993).

In *Maxconn Inc. v. Truck **Insurance** Exchange,* the insurer refused to defend its **insured** against allegations that the **insured** had infringed upon a patent by offering to sell an infringing product. 88 Cal.Rptr.2d 750 (Cal.Ct.App.1999). Like the Commercial Liability policy at issue in the present case, the definition of "advertising injury" in *Maxconn* included "misappropriation" and " infringement of title." *See id.* at 752. The trial court held that the insurer was obligated to provide its insured with a defense against the claims of patent infringement. On appeal, the issue before the court was "whether the claim for patent infringement in the [ ] complaint is covered as an advertising injury offense under the terms of the [Commercial Liability] policy." *Id.* at 753. The Court of Appeals reversed the trial court, holding that patent infringement was not an "advertising injury" covered under Commercial Liability policies. *See id.* at 758. In reaching this conclusion, the *Maxconn* court compared the allegations of the complaint with the terms of the policy and found no potential for coverage. *See id.* at 754-756. Therefore, it found no duty to defend and no duty to indemnify as a matter of law. *See id.* at 758.

*4 Envision argues that the court should not follow the reasoning of this case on three grounds, each of which the court finds unpersuasive. It first argues

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 4
Not Reported in F.Supp.2d, 2003 WL 145407 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

that *Maxconn* is a decision of a lower appellate court, not the California Supreme Court. While the court does not disagree with this statement, *Maxconn* is the only California appellate case to have squarely addressed this issue to date. As the California Supreme Court has not yet spoken on this topic, the court must take what guidance it can from lower courts.

Envision next argues that its case is factually distinguishable from *Maxconn* for two reasons. First, it argues that its status as solely a distributor/seller/advertiser is relevant to the analysis. The court must disagree. It is the CGL policy language that determines whether coverage exists, not the nature of Envision's business activities.

Finally, Envision contends that, unlike the insured in the *Maxconn* case, it has a later-issued insurance policy ("the Chubb Policy") with another company that specifically excludes coverage for patent infringement. Based on the Chubb Policy, Envision contends that the Policy's silence on this issue demonstrates the inherent ambiguity in its coverage. The court must again disagree that this is relevant as the Chubb Policy was issued a year after the Policy at issue. Simply put, the court concludes that Envision has failed to sufficiently distinguish the *Maxconn* case.

The court is further guided by the Ninth Circuit Court of Appeals' recent decision in *Everett Associates, Inc. v. Transcontinental Insurance Company.* 35 Fed. Appx. 450 (9th Cir.2002).[FN3] In that case, the District Court granted summary judgment against an insurer with respect to its duty to defend. *See id.* at 451. On appeal, the Ninth Circuit reversed the District Court's grant of partial summary judgment and instead granted partial summary judgment in favor of the insurer after construing policy language identical to the language of the Policy currently at issue. *See id.* In reversing the District Court, the court held that the insurer had no duty to defend the allegations of patent infringement under the CGL policy language because "Everett's policy cannot be interpreted to create a potential for coverage." *Id.* The court further dismissed the argument that the CGL policy language was ambiguous because it did not specifically mention patent infringement. *See id.* The court concluded:

> FN3. Envision's sole argument as to why the court should not follow the Ninth Circuit's decision in this case is because it is not an officially published case and is, therefore, "uncitable." *See* Envision's Reply Brief (D.I.34) at 7. The court will, however, consider the Ninth Circuit's analysis only as persuasive authority, not as "binding precedent" as Envision appears to fear.

[w]e reject Everett's contention that the 1996 amendment to the statutory definition of patent infringement created a potential for coverage. As a result of the 1996 amendment, patent infringement may arise from advertising activity. [ ] The amendment does not change "whether patent infringement itself ... fall[s] within one of the covered [advertising injury] 'offenses' 'in the policy. [ ] That corrective advertising damages may be recoverable against Everett for patent infringement does not effect whether Everett's **insurance** policy covers patent infringement.

*5 The policy cannot be reasonably **interpreted** to encompass the infringement alleged in the underlying patent suit. We conclude as a matter of law that Transcon had no duty to defend the suit.

*Id.* at 452.

The court finds the *Maxconn* and *Everett* decisions to be persuasive and will thus adopt their reasoning. Applying that reasoning, the court concludes that, because the Policy language at issue is unambiguous, there can be no reasonable expectation of coverage as a matter of law. As in the above cases, the Policy here consists of common and distinct categories of actionable conduct, just as patent infringement is itself a distinct legal claim. Nevertheless, the Policy does not mention patent infringement. Thus, the court finds that the absence of any express reference to patent infringement in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 5
Not Reported in F.Supp.2d, 2003 WL 145407 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

the policy would reasonably lead the insured to believe that patent infringement is not covered. As the *Maxconn* court stated, "[this court does] not believe the drafters of the [CGL] policy intended to expressly cover certain offenses such as slander, libel, invasion of privacy and copyright infringement, but chose to incorporate patent infringement by implication under some category, which, on its face does not include that words ' patent infringement.' " *Maxconn,* 88 Cal.Rptr.2d at 756. This omission is especially telling as patent infringement itself is a well-known and significant cause of action. The court finds, therefore, that summary judgment in XL's favor is appropriate.

### IV. CONCLUSION

Applying California law, the Policy's definition of " advertising injury" cannot, as a matter of law, encompass a claim of patent infringement. Accordingly, there is no duty to defend or indemnify under the Policy.

For these reasons, IT IS HEREBY ORDERED that:

1. XL's Motion for Summary Judgment (D.I.21) is GRANTED.

2. Envision's Motion for Partial Summary Judgment (D.I.28) is DENIED.

3. Judgment be and is hereby entered in favor of XL.

D.Del.,2003.
Xl Specialty Ins. Co. v. Envision Peripherals, Inc.
Not Reported in F.Supp.2d, 2003 WL 145407 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:01CV00769 (Docket) (Nov. 21, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.