Westlaw.

Not Reported in F.Supp.                                                                                                                    Page 1
Not Reported in F.Supp., 1992 WL 162957 (D.Del.), 51 Empl. Prac. Dec. P 41,717
**(Cite as: Not Reported in F.Supp.)**

**H**
Briefs and Other Related Documents

United States District Court, D. Delaware.
Sherlyn & Dimos KONSTANTOPOULOS,
Plaintiffs,
v.
WESTVACO CORPORATION, Defendant.
Civ. A. No. 90-146-CMW.

June 19, 1992.

Thomas Herlihy, III, Wilmington, for plaintiffs.
Donald E. Reid, Wilmington, for defendant.

OPINION
CALEB M. WRIGHT, Senior District Judge.
*1 This action was commenced on March 27, 1990 when plaintiffs filed a complaint alleging job discrimination on the basis of gender and sought relief under Title VII and pendent state law theories of intentional infliction of emotional distress, sexual assault and battery and loss of consortium. Presently before the Court are two motions: (1) plaintiffs have moved to amend the complaint to add a claim under the 1991 Civil Rights Act, and (2) defendant has moved for summary judgment. These motions have been fully briefed and are ready for decision. For the reasons stated herein, each parties' motion will be denied.

*I. FACTUAL BACKGROUND*

Sherlyn Konstantopoulos (hereinafter referred to as "plaintiff") began working at Westvaco Corporation (hereinafter referred to as "Westvaco" or "defendant ") in September, 1987 and, following a lay-off, returned to Westvaco in July, 1988. (Docket Item 141, p. A1). At the time she was first hired and upon being rehired in July, 1988, plaintiff held the position of finishing helper in the Finishing Department. (Docket Item 141, p. A1). She remained in this position until April 3, 1989 when she was promoted to the Web Department and began working as a web helper. (Docket Item 141, p. A1; Docket Item 146, p. A182). The Web Department was comprised primarily of male workers and it is in this department that plaintiff claims she was subjected to discriminatory treatment.

Plaintiff worked in the Web Department from April 3, 1989 to April 16, 1989, then returned to the Web Department on May 17, 1989 following an injury to her hand. (Docket Item 141, p. A-1). She remained in the Web Department until August 29, 1989 at which time she was laid off due to a lack of work and was recalled in April, 1990. (Docket Item 141, p. A-1). After being recalled, plaintiff was placed in the Finishing Department and worked as a finishing helper until April 23, 1990 when, again, she was laid off. (Docket Item 141, p. A-1). Plaintiff did not return to work at Westvaco following this final lay-off.

Originally when plaintiff was assigned to the web feed area her supervisor was Mr. Hurley. Her performance in this department was evaluated on a weekly basis. (Docket Item 141, p. A88). The first review she received was positive and encouraging, according to Hurley he generally gave positive reviews initially in order to improve the employee's confidence. (Docket Item 141, pp. A2 and A89). Following this initial evaluation, plaintiff's evaluations were consistently below average and showed no improvement. (Docket Item 141, pp. A3-A14 and Docket Item 146 pp. A107-A113)

Most, if not all, of plaintiff's allegations surround the time she was employed as a web helper and charge that her foreman and co-workers subjected her to sexual harassment, sexual discrimination and sexual assault. (Docket Item 146, pp. A181 through A187). Specifically, the plaintiff alleges that the sexual harassment included a male co-worker unzipping his pants and exposing his underwear to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00022-MPT    Document 114-3    Filed 09/01/2006    Page 2 of 15 Page 3 of 16

Not Reported in F.Supp.                                                                                                    Page 2
Not Reported in F.Supp., 1992 WL 162957 (D.Del.), 51 Empl. Prac. Dec. P 41,717
**(Cite as: Not Reported in F.Supp.)**

plaintiff (Docket Item 146, pp. A183, A191); a male co-worker hung a silver coated wrench from between his legs (Docket Item 146, p. A193); a note was placed on a clipboard near a machine that plaintiff worked on implying the plaintiff's sexual prowess yet indicating that plaintiff was unattractive (Docket Item 146, p. A198); a male co-worker made thrusting motions with his pelvis toward plaintiff when she was bent over working (Docket Item 146, p. A193); a male co-worker made lewd comments about plaintiff's body characteristics (Docket Item 146, p. A204); a male co-worker told plaintiff she belonged in a pornographic magazine (Docket Item 146, p. A204); a male co-worker slipped his finger beneath the plaintiff's buttocks as she was sitting in a chair (Docket Item 146, p. A197); there was a drawing of a penis on the floor in the web press area (Docket Item 146, p. A196); a male co-worker verbally assaulted plaintiff in front of other employees (Docket Item 146, p. A196-A197).

*2 Further, according to plaintiff, she was retaliated against for filing a complaint with the Equal Employment Opportunity Commission ("EEOC") in the following ways: she was given poor performance evaluations (Docket Item 146, pp. A107-A113) [FN1]; her locker was damaged and filled with trash (Docket Item 146, pp. A43-A46, A83-A86, A195-A196); there was a derogatory note taped to the machine that plaintiff worked on indicating her inability to be of assistance to the department (Docket Item 146, pp. A88-A90, A194-A195); she was forced to work with those whom she complained about (Docket Item 146, pp. A48-49); and she was singled out by her superiors to document all alleged mistakes in an effort to build a record against plaintiff when mistakes of similar caliber of her male co-workers were not documented (Docket Item 146, pp. 100-113).

Following several of these acts, plaintiff allegedly made complaints to defendant's management, specifically she complained to Frank Alcamo, the plant manager. (Docket Item 141, pp. A99-A103). The first of the complaints was allegedly made in mid-June 1989. (Docket Item 141, p. A98). According to the defendants, Alcamo talked to the plaintiff's supervisor (McKinley) and her foreman (Hurley). In addition, a meeting was conducted between Westvaco's personnel manager (Hawkins) and the plaintiff to further investigate the nature of her complaints on June 21, 1989. (Docket Item 141, pp. A97, A104-A105).

Per the plaintiff's request, a union representative was summoned to the meeting (Docket Item 141, pp. A104-A105). After the union representative was present, plaintiff disclosed the names of two Westvaco employees who allegedly participated in incidents of harassment. (Docket Item 141, pp. A106-A110).

