IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ST. PAUL MERCURY INSURANCE       :
COMPANY, and PACK & PROCESS, INC, :
                                 :
                                 :
            Plaintiffs,          :
                                 :
   v.                            :   Civil Action No. 05-022 MPT
                                 :   (Lead Case)
MALY YAN                         :
                                 :
            Defendant.           :

## MEMORANDUM OPINION

Ian Connor Bifferato, Esquire and Joseph K. Koury, Esquire, Bifferato Gentilotti LLC, 1308 Delaware Avenue, Wilmington, DE 19899.
    Of Counsel: Francis J. Deasey, Esquire and Henri Marcel, Esquire, Deasey, Mahoney & Bender, Ltd., 1800 John F. Kennedy Blvd., Suite 1300, Philadelphia, PA 19103-2978
Counsel for Plaintiffs St. Paul Mercury Insurance Company and Pack & Process, Inc.

Yvonne Takvorian Saville, Esquire, Weiss & Saville, P.A., 1220 North Market Street, Suite 604, Wilmington, DE 19801.
    Of Counsel: Joshua Van Naarden, Esquire and Jonathan Cohen, Esquire, 1525 Locust Street, 19th Floor, Philadelphia, PA 19102.
Counsel for Defendant Maly Yan.

September 18, 2007

Thynge, U.S. Magistrate Judge

1.  **INTRODUCTION**

This consolidated matter includes a declaratory judgment action by Pack & Process Inc. ("Pack & Process") and St. Paul Mercury Insurance, Inc. ("St. Paul") against Maly Yan ("Yan"), a former employee of Pack and Process, and an action instituted against Pack & Process by Yan and the occupants of a van, which she was driving, that was involved in an accident on June 18, 2001.[1] Yan was initially sued in the Pennsylvania Court of Common Pleas by the occupants of her vehicle for their injuries and death sustained in the accident. That lawsuit resulted in a judgment against Yan in the amount of $10,228,467.

In the present matter, Pack & Process contends that Yan was neither its agent, nor acting within the course and scope of her employment, or performing a duty related to its business at the time of the accident. Yan claims that she was an agent of her employer at the time of the accident and as a result, Pack & Process and its insurer, St. Paul, are responsible for paying the judgment against her.[2] On August 4, 2006, Yan moved for summary judgment based on agency. On August 8, 2006, Pack & Process cross-moved that Yan was not acting within the scope of her employment when the accident occurred. This opinion addresses both motions.

---

[1] The declaratory judgment action (C.A. No. 05-22) was filed on January 14, 2005. Yan and her passengers' lawsuit (C.A. No 05-313) was filed on July 21, 2005. On September 9, 2005, a court order was entered consolidating the two matters and making C.A. No. 05-22 the lead case. *See* D.I. 52.

[2] Yan's passengers and/or their survivors raise a similar argument that Pack & Process/St. Paul are responsible for payment of the judgment. St. Paul also claims that it is not liable to indemnify Pack & Process because Yan was not an agent of its insured at the time of the accident. Based on the decision herein, the court need not address that issue.

2

## 2.   BACKGROUND

From January 1998 through July 2000, Yan was a contract employee working for Lam Staffing, a Philadelphia employment agency, which provided temporary, hourly laborers to Pack & Process on an as-needed basis. In 1995, Pack & Process worked closely with Lam Staffing to help set up the company and to assist with its regulatory paperwork. Pursuant to a contract between them, Lam Staffing provided employees who were legally able to work in the United States. Under that contract, Pack & Process was authorized to periodically review Lam Staffing's records. The contract also provided for the hourly wage and method of payment, but did not include any provision regarding transportation of the workers. Pack & Process paid Lam Staffing who paid its contract employees in cash. Lam Staffing paid its workers at the end of the work week, frequently at the Pack & Process plant or in the transportation vans. Employees of Pack & Process received a paycheck directly from that company.

In February 2001, Yan was hired by Pack & Process to fill a position in the quality control department and was no longer employed as a contract worker with Lam Staffing.