That afternoon, the people who the plaintiff had named as being involved in these incidents were separately confronted with the accusations. (Docket Item 141, pp. A160-A172). Further, they were told that Westvaco would not tolerate sexually harassing acts and were read Westvaco's policy statement regarding equal employment opportunities. (Docket Item 141, pp. A76-A84, A160-A172). Both of the employees denied the allegations and indicated they understood the company's policy regarding the work environment. (Docket Item 141, pp. A76-A84, A160-A172).

The plaintiff was then asked to come back into the meeting (after the other two employees had been excused) in an attempt to find out how she believed her training was deficient. (Docket Item 141, p. A111). Plaintiff, in this second meeting requested she not have to work around the two employees she had earlier complained of and later in the day her shift was changed to accommodate this request. (Docket Item 141, pp. A112-113). Westvaco's standard sixty day probationary period was then extended an additional thirty days for the plaintiff. (Docket Item 141, pp. A114-A115). Thus, beginning June 22, 1989 plaintiff began working under Larry Cahall instead of Hurley with whom she had had numerous problems. (Docket Item 141, p. A7). Her performance evaluations under Cahall did not change significantly from those she received from Hurley (see footnote 1); they remained primarily negative in nature. (Docket Item 141, pp. A7-A14).

*3 On July 21, 1989 a complaint was filed with the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                        Page 3
Not Reported in F.Supp., 1992 WL 162957 (D.Del.), 51 Empl. Prac. Dec. P 41,717
**(Cite as: Not Reported in F.Supp.)**

Delaware Department of Labor (DDOL) by the plaintiff alleging:
I. On 7/20/89 my locker was based in following two (2) past incidences of sexual harassment and threats by fellow male employees.
II. The reason given was vandalism (someone damaged my locker)
III. I believe I have been discriminated against and retaliated against because of my sex (female) for the following reasons.
1. I had reported incidences of sexual harassment and harassment to management.
2. My locker was the only one so violently damaged.
3. Reference was made about me by the foreman on duty to the shop steward as the "girl who had the problems over there".

(Docket Item 141, p. A21 as it appears in the original, without correction).

On September 11, 1989 the following information was provided to the EEOC duty officer investigating the plaintiff's claim:
I. I have been subjected to additional sexual harassment in my job as Webb Helper with Westvaco, most recently approximately August 24, 1989.
II. No action was taken by the company to resolve the problem.
III. I believe that this action is retaliation against me and additional sexual harassment because;
1. I filed a sexual harassment complaint against the company on July 21, 1989 (# 170890967).
2. A derrogatory sexual remark was written about me on the clipboard for everyone to see. Nothing was done about it by the foreman.
3. I was given a verbal warning for failing to bring the tape down for enough, when I was not trained how to do it properly.
4. As a result of the continued harassment I have suffered anxiety and stress resulting in loss time from work and extensive medical bills.

(Docket Item 141, p. A35 as it appears in the original, without correction). In March, 1990 the present action was filed. On May 15, 1990 an affidavit was filed with the EEOC claiming that plaintiff was scheduled to work one day with the two employees she had previously complained about. According to the affidavit, this was done in retaliation for having challenged a poor evaluation she received. (Docket Item 141, pp. A55-A57).

*II. AMENDMENT OF THE COMPLAINT*

Plaintiffs have moved to amend the complaint to include a claim for relief under the Civil Rights Act of 1991 (Pub.L. No. 102-166, 105 Stat. 1071-1100 (signed into law on November 21, 1991)) (hereinafter "Act"). Unless the Court determines that the Act should be applied retroactively, amendment of the complaint is unnecessary. The parties take opposing positions regarding the retroactive applicability of this Act. As well, the federal courts that have considered this issue have struggled to reach the appropriate application of this Act to cases pending at the time of enactment. Due to the division among the Courts on this issue, a brief overview is warranted.

The three United States Courts of Appeals that have considered this issue have all held that the Act should only apply prospectively. *Mozee v. American Commercial Marine Service Co.,* 963 F.2d 929, 1992 WL 92511 (7th Cir., May 7, 1992); *Fray v. Omaha World Herald Co.,* 960 F.2d 1370, 1992 WL 65663 (8th Cir., April 3, 1992); *Vogel v. City of Cincinnati,* 959 F.2d 594 (6th Cir.1992). In *Mozee,* a divided panel of the Court of Appeals for the Seventh Circuit held that the intent of Congress could not be divined from the language of the statute or from the legislative history. *Mozee* 1992 WL 92511, *1. Then, noting the tension that exists in the United States Supreme Court decisions regarding retroactive application of new statutes, the majority held that if a provision governs a parties substantive rights it should be applied only prospectively. However, the Court refused to decide whether prospective or retrospective application was appropriate when merely procedural or damage provisions were concerned as it was unnecessary to the disposition of the case before it. *Mozee,* 1992 WL 92511, *10.

*4 In *Fray,* a divided panel for the Eighth Circuit Court of Appeals held that the congressional intent

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

for prospective application of the Act was evidenced by the fact that the original bill, which contained an explicit retroactive provision, was vetoed by the president and the bill eventually signed into effect did not contain a provision for retroactivity. *Fray,* 1992 WL 65663 *3.

Finally, in *Vogel,* a divided panel for the Sixth Circuit Court of Appeals concluded the Act should only be applied prospectively on three grounds: (1) the bill lacked clear legislative intent for retroactive application; (2) the EEOC had decided not to apply the Act to events that occurred prior to enactment; and (3) retroactive application would affect the substantive rights and obligations of the parties. *Vogel,* 959 F.2d at 666.

Although the Third Circuit Court of Appeals has yet to decide the applicability of the Act to cases pending on a Court's docket at the time of enactment, the decisions of the Courts of Appeals from the other circuits consistently held that prospective application is appropriate, even if for different reasons. Although this is not binding on this Court, there exists some persuasive effect of the consistent holdings. The Court however is not persuaded by the *Fray* decision as it found that the legislative intent for prospective application was clear. The Court finds, based on the legislative history and the multitude of cases reaching different conclusions, that there is no clear legislative mandate regarding prospective or retroactive application of the Act. For this reason, the Court must look to other sources in determining the proper application of the Act.