David Thatch or Matia Lam of Lam Staffing periodically conferred with Sterling Newsome, the plant manager at Pack & Process, about the daily labor needs. Drivers assigned by Lam Staffing would transport workers from Philadelphia to one of three Pack & Process manufacturing locations in Delaware. Lam Staffing designated drivers as group leaders, and the group leaders communicated with Newsome regarding the daily worker deployment. Lam Staffing paid the group leaders a stipend for each worker they transported and for gas. Occasionally, the vans used to transport workers

from Philadelphia were also used to shuttle workers among the Pack & Process manufacturing sites.

Yan's father, Yan Thou ("Thou"), was a group leader from 1995 until 2001. During that time, Thou drove, maintained and insured his vehicle, a 1992 Dodge Ram, to transport workers for Lam Staffing. In April 2001, his driver's license was suspended. Lam Staffing immediately engaged a temporary driver to transport workers to Delaware, but was unable to find a permanent driver.

Thatch approached Yan in May 2001 about transporting workers. Yan, however, was concerned about accepting that offer because of her employment with Pack & Process. She asked Thatch to check with Steve Ames, the President of Pack & Process, to confirm whether its employees were allowed to transport workers. Shortly thereafter, Yan spoke with Newsome whom she claims advised that she could work for Pack & Process and transport workers. In that conversation, Yan contends that Newsome authorized her to work as a group leader for Lam Staffing while in the employ of Pack & Process. Newsome confirms that they talked, but denies that he authorized Yan to transport workers.

Thou transferred his title and registration of the Dodge van to his daughter on June 1, 2001. Thereafter, Yan began transporting Lam Staffing workers between Philadelphia and Wilmington. Prior to the accident, Yan's supervisor, Cheryl Adkins informed Yan that she was being transferred to the night shift. Yan complained to Adkins that she could not work nights because of her young child and her obligation to drive her family to work during the day. Adkins contends that she told Yan that driving a transport van was not part of her responsibilities as a quality control operator.

4

On the early evening of June 18, 2001, while driving from Pack & Process to Philadelphia, Yan lost control of the van which resulted in an accident that caused the death of five passengers, including Yan's mother and brother. Several other passengers of Yan's vehicle were seriously injured.

Yan returned to work on July 24, 2001. Upon her return, Ames asked Yan to sign a document which acknowledged that she was not authorized to transport employees and that driving was not a condition of her employment at Pack & Process. Yan signed the document, continued working at Pack & Process for brief time and then quit.

3.   **LEGAL STANDARD**

Summary Judgment

A grant of summary judgment pursuant to Federal Rule of Civil Procedure 56(c) is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[3] A Rule 56(c) movant bears the burden of establishing the lack of a genuinely disputed material fact by demonstrating "that there is an absence of evidence to support the nonmoving party's case."[4] "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."[5] The nonmovant must be given the benefit of all justifiable inferences and the court must

---

[3] Fed. R. Civ. P. 56(c).

[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[5] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

resolve any disputed issue of fact in favor of the nonmovant.[6] The mere existence of some evidence in support of the nonmoving party, however, is insufficient to deny a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue.[7] If the nonmoving party fails to make a sufficient showing on an essential element of its case, the moving party is entitled to judgment as a matter of law.[8]

Agency

Generally, a principal is liable for the actions of its agent that are within the scope of the agent's actual or apparent authority.[9] Actual authority is created by "words or conduct of the principal, which reasonably cause the agent to determine that the principal wishes the agent to act on the principal's behalf."[10] Actual authority can also be implied from the totality of the relationship between the parties.[11] When an employee acts without actual authority, an employer may still be liable under implied authority if the employee acts under a reasonable belief that actual authority exists or he is within the scope of employment.[12] The Restatement (Second) of Agency provides that whether implied authority exists, is determined by a reasonableness standard, in

---

[6] *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992).

[7] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

[8] *See Celotex Corp.*, 477 U.S. at 325.

[9] *See* Restatement (Second) of Agency §140.

[10] *Creedon Controls, Inc. v. Banc One Bldg. Corp.*, 470 F. Supp. 2d 457, 460 (D. Del. 2007) (citing *Edwards v. Born, Inc.*, 792 F.2d 387, 389-90 (3d Cir.1986)).

[11] *Edwards v. Born Inc.*, 792 F. 2d 387, 391 (3d Cir. 1986).