The EEOC issued notice 915.002 [FN2] on December 27, 1991 concluding that it would not seek damages under the 1991 Act for acts occurring prior to the date of enactment. (Labor Relations Reporter (BNA), Vol. 8c, No. 688 at 405: 6971-75 (December 27, 1991)). Absent clear congressional intent, deference is to be paid to the construction of a statute by the administrative agency charged with carrying it out. *E.E.O.C. v. Commercial Office Products, Inc.,* 486 U.S. 107, 115, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988); *Chevron U.S.A., Inc. v. Natural Resources Defense Counsel, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

There are two situations, however, when deference to an administrative agency's interpretation is not appropriate. First, if such an interpretation is deemed unreasonable in light of controlling law, the Court has a duty to reject such agency's position. *E.E.O.C. v. Arabian Oil Co.,* 499 U.S. 244, 111 S.Ct. 1227, 1235, 113 L.Ed.2d 274 (1991) (the Court has a duty to reject an unreasonable position); *Lute v. Consolidated Freightways, Inc.,* 789F.Supp. 964, 1992 WL 87918, *1 (N.D.Ind., April 27, 1992) (reasonableness is considered in light of the law of the Circuit). Second, if the agency's interpretation is based on analysis of Court decisions then it is not entitled to deference; only if the interpretation is solely of the statute is deference appropriate. *Lute v. Consolidated Freightways, Inc.,* 789 F.Supp. 964, 1992 WL 87918, *1 (N.D.Ind., April 27, 1992). The Court finds that because the EEOC's policy statement explicitly discusses the tension between the United States Supreme Court decisions with respect to retroactivity, and thus, necessarily relies on analysis of these cases to provide its interpretation, the Court cannot rely solely upon deference to the agency interpretation in deciding this issue. Labor Relations Reporter (BNA), Vol. 8c, No. 688 at 405: 6971, 405: 6975 (December 27, 1991). As there exists no clear directive for application of the Act, the Court must look to judicial precedent in deciding the applicability of the Act to cases currently pending before the Court.

*5 District Courts across the country are split on the issue of whether the act should be applied retroactively.[FN3] More importantly, for purposes of this decision, the District Courts of the Third Circuit are also split on the issue. *Savko v. Port Authority of Allegheny County,* 800 F.Supp. 268, 1992 WL 110466 (W.D.Pa., May 22, 1992) (applying Act retroactively); *Sample v. Keystone Carbon,* 786 F.Supp. 527, 1992 WL 50378 (W.D.Pa., March 4, 1992) (applying Act retroactively); *Thompson v. Johnson & Johnson Mgmt. Info. Ctr.,* 783 F.Supp. 893, 1992 WL 29127 (D.N.J., February 21, 1992) (refusing to apply Act retroactively); *Kimble v. DPCE, Inc.,* 784 F.Supp. 250, 1992 WL 44407 (E.D.Pa., February 13, 1992) (refusing to apply Act retroactively); *Thomas v. Frank,* 791 F.Supp. 470, 1992 WL 59037 (D.N.J.,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1992 WL 162957 (D.Del.), 51 Empl. Prac. Dec. P 41,717  
**(Cite as: Not Reported in F.Supp.)**

Page 5

February 13, 1992) (refusing to apply Act retroactively); *Tyree v. Riley,* 783 F.Supp. 877, 1992 WL 23253 (D.N.J., February 7, 1992) (refusing to apply Act retroactively); *Futch v. Stone,* 782 F.Supp. 284, 1992 WL 18784 (M.D.Pa., January 13, 1992) (refusing to apply Act retroactively); Neither the Third Circuit nor a district court in the District of Delaware has issued an opinion deciding the question of retroactivity of the 1991 Civil Rights Act, thus, it is incumbent on this Court to decide the proper application.[FN4]

The question that must be answered is how the confusion in the retroactive application of statutes that has been created by recent United States Supreme Court decisions should be resolved. Compare *Bradley v. Richmond Bd.,* 416 U.S. 696, 94 S.Ct.2006, 40 L.Ed.2d 476 (1974), *with Bowen v. Georgetown University Hosp.,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). The tension that exists between these cases has been noted on many occasions by lower Federal Courts and on at least one occasion by the United States Supreme Court. *See Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990) (recognizing but refusing to reconcile the apparent tension); *Mozee v. American Commercial Marine Service Co.,* 963F.2d 929, 1992 WL 92511 (7th Cir., May 7, 1992); *Fray v. Omaha World Herald Co.,* 960 F.2d 1370, 1992 WL 65663 (8th Cir., April 3, 1992); *Vogel v. City of Cincinnati,* 959 F.2d 594 (6th Cir.1992). However, although tension may exist, it is not for a lower court to determine when a Supreme Court decision "that rests on reasons rejected in some other line of decisions" overrules a prior decision. *Rodriguez de Quijas v. Shearson/American Express Inc.,* 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). In such a case we are instructed to "follow the case which directly controls." *Id.* Thus, given the state of the law, it is necessary to resolve the conflict in accord with current Supreme Court and Third Circuit case law.

The Court finds most persuasive the fact that the Third Circuit has consistently taken the approach, following both the *Bradley* and *Bowen* decisions, that a new legislative enactment should be applied retrospectively unless to do so would affect substantive rights or obligations. *Davis v. Omitowoju,* 883 F.2d 1155 (3d Cir.1989); *Bonjorno v. Kaiser Aluminum & Chem. Corp.,* 865 F.2d 566 (3d Cir.1989), *aff'd in part, rev'd in part,* 494 U.S. 837 (1990). Further, the Third Circuit continues to cite *Bradley* following the decision in *Bowen,* thus the Court finds that the appropriate test in this Circuit for prospective application is whether a person's rights and obligations will be affected if the general rule of retrospective application is followed. *U.S. Healthcare, Inc. v. Blue Cross of Philadelphia,* 898 F.2d 914, 922 n. 9 (3d Cir.1990) *cert. denied,* 111 S.Ct. 58 (1990) (applying the manifest injustice test to find that retrospective application was appropriate); *Air-Shields, Inc. v. Fullam,* 891 F.2d 63, 65 (3d Cir.1990) (applying the rule of *Bradley* without discussing the manifest injustice test); *Davis,* 883 F.2d at 1170 (stating prospective application of a statute is the general rule, but only when application of the new law would affect rights or obligations). To determine if a party's rights and obligations will be affected by a change in the law such that prospective application is called for, the Court adopts the manifest injustice test outlined in *Bradley* where consideration is given to: "(1) the nature and identity of the parties, (2) the nature of their rights, and (3) the nature of the impact of the change in law upon those rights." *Bradley,* 416 U.S. at 717.