[12] Restatement (Second) Agency §§ 7 comment (b) and 230.

light of the communication between the principal and agent.[13]  Comment (c) to § 26 notes that the authority to perform a particular act can be conferred from "words or conduct which the principal has reason to know indicate to the agent that he is to do the act."  It is the "manifestation of authority, not the intent of the principal, that controls."[14] "It is obvious that implied authority cannot, by its very nature, be inconsistent with express authority because any expression of actual authority must control." [15]

The test adopted in Delaware to determine whether an employee acted within the scope of employment is set forth in the Restatement (Second) Agency § 228:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>   (a) It is of a kind he is employed to perform;
>   (b) it occurs substantially within the authorized time and space limits;
>   (c) it is actuated, at least in part, by a purpose to serve the master, and
> * * *
>
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

Scope of employment has been defined as indefinite.  However, it may include "acts of the servant so closely connected with what he is employed to do, so fairly incidental to it, that they are to be regarded as methods elected by the

---

[13] Restatement (Second) Agency § 33 comment (b) ("thus, whether or not the agent is authorized to do a particular act at a particular time depends, not only on what the principal told the agent, but upon a great variety of other factors, including changes in the situation after the instructions were given . . . In accordance with the continuous comparison between the communication to the agent and the circumstances under which he acts, that his authority may be broadened, as stated in Section 47, or may be diminished, suspended or terminated, as stated in Sections 105-116 and 384, however irrevocable the terms in which the authority was expressed.

[14] *Edwards*, 792 F.2d at 391.

[15] *In re Walt Disney Co. Derivative Litigation*, 907 A. 2d 693, 775 (Del. Ch. 2005) (citing William A. Gregory, The Law of Agency and Partnership § 15 (3d Ed. 2001).

servant, even though improper, of carrying out the master's business."[16] Issues relating to the course and scope of employment are highly factual,[17] and ordinarily a decision for the jury, unless so clearly evident by the facts that the court can decide as a matter of law.[18]

Traditionally, "a master is not liable for the tort's of his agent committed while driving to and from his place of employment."[19] The rationale is that "employees face the same hazards during daily commuting trips as does the general public. Such risks, therefore, are no different from those confronting workers on personal excursions."[20] An exception exists to the "coming and going rule" when it is established that the purpose of the trip was in furtherance of a work assignment and the employee was acting within the scope of employment.[21]

---

[16] Prosser on Torts (2nd Ed.) § 63 at 352 ("The phrase [scope of employment], itself, contains no guide for its application. It is nothing more than a convenient means of defining those tortious acts of the servant not ordered by the master for which the policy of law imposes liability upon the master.").

[17] See Histed v. DuPont, 621 A.2d 340, 345 (Del. 1993).

[18] Restatement of Agency (2nd) § 228, comment d; see also, Konstantopoulos v. Westvaco Corp., 1992 WL 162957 *12 (D. Del. June 19, 1992); Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc., 456 F. Supp. 831, 838 (D. Del. 1978).

[19] Barnes v. Towlson, 405 A.2d 137, 139 (Del. Super. 1979).

[20] Histed, 621 A.2d at 343 (citing Alitalia Linee Aeree Italiane v. Tornillo, 603 A.2d 1335, 1337 (Md. App. 1992)). The Histed court, however, found that an employee was within the course and scope of her duties when commuting to work based on the "special errand" exception to the "coming and going" rule. In applying the special errand exception, the court analyzed the totality of the circumstances considering the "urgency, inconvenience, increased risk, compensation for and purpose" of the employee's trip, that is, those factors that would convert an ordinary commute "into a special errand for the employer's benefit in the course and scope of [the employee's] employment." 621 A.2d at 341.

[21] Barnes, 405 A.2d at 140 ("The control test applies when: 1) it has been initially established that the automobile operator-defendant and the principal-defendant have an employee-employer relationship and, 2) the issue in dispute is whether the employee's employment extends to the operation of an automobile.").

When an employee is acting as an agent for another company, or on his/her own behalf when a tortious act occurs, the Delaware Supreme Court has set forth the "dual purpose rule" as controlling.[22] In *Cough*, that court held that the dual purpose rule only requires that the employee be serving "some interest of the employer" and that it may be within the scope of employment if the employer's business "actuates the employee to any appreciable extent."[23] In contrast, that court previously held that an employer was not vicariously liable when an employee was involved in an accident on his way home for lunch[24] or, at his wife's request, was traveling home to deal with a personal matter.[25] In either situation, nothing in the record suggested that the employee was serving any interest of the employer.