*6 To begin then, it is necessary for this Court to delineate what it is the plaintiff wishes to amend her complaint to include under the new Act. Pursuant to the motion to amend, the plaintiff seeks compensatory and punitive damages as provided in Section 102(b) of the Act, a jury trial as provided in Section 102(c) and an award of expert fees as provided in Section 113 of the Act. (Docket Item 126). Thus, the Court must determine if these provisions of the Act will cause manifest injustice if retrospective application of the Act is permitted.

This Court adopts the analysis set forth by Judge Schwartz in his recent opinion *Crumley v. Delaware State College* with respect to what warrants a finding of manifest injustice. *See Crumley v. Delaware State College,* Civ. A. Nos. 90-429/90-711-MMS, Schwartz, J. (D.Del. June 11, 1992), pp. 18-26. For simplification in disposing

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.    Page 6
Not Reported in F.Supp., 1992 WL 162957 (D.Del.), 51 Empl. Prac. Dec. P 41,717
**(Cite as: Not Reported in F.Supp.)**

of this matter the Court will only address that which it finds decisive of this issue.

As Judge Schwartz found portions of the New Jersey District Court opinion in *Thomas v. Frank,* 791 F.Supp. 470, 1992 WL 59037, persuasive in *Crumley,* so too does this Court. Therein, Judge Debevoise stated:
Retroactive application of the compensatory damages provision of the 1991 Act does not create a new cause of action. It does, however, create a new source of liability under which the Defendant may be responsible for substantial monetary damages. As such, it is substantive rather than procedural in nature. *See Khandelwal v. Compuadd Corp.,* slip. op. at *12 n. 5

*Thomas v. Frank,* 1992 WL 59037, at *6. Thus, although no new rights or liabilities are explicitly provided for in the Act, the imposition of the additional damage elements creates an obligation that is more similar to a substantive obligation than a procedural one. This, in conjunction with the well reasoned approach taken by Judge Schwartz in *Crumley* regarding the need for businesses to be able to make informed decisions in the employment context, persuades this Court that it would work manifest injustice if any of the provisions sought to be applied retroactively by the plaintiff in this case were permitted. As stated by Judge Schwartz:Accordingly, the Court concludes that to apply the 1991 Act retroactively would impact substantially on defendant's previous rights, but would not impact on plaintiff's continuing right to be free from discrimination. Moreover, retroactive application of the 1991 Act cannot deter discriminatory conduct which occurred *prior* to the passage of the Act. Accordingly, the Court will not apply retroactively the compensatory and punitive damages provisions of section 102.

*Crumley,* slip op. at 24 (emphasis in the original). For the reasons stated herein, the Court concludes the damage provisions of section 102 of the Act should be applied prospectively only.

Section 113 of the Act provides for an award of expert fees previously not permitted in this type of litigation. Unlike *Bradley* where there was potential exposure to an award of attorney fees prior to the statutory amendment, expert fees were not recoverable in a Title VII case prior to the enactment of the 1991 Act. The Court finds this potential increase in liability could alter the parties rights and obligations substantially if retrospective application were permitted and thus, prospective application of this provision is warranted.

*7 Having disposed of all potential relief that is not equitable in nature, the Court adopts the position taken by Judge Schwartz with respect to the right to a jury trial. *Crumley,* slip. op. at 24. Thus, the Court concludes that the provision permitting a jury trial shall, in this case, be applied only prospectively as all that remains are the plaintiff's equitable claims.

Based on the foregoing, the Court concludes that those sections of the Act the plaintiff wishes to invoke in their motion to amend the complaint should be applied prospectively only. Thus, because the motion to amend fails to provide any claim that potentially could result in additional liability, the motion to amend will be denied.

*III. SUMMARY JUDGMENT MOTION*

*A. SUMMARY JUDGMENT STANDARD*

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).
If there is no genuine issue as to any material fact then the moving party is entitled to judgment as a matter of law. *Id.* An issue is "genuine" only if the evidence is such that a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Substantive law identifies which facts are "material" and only disputes over facts that "might affect the outcome of the suit under the governing law" will defeat summary judgment. *Id.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 7
Not Reported in F.Supp., 1992 WL 162957 (D.Del.), 51 Empl. Prac. Dec. P 41,717
**(Cite as: Not Reported in F.Supp.)**

The moving party need not affirmatively refute the elements; rather, they need only show the insufficiency of proof of those elements. *Houser v. Fox Theatres Management Corp.,* 845 F.2d 1225 (3d Cir.1988). When the moving party has discharged their burden, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)).

Any doubts that exist as to the existence of genuine issues of material facts are to be resolved against the movant. *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 900 (3d Cir.), *cert. dismissed,* 483 U.S. 1052 (1987). Moreover, all inferences are to be viewed in light most favorable to the non-movant. *Id.*

The judge's function on summary judgment is merely to determine whether a genuine issue of fact for trial exists or whether the evidence is so one-sided that one party should prevail as a matter of law. *Liberty Lobby,* 477 U.S. at 251-52. The judge should not weigh evidence or determine the truth of any matters in dispute. *Id.* at 252.

### B. DISCUSSION

Defendant raises several grounds for summary judgment and each will be addressed in the order in which it was raised.