3.  **POSITIONS OF THE PARTIES**

Yan argues that, as a result of her conversation with Newsome, she had actual authority from Pack & Process to transport workers, and therefore, is entitled to summary judgment. Yan suggests that her interpretation of that conversation, as Pack & Process authorizing her to transport employees, is reasonable. She contends that she was acting on behalf of Pack & Process or

---

[22] *Clough v. Interline Brands, Inc.*, 2007 WL 2323484 *1 (Del. May 1, 2007) (citing *Wilson v. Joma, Inc.*, 537 A.2d 187, 189 (Del. 1988)) ("Where the servant is combining his own business with that of his master, or attending to both at substantially the same time, no nice inquiry will be made as to which business the servant was actually engaged in when a third person was injured; but the master will be responsible, unless it clearly appears that the servant could not have been directly or indirectly serving his master.").

[23] *Id.*

[24] *Coates v. Murphy*, 270 A.3d 527 (Del. 1970).

[25] *Clough*, 2007 WL 2323484 at *1 (Del. May 1, 2007).

within the scope of her employment and was performing a duty related to Pack & Process's business. Finally, she argues that Pack & Process and its insurer, St. Paul, are ultimately responsible for her conduct.

Yan contends that Newsome, although not her direct supervisor, as the plant production manager, had overall supervisory authority. Yan agrees that her duties as a quality control inspector did not include driving, but she notes that Newsome approached her at the plant during work hours to discuss the matter of transportation, from which she reasonably understood that she was authorized to transport workers. In support, Yan relies on Newsome's deposition:

> Q. You will agree that you had a conversation with Yan whereby she told you that her dad's license was suspended, correct?
> A. Correct.
> Q. And in that conversation you said to her, well, then you're going to have to drive, right?
> A. I said I guess you'll have to drive.
> Q. Okay.
> Q. What was the context of the conversation that you had with Yan about her driving the van?
> A. She was telling me that Ken was being transferred and then she said that my dad can't drive anymore. I said, well, you got a license, you can drive. That's all I said.

Further, Yan testified that Pack & Process wanted her to transport her father, as well as others, to keep him employed:

> Q. Under what circumstances was it that Sterling Newsome first came to you and spoke to you about driving a vehicle?
> A. Because he does not want my father to leave the place and he does not want to lose us from the company.
> Q. So what did Sterling Newsome say to you?
> A. Told me to bring people to work into that company and also work at that company as employee.

She compares the conversation with Newsome with the exchange in

10

*Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*,[26] which the court found sufficient to reasonably cause an agent to act on a principal's behalf. Since a principal is liable for the acts of its agent, Yan contends that Pack & Process is obligated to indemnify her because her conduct was consistent with Newsome's authorization.

Pack & Process argues that Yan's entire argument rests on a single, casual conversation. Pack & Process claims that, under the totality of the circumstances, there is no genuine issue of material fact that Yan, at the time of the accident, was not within the course and scope of her employment, and accordingly neither St. Paul nor itself are liable to indemnify Yan for the judgment awarded against her.

Pack & Process notes that Yan checked candy bags as a quality control inspector, a position which did not involve transporting workers. It maintains, as evidenced by the testimony of Ames, that Yan was not hired to drive herself or others to the plant, nor was she authorized to do so.

Pack and Process contends that Yan is confused about its relationship with Lam Staffing and points to her testimony which shows that Thatch of Lam Staffing, not Pack & Process, hired her to transport workers:

> Q. Now, did any employee of Pack & Process ever tell you that it was part of your job to transport workers to and from Pack & Process?
> A. David and Steve who told me to do that.
> Q. Well, David who?
> A. David, Sdey.
> Q. David Thatch?

---

[26] *Jurimex*, 2006 WL 1995128 (D. Del. July 17, 2006).

> A. Yes.
> Q. And Steve who?
> A. The boss of the company.
> Q. Did they tell you that together or in separate discussions?
> A. Steve told David and asked David to tell me . . . .
> Q. Now how do you know that Steve told David that?
> A. Because David told me that Steve was agree to allow me to transport worker to and from the company.