### 1. Lack of Jurisdiction [FN5]

*8 As a preliminary matter, defendant contends this Court lacks jurisdiction over the sexual assault and battery claim (Count V of the complaint) as it was not brought before the EEOC as required prior to suing in a Federal Court under Title VII. According to the defendant none of the complaints filed with the EEOC or DDOL by plaintiff ever raised the issues that give rise to her claim of sexual assault and battery. Specifically, defendant claims the plaintiff did not disclose or complain of any of the following until she responded to interrogatories filed by the defendant in the present action: (1) a male co-worker grabbed her neck while making verbal threats; (2) a co-worker placed his finger between her buttocks and the chair as she was sitting in it; and (3) a male co-worker raised clenched fists and made verbal threats toward her.

The defendant contends that because the EEOC never had an opportunity to investigate these claims she is not entitled to now raise them as she failed to exhaust her administrative remedies with respect to these. Further, according to the defendant, too much time has passed since the alleged acts occurred and they are thus barred by the statute of limitations.

The plaintiff, on the other hand, claims that although these specific incidents were not raised before the EEOC they are reasonably related to those charges made and thus, should be permitted as part of this instant action. According to the plaintiff, so long as there is a reasonable relation to the claims made before the EEOC such that an appropriate investigation could be undertaken, the jurisdiction of this Court is properly invoked upon receipt of the right to sue letter from the EEOC. Each party, of course, attempts to distinguish the case support raised by the other party on this issue. For the reasons that follow, the Court finds that a reasonable relationship exists between the allegations the plaintiff raised to the EEOC or DDOL and those relating to the sexual assault and battery and, as such, the motion for summary judgment with respect to this claim will be denied.

There is no question that filing of a charge with the EEOC is a jurisdictional prerequisite to a civil action under Title VII. 42 U.S.C. § 2000e-5(e); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 798 (1973); *Ostapowicz v. Johnson Bronze Co.,* 541 F.2d 394, 398 (3d Cir.1976); *Zalewski v. M.A.R.S. Enterprises, Ltd.,* 561 F.Supp. 601, 604 (D.Del.1982). This, however, is not a case where no charge was filed with the EEOC. *See, Greene v. Carter Carburetor Co.,* 532 F.2d 125 (8th Cir.1976). In this case, there was an initial claim filed with the DDOL and several amendments thereto made to the DDOL and EEOC prior to the right to sue letter being issued. Plaintiffs do not contend, nor could

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                                    Page 8
Not Reported in F.Supp., 1992 WL 162957 (D.Del.), 51 Empl. Prac. Dec. P 41,717
**(Cite as: Not Reported in F.Supp.)**

they, that in any of the filings with the administrative agencies were these specific facts raised, rather the plaintiffs claim that their complaints and these additional facts are reasonably related to one another and thus should not be barred.

*9 This Court in *Zalewski* provided the following standard in such a situation:
The difficulty in resolving such a problem is caused by the tension between the judicially developed presumption against technical defaults under Title VII, *see e.g., Love v. Pullman,* 404 U.S. 522, 527 (1972), and Congress' clear mandate that Title VII claimants initially resort to administrative proceedings. As a result of this tension, the Courts have developed a rule that permits a Title VII plaintiff to expand the complaint beyond the specific elements contained in the charge before the EEOC. Under such a rule, the elements which form the subject matter of the complaint may be broader than the charge, so long as those elements are "reasonably related to the charge or may reasonably be expected to grown out of it." *Hicks v. Abt Associates, Inc.,* 572 F.2d 960, 964 (3rd 1978); *Ostapowicz v. Johnson Bronze Co., supra* at 398. The key element then that controls the scope of the complaint is the scope of the investigation. *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (5th Cir.1970).
Where, however, the complaint adds subject matter which is not reasonably related to the charge made to the EEOC, and was not a part of its investigation, and not subject to conciliation in the administrative process, the Courts have generally refused to entertain the expanded claims. (Citations omitted).

*Zalewski,* 561 F.Supp. at 604. In *Zalewski* there was clear evidence that the plaintiff had made a conscious decision not to include a claim for sexual harassment when he chose to bring forward a claim of sexual discrimination. The harassment claim, had it been pursued, was to be based on an allegation that the plaintiff had been promised a promotion if he agreed to perform sexual favors for his supervisor. His discrimination claim was based on his termination of employment followed immediately by the employer hiring a female to replace him. Thus, an investigation into the discriminatory firing would not likely have led to

the underlying complaint regarding harassment, they were completely unrelated and, significantly, the plaintiff made a conscious choice not to pursue the harassment claim during the administrative process. *See,* 561 F.Supp. at 605.

In *Ferguson v. E.I. duPont de Nemours and Co., Inc.,* 560 F.Supp. 1172 (D.Del.1983) the plaintiff had made a claim to the EEOC for an alleged discriminatory failure to promote. When the action was filed with the Court the plaintiff alleged sixteen positions that she was barred from receiving a promotion to based on discrimination, only four of which fell in the time frame that plaintiff had alleged in her EEOC complaint. The Court distinguished three categories with respect to the scope of an investigation based on relatedness: (1) subject matter; (2) time; and (3) class characteristics. *Ferguson,* 560 F.Supp. at 1189.
In deciding the relatedness of plaintiff's claims the Court stated:
*10 However, when a continuing violation or several instances of discrimination are alleged, the plaintiff need not traverse the procedural hurdle of filing new EEOC charges for each subsequent act of discrimination if the subsequent acts could reasonably be expected to grow out of the charge before the EEOC or its investigation.

*Ferguson,* 560 F.Supp. at 1189-1190 (footnotes and citations omitted). As in *Ferguson* the Court finds plaintiff's claims of sexual assault and battery to be reasonably related to the charges filed with the EEOC and DDOL with respect to subject matter, time and class characteristics.

In *Montano v. Amstar Corp.,* 502 F.Supp. 295 (E.D.Pa.1980) plaintiff had complained to the EEOC of constructive discharge as a result of race and/or gender based discrimination. She sought to amend her complaint to allege failure to promote, discriminatory pay and sexual harassment claims. *Id.* at 296. While allowing the claims regarding pay and promotion, the Court denied the plaintiff's request to amend to allege sexual harassment, in so doing, the Court stated:
While the Court is satisfied that the EEOC investigation did, or could reasonably have expected to, explore for purposes of race and sex

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 9
Not Reported in F.Supp., 1992 WL 162957 (D.Del.), 51 Empl. Prac. Dec. P 41,717
**(Cite as: Not Reported in F.Supp.)**

comparison the subjects of pay, promotion, work hours and job assignments it is equally confident that the alleged pinching of the charging party's buttocks would not have come to the EEOC's attention except by specific complaint.