Pack & Process argues that no legal authority exists which establishes actual authority based on an employee's belief as to the scope of employment. In further support that Yan was not actually or implicitly authorized by it to transport workers, Pack & Process relies on the testimony of Adkins, Yan's direct supervisor:

> Q. You testified earlier about a conversation that you had with Yan in which you informed her that when you were going to return from vacation that you wanted Yan to work night shift?
> A. Yes.
> Q. And I believe you testified that Yan told you she could not work the night shift because she was driving her father who had lost her license?
> A. Lost his license.
> Q. I'm sorry lost his license, yes.
> A. Yes.
> Q. At that point, did you tell Yan that driving the van was not her responsibility?
> A. I did tell her that.
> Q. Did Yan tell you that someone at Pack & Process had indeed told her that driving the van was her responsibility?
> A. No, she did not.
> Q. Did Yan tell you that, during this conversation, that anyone from Pack & Process had asked her to drive the van as a result of her father having lost his license?
> A. No.

For her employment at Pack & Process, Yan was required to punch a daily time clock. Since Yan punched out before the accident, Pack and Process argues that she was outside her normal work hours at the time of the accident. Further, as evidenced from the testimony, Pack & Process maintains that it is unrefuted that when the

12

accident occurred, Yan was on Lam Staffing's payroll and not being paid by Pack & Process.[27] Since the accident occurred outside the scope of her employment during a normal commute from work, Pack & Process contends that the "coming and going" rule applies and no liability exists on its part for the accident.

## 4.  DISCUSSION

As noted previously herein, a principal's liability for the actions of its agent is based on actual or implied (apparent) authority. In the absence of actual authority, an employer may be liable under implied authority if the employee's conduct is the result of a reasonable belief that actual authority exists or he is within the course or scope of his employment.[28] The analysis of implied authority and scope of employment involves application of a reasonableness standard and consideration of the totality of the circumstances. Such analyses are highly dependent upon the facts and usually within the domain of the jury.[29]

An employer, however, is generally not liable for torts committed by its employee while commuting to and from work under the coming and going rule.[30] Under Delaware case law, when it is shown that the purpose of the employee's trip was in furtherance of some interest of the employer and that employee was acting within the scope of

---

[27] Pack & Process also relies on the undisputed fact that Thou, Yan's father and her predecessor driver, was paid by Lam Staffing and not Pack & Process for his driving services.

[28] See Creedon Controls, Inc. V. Banc One Bldg. Corp., 470 F. Supp. 2d 457 (D. Del. 2007); Restatement (Second) Agency § 26.

[29] Histed, 621 A.2d 340, 345 (Del. 1993).

[30] Barnes, 405 A.2d at 137; Histed, 621 A.2d at 343.

employment, the employer is liable for the employee's conduct.[31]  In determining whether an employee acted within the course and scope of employment, Delaware applies § 228 of the Restatement (Second) Agency where it is enough for employer liability to attach if the employer's business "actuates the employee to any appreciable extent."[32]

Yan's official job title with Pack & Process was as a Quality Control Inspector, and she was hired in that capacity.  The responsibilities of that position did not include transporting workers.  Based on her discussion with Newsome, and Pack & Process's apparent need for contract workers, however, a reasonable jury may or may not conclude that Yan was authorized, actual or implied, by Pack & Process to drive the workers to and from the plant.  The contents of Yan's conversation with Newsome and the reasonableness of her interpretation of that discussion are in dispute.  Pack & Process contends that the exchange was simply a friendly conversation, while Yan claims that she received permission and was expected to transport workers.  Pack & Process also maintains that it did not compensate Yan for her driving services; however, testimony exists that weekly payment for fuel was provided by Pack & Process through Lam Staffing.  Moreover, how a reasonable person would interpret the exchange between Yan and Adkins, including Adkins' admonition and its implications, is disputed.

## 5.   **CONCLUSION**

As a result, there are genuine issues of material fact regarding the conversation

---

[31] *Cough*, 2007 WL 2323484 at *1.

[32] *Id.*

14

between Yan and Newsome and whether, as a result of that conversation, a reasonable person would have interpreted that Pack & Process actually authorized her to transport workers. Further, under implied authority, whether Yan was acting within the scope of employment at the time of the accident, under the totality of the circumstances analysis, raises genuine issues of material fact. Therefore, in light of the significant overlap in the parties' legal and factual arguments on summary judgment, and the relationship of the disputed facts to those arguments, both motions for summary judgment (D.I. 105, 106) are denied.