*Id.*

Clearly, the case before the Court differs from that case. There the Court was faced with a complaint based solely on wage, promotion and discharge issues, when the plaintiff attempted to bring up an allegation of sexual harassment. In the case before the Court presently, all of the allegations filed with the EEOC or DDOL were based on sexual harassment and many were concerned directly with overt sexual overtones. Thus, the Court finds the plaintiffs EEOC complaint, although not express in nature, is sufficiently related to the claims she now raises to warrant denial of the defendant's motion for summary judgment.

Finally, in *Hicks v. ABT Assoc., Inc.,* 572 F.2d 960 (3d Cir.1978) the Court made it clear that the actual extent of the EEOC investigation is not the limiting factor, rather the scope of the complaint is limited only by what the Court finds could have been uncovered if all claims reasonably related to the filed charges were investigated. *Hicks,* 572 F.2d at 966-967.

Again, the Court is convinced, given the nature of the plaintiff's allegations to the investigating agencies that a reasonable investigation would likely have included the type of allegations she now attempts to raise. Thus, summary judgment on this issue must be denied.

*2. Burden of Proof Not Met on Count III*

Defendant's next claim is that the plaintiff has failed to meet her burden of proof for recovery based on the intentional infliction of emotional distress. The only issue raised by the defendant and briefed by the parties is whether the acts, even if taken as true, are sufficient to be considered outrageous, a necessary element for recovery.

*11 According to the defendant, the Third Circuit has found that recovery of intentional infliction of emotional distress is extremely difficult in the employment context. In so stating, defendant cites a recent Third Circuit case (*Andrews v. City of Philadelphia,* 895 F.2d 1469 (3d Cir.1990)) for this proposition. While a certain reading of that case could lead one to argue the Third Circuit finds outrageousness of conduct extremely difficult in an employment context, the Court finds this to be an erroneous interpretation for application to this case for two reasons.

First, the *Andrews* court did not find that outrageousness could not be proven, rather the Court found the plaintiff had failed to prove the defendants had acted outrageously. Further, the *Andrews* decision was based on Pennsylvania law, not Delaware, and while similarities may exist between the states, this Court is bound to look to Delaware law for treatment of this claim for recovery.

In *Mattern v. Hudson,* 532 A.2d 85 (Del.Super.1987) the Delaware Superior Court set out the following standard:
[I]t is the court's responsibility to determine whether the conduct is so extreme and outrageous as to permit recovery. Of course, where reasonable men might differ, it is for the jury to determine whether the conduct has been sufficiently extreme and outrageous to result in liability. On a motion for summary judgment, the moving party must demonstrate that even when the facts are taken in a light most favorable to the non-moving party he is entitled to prevail as a matter of law.

532 A.2d at 86 (citations and parentheticals omitted). The Court concludes that if all alleged facts are viewed in the light most favorable to the plaintiff that reasonable persons could differ as to whether the behavior was sufficiently outrageous and extreme as to result in liability. The Court finds no support for the contention that conduct in the work environment cannot attain the level of outrageousness necessary to find liability.

In this case, if the allegations of the plaintiff are all taken as true the Court concludes that they are

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 10
Not Reported in F.Supp., 1992 WL 162957 (D.Del.), 51 Empl. Prac. Dec. P 41,717
**(Cite as: Not Reported in F.Supp.)**

sufficiently egregious to warrant denial of summary judgment. Until the time when the Court has before it proof, or the lack thereof, of the allegations presented, it is inappropriate to determine that the plaintiff was not subject to outrageous behavior.

The additional cases cited and provided by the defendant do not warrant much discussion. The factual differences are so apparent between the cited cases and the case presently before the Court that they are completely unpersuasive on the question of what can be considered outrageous in the work environment. *See,* Docket Item 140, Exhibits B & C.

3. *Defendant has No Respondent Superior Liability*

The defendant, as an alternative to claiming that the plaintiff failed to exhaust her administrative remedies with respect to Count V, argues that Westvaco cannot be held responsible for any alleged sexual assault and battery claim on the theory of respondeat superior. In so arguing, the defendant contends that the tortious act must have been committed within the scope of the employee's duties and that plaintiff cannot prove that on these facts.

*12 Further, the defendant claims that no liability may exist for any alleged intentional tort (Counts III [intentional infliction of emotional distress] and V [sexual assault and battery] ) as they are barred either by the workmen's compensation laws or because no respondeat superior liability may be established. Although the Counts were briefed as separate issues, the Court will address all issues regarding respondeat superior liability presently as there is a great deal of overlap in parties' positions.

According to the defendant, no respondeat superior liability may exist as none of the actions taken were within the scope of employment as is required for liability to attach. The defendant properly indicates that Delaware follows the analysis provided by the Second Restatement on Agency in determining if respondeat superior liability is present. As such, the appropriate test is:

(1) Conduct of a servant is within the scope of employment if, but only if:
(a) It is of a kind he is employed to perform;
(b) it occurs substantially within the authorized time and space limits;
(c) it is actuated, at least in part, by a purpose to serve the master, and * * *.
(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

*Restatement 2d, Agency,* § 228; *Coates v. Murphy,* 270 A.2d 527, 528 (Del.Super.1970). As stated in *Draper v. Olivere Paving & Construction Co.,* 181 A.2d 565 (Del.Super.1962), scope of employment:[i]s at best indefinite. It is nothing more than a convenient means of defining those tortious acts of the servant not ordered by the master for which the policy of law imposes liability upon the master. The phrase, itself, contains no guide for its application. However, it certainly includes acts of the servant so closely connected with what he is employed to do, so fairly incidental to it, that they are to be regarded as methods elected by the servant, even though improper, of carrying out the master's business. Prosser on Torts (2nd E.), § 63, p. 352. In different language, but we think with the same meaning, the Restatement would impose liability upon the master for his servant's intended tortious harm "if his act was not unexpectable in view of the duties of the servant."
Restatement of Agency (2nd), § 245.
The problem of determining whether or not a particular tortious act was one performed within the scope of the servant's employment for which the master consequently is liable is one which, of necessity, can be answered only in the light of the particular circumstances of the case under consideration. The question is ordinarily one for decision by the jury, unless the contrary is so clearly indicated by the facts that the court should decide it as a matter of law. Restatement of Agency (2nd), § 228, comment d.

*Draper,* 181 A.2d at 569.

*13 This case is unlike *Donson v. Baez* where this

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.    Page 11
Not Reported in F.Supp., 1992 WL 162957 (D.Del.), 51 Empl. Prac. Dec. P 41,717
**(Cite as: Not Reported in F.Supp.)**

Court found the defendants were not acting within the scope of employment at the time a sexual assault occurred. *Donson v. Baez,* C.A. No. 89-265, Wright, J. (D.Del. Feb 21, 1991) (Docket Item 140, Exhibit D). In *Donson,* two employees were alleged to have sexually assaulted a patient at the hospital at which they were employed, there this Court stated:
The alleged acts of sexual misconduct by the Defendants, Baez and Freeman, can in no way be viewed as serving any express or implied purpose of the Institute. These alleged acts by Baez and Freeman clearly were not expressly or implicitly authorized by the Institute. The alleged conduct of these Defendants is not within the scope of their employment since it is "too little actuated by a purpose to serve the [Institute]."

*Donson,* at p. 7 (citations omitted). That case however involved the sexual assault of a third person by employees of the Institute where it was not possible to find the Institute or its agents (other than those who committed the assault) had any knowledge of the acts that were being carried out.
Further, the named defendants in *Donson* were in no way serving any purpose to the Institute at the time the acts occurred. In deciding, this Court also stated:[I]t is clear to this Court that the alleged acts of sexual misconduct by the Defendants, Baez and Freeman, were entirely unexpected as part of the performance of the former's maintenance duties and the later's duties as an orderly.

*Donson,* at pp. 8-9. This is not the case presently before the Court.

To follow the defendant's application of Delaware case law would require the Court, in all circumstances, to relieve an employer of any liability when there is a claim of sexual assault and battery. This the Court will not do. The Court finds the more appropriate reading and application of the case law is to consider whether the actions complained of were done during the course of and in furtherance of their employment, not whether the specific act complained of could be said to be furthering the employer's objectives. The distinction may appear obscure but is necessary and can best be viewed in light of the facts presently before the Court, when viewed, as they must, in the light most favorable to the non-movant.

In this case, the plaintiff alleges sexual harassment, sexual assault and battery, and intentional infliction of emotional distress. There is record support for the fact that she complained more than once to a supervisor regarding her employment situation. Further, there is record support for finding that on more than one occasion one of plaintiff's supervisors witnessed, if not participated in, the complained of acts. Further, there is record support for finding that all of the complained of acts were done at the place of employment, while the plaintiff and those charged with egregious acts were to be carrying out their duties in serving the defendant.

*14 If the question of whether the actions were done in the scope of employment is answered by reference to the course of and in furtherance of their employment, clearly there exists a genuine issue of material fact that must be resolved by the trier of fact. In this analysis, although the specific acts of assault and battery cannot be said to further the employer's objectives, they were done while the perpetrators were within the scope of employment.
Although the defendant did not authorize these acts specifically, the perpetrators were authorized to carry out the business of the defendant. Thus, if the defendant's employees resorted to the alleged acts in carrying out this business the employer may be found liable.

There is sufficient evidence in the record to find that some of the acts complained of were done by those with supervisory duties over the plaintiff. With respect to these persons the question is clear. Although the defendant did not instruct or authorize the actors to use such methodology in the performance of their duties it is clear that it was in that context that they occurred. With respect to the plaintiff's co-workers without supervisory duties, the Court finds that there exists sufficient interaction among co-workers in this type of work environment that requires more experienced employees to assist the more junior workers in carrying out their duties even absent a direct supervisory role to allow the fact finder to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                  Page 12
Not Reported in F.Supp., 1992 WL 162957 (D.Del.), 51 Empl. Prac. Dec. P 41,717
**(Cite as: Not Reported in F.Supp.)**

determine if the actions were in the scope of employment. The Court recognizes that this is a question of less clarity, however it is not one where the Court should determine, as a matter of law that the people were not acting within their scope of employment. Again, it is not a question of whether the specific act would further the defendant's business interest, rather the question is whether the complained of actions were done while the person was acting in the scope of their employment.

If the Court were to take the view, as the defendant urges, that the conduct itself must be in furtherance of the defendant's business, then it would be difficult, if not impossible, to ever establish liability based on the theory of *respondeat superior.* It is difficult for the Court to imagine anytime when an intentional tort could be said to directly further the business of the defendant and thus be considered within the scope of employment.

The Court concludes that a genuine issue of material fact exists with respect to whether the acts complained of were done within the scope of employment and thus, summary judgment must be denied. It will be for the trier of fact to determine if either the alleged acts giving rise to a claim for intentional infliction of emotional distress or those giving rise to a claim for sexual assault and battery were done within the scope of employment. This is not a case where it is clear that the conduct is " different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master" ( *Restatement 2d, Agency* § 228), even though the chosen course of carrying out the master's business were not of the nature that would likely have been authorized.

*15 The final contention of the defendant is that summary judgment should be granted with respect to the intentional torts as they are covered by the workmen's compensation act. The Court finds wholly unpersuasive the position that if an agent is found to have caused an injury in the course of his/her employment then, necessarily the person injured suffered an injury in the course of employment as required by the Delaware Worker's Compensation Act.

As provided in Title 19, Section 2301(15) of Delaware Code:
Personal injury sustained by accident arising out of and in the course of the employment:"
a. Shall not cover an employee except while he is engaged in, on or about the premises where his services are being performed, which are occupied by, or under the control of, the employer (his presence being required by the nature of his employment), or while he is engaged elsewhere in or about his employer's business where his services require his presence as a part of such service at the time of the injury, provided, however, that participation in an approved Travelink Traffic Mitigation Act program, created pursuant to subchapter IV of Chapter 20 of Title 30, shall not be construed as meeting either exception contained in this subsection; and
b. Shall not include any injury caused by the willful act of another employee directed against him by reasons personal to such employee and not directed against him as an employee or because of his employment.

19 Del.C. § 2301(15) (1990). The pertinent section for exclusion in this case is § 2301(15)(b) wherein the acts of another employee that are personal in nature are excluded from the Workmen's Compensation scheme in Delaware. Contrary to the position the defendant asserts, the Court finds that an act may be carried out in the scope of employment, thus providing a basis for *respondeat superior* liability, and, simultaneously be done for reasons personal in nature, thus not be compensable under the Workmen's compensation scheme. Further, this is just such a case where this finding could be made. As a result, the Court concludes that there exists a genuine issue of material fact barring summary judgment.

The actions taken may be found to be within the scope of the alleged transgressor's scope of employment in that it was done in carrying out a duty to the employer thus, providing a basis for finding *respondeat superior* liability. At the same time, however, the act could be directed at the particular person, the plaintiff, for reasons personal to the transgressor and not solely for purposes of effectuating the goals of the employment

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 13
Not Reported in F.Supp., 1992 WL 162957 (D.Del.), 51 Empl. Prac. Dec. P 41,717
**(Cite as: Not Reported in F.Supp.)**

relationship. The Court acknowledges and accepts the dual purpose theory as developed in the Delaware State Courts which holds that a person may be acting for personal reasons while still acting within the scope of employment. *Wilson v. Joma, Inc.,* 537 A.2d 187, 189 (Del.Supr.1988). Further, if the employer aided in the carrying out of the harassment in any way, protection from liability via the workman's compensation act would be inappropriate. This issue must be decided by the fact finder after development of a complete record.

### 4. Derivative Nature of Count IV

*16 The defendant requests the Court to grant summary judgment on Mr. Konstantopoulos' claim for loss of consortium on the basis that it is fully derivative to the wife's claims. The motion for summary judgment of this count assumes that the Court grant summary judgment on the spouse's state law claims. As the Court denied summary judgment on Counts III and V, summary judgment on the loss of consortium claim shall also be denied.

### IV. CONCLUSION

For the reasons stated above, the plaintiffs' motion to amend the complaint is denied and the defendant's motion for summary judgment is denied. An appropriate order will be entered.

> FN1. The Court notes that it was not until July 11, 1989 that the Plaintiff submitted a complaint to the Delaware Department of Labor alleging sexual harassment and supplemented that complaint on September 11, 1989. The performance appraisals that are appended to the brief show dates ranging from May, 1989 until August, 1989. It would be impossible for the Court, or anyone else, to find that any poor performance appraisals that were received prior to July 11, 1989 could have been in retaliation for the complaint that plaintiff filed.
> The submitted evaluations show the following average performance evaluation of the plaintiff. Column 1 is the page number reference to Docket Item 141; column 2 is the date of the last prior evaluation; column 3 is a calculated average for each evaluation figured by assigning a value to each possible response such that 5 was assigned to the most positive ranking and 1 was the least positive score possible. Each of the seven categories were then added together and the total was divided by 7 (except in the case of the first review where one category was not answered, in that case the total was divided by 6).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1992 WL 162957 (D.Del.), 51 Empl. Prac. Dec. P 41,717  
**(Cite as: Not Reported in F.Supp.)**

Page 15

| | | | | | |
|---|---|---|---|---|---|
| : | A12 | : | 8-04-89 | : | 2.143 |
| : | A13 | : | 8-11-89 | : | 2.143 |
| : | A14 | : | 8-20-89 | : | 2.143 |

D.Del.,1992.  
Konstantopoulos v. Westvaco Corp.  
Not Reported in F.Supp., 1992 WL 162957 (D.Del.), 51 Empl. Prac. Dec. P 41,717

Briefs and Other Related Documents (Back to top)

• 1:90cv00146 (Docket) (Mar. 27, 1990)

END OF DOCUMENT

FN2. The notice is entitled "Policy Guideline on Application of Damages Provisions of the Civil Rights Act of 1991 to Pending Charges and Pre-Act Conduct.

FN3. As of this writing, 112 decisions were available where this issue was before a District Court. Although this Court did not actually tally the decisions it is clear that there exists nearly a complete split among the courts between retrospective and prospective application.

FN4. At the time the Court began consideration of this issue, no Court in this district had issued an opinion. On June 11, 1992 Senior Judge Schwartz of the District Court of Delaware issued an opinion extensively analyzing the positions regarding retroactivity of the Civil Rights Act of 1991. *Crumley v. Delaware State College,* Civ. A. Nos. 90-429/90-711-MMS, Schwartz, J. (D.Del. June 11, 1992). The Opinion issued by Judge Schwartz concluded the retroactivity of the Act should be analyzed on a provision by provision basis and, with respect to the right to compensatory and punitive damages and the right to a jury trial, prospective application is appropriate.

FN5. Although this claim is before the Court on a motion for summary judgment, it would more properly be posited as a motion to dismiss that portion of the complaint. However, given the dispositive effect of this motion the Court will address it as raised.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 14
Not Reported in F.Supp., 1992 WL 162957 (D.Del.), 51 Empl. Prac. Dec. P 41,717
**(Cite as: Not Reported in F.Supp.)**

| | PAGE NUMBER | | DATE OF LAST REVIEW | | AVERAGE SCORE | |
|---|---|---|---|---|---|---|
| : | A2 | : | INITIAL REVIEW | : | 3.333 | : |
| : | A3 | : | 5-12-89 | : | 2.571 | : |
| : | A4 | : | 5-20-89 | : | 2.428 | : |
| : | A5 | : | 5-28-89 | : | 2.428 | : |
| : | A6 | : | 6-05-89 | : | 2.428 | : |
| : | A7 | : | 6-12-89 | : | 2.428 | : |
| : | A8 | : | 6-25-89 | : | 2.286 | : |
| : | A9 | : | 7-03-89 | : | 2.143 | : |
| : | A10 | : | 7-08-89 | : | 2.143 | : |
| : | A11 | : | 7-27-89 | : | 2.286 | : |

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.