IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ST. PAUL MERCURY INSURANCE COMPANY and PACK AND PROCESS, INC. | : : : : | Case No. 05-0022 (KAJ) |
| v. | : : | |
| MALY YAN | : | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| YAN THOU, et al. | : : | |
| v. | : : | Case No. 05-00513 (KAJ) |
| PACK & PROCESS, INC., et al. | : | **CONSOLIDATED CASES** |

**DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW**

**I.      SUMMARY**

Trial testimony established Defendant Maly Yan was given actual authority to act on behalf of Pack and Process and to transport employees to and from the Pack and Process Factory. The creation of this "actual authority" arises out of a conversation between Maly Yan and her Pack and Process supervisor, Sterling Newsome, as testified to by Maly Yan at trial and confirmed by the deposition testimony of Newsome that was read into evidence. As a result of the words and conduct of Mr. Newsome, Maly Yan was caused to "reasonably determine" Pack and Process (the principal) wished her (the agent) to act on Pack and Process's behalf in transporting employees to and from the factory on the day of the June 18, 2001, accident. Sterling Newsome was a production manager for Pack and Process and his actions bind Pack and Process to his representations. All parties that have given testimony are in agreement as to the content of the conversation between Mr. Newsome and Maly Yan. Therefore, no reasonable jury

could conclude that Maly Yan was outside the scope of her employment given the instruction Maly Yan received from Sterling Newsome and the instruction Yan Thou received from Steven Ames through David Thatch and Defendants are entitled to judgment as a matter of law.

**II.    DEFENDANT MALY YAN WAS ACTING ON BEHALF OF PACK AND PROCESS IN TRANSPORTING EMPLOYEES TO AND FROM THE FACTORY, WORKING WITHIN THE COURSE AND SCOPE OF HER EMPLOYMENT AND PERFORMING A DUTY RELATED TO THE CONDUCT OF PACK AND PROCESS'S BUSINESS**

Defendant Maly Yan was given "actual authority" to act on behalf of Pack and Process and to transport employees to and from the Pack and Process Factory, as outlined in detail below. Maly Yan's actions on the June 18, 2001, in transporting these employees from the Pack and Process factory at the time of the accident were within the course and scope of her employment and constituted a duty related to the conduct of Pack and Process's business. Accordingly, the principal, Pack and Process, is liable for her actions. As more fully explained in footnote 4, supra, the usage of the language "a duty related to the conduct of Pack and Process's business" is taken out of the subject insurance contract and imposes a separate and distinct obligation for St. Paul to pay the policy limits.

    **A.    Rule 50 and Rule 56.**

Federal Rule of Civil Procedure 50 provides:

> Judgment as a Matter of Law in a Jury Trial; Related Motion for a New Trial; Conditional Ruling
>
> (a) Judgment as a Matter of Law.
>
> (1) *In General.* If a party has been fully heard on an issue during a jury

> trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> (A) resolve the issue against the party; and
>
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

FED. R. CIV. P. 50.

Federal Rule of Civil Procedure 56 provides:

> Summary Judgment
>
> (a) By a Claiming Party. A party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim. The motion may be filed at any time after:
>
> (1) 20 days have passed from commencement of the action; or
>
> (2) the opposing party serves a motion for summary judgment.
>
> (b) By a Defending Party. A party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim.

FED. R. CIV. P. 56.

    **B.**    <u>**Agency Law**</u>

The law of agency is clear and unambiguous. A principal is liable for the actions of its agents that are within the scope of the agent'?s actual or apparent authority. <u>See</u> Restatement (Second) of Agency 140. Actual authority is created by words or conduct of the principal, which reasonably cause the agent to determine that the principal wishes the agent to act on the principal'?s behalf. <u>Jurimex Kommerz Transit G.M.B.H. v. Case Corporation</u>, 2006 WL 1995128 (D.Del.) <u>See</u> Slip Copy attached hereto as Exhibit "D." citing <u>Edwards v. Born, Inc</u>.,792 F.2d 387, 389-90 (3d Cir.1986). Apparent authority, on

the other hand, can be created by words or conduct of the principal, which reasonably cause a third party to believe that the agent is acting on the principal'?s behalf. Id. at 390[1].

> 1. **No reasonable jury could conclude that Maly Yan was outside the scope of her employment given the instruction Maly Yan received from Sterling Newsome and the instruction Yan Thou received from Steven Ames through David Thatch, which prove Pack and Process' "Actual Authority" to Act on Behalf of Pack and Process in Transporting Employees on June 18, 2001**

The testimony elicited from all parties in this case during the trial of the present Declaratory Judgment action and the other related actions demonstrate that no genuine issues of material fact exist and Defendants are entitled to judgment as a matter of law as to Maly Yan's "actual authority" to act on behalf of Pack and Process in transporting employees on June 18, 2001. Outlined below are the relevant portions of trial and deposition testimony from Defendant Maly Yan, Pack and Process Owner Steven Ames, and Pack and Process Production Manager Sterling Newsome, in which all agree that Mr. Newsome was in a managerial position within the Pack and Process organization and that Maly Yan was asked to drive employees to and from the factory by Mr. Newsome on behalf of Pack and Process.

**Maly Yan**

Maly Yan testified at trial that she was instructed by Sterling Newsome to drive the van. She also testified that Newsome was one of her supervisors or "bosses" that she had taken instruction from at Pack & Process, and that she drove the van because she did not want to lose her job. She also testified that Pack & Process was the source of

her compensation for driving the van, and that David Thatch merely delivered the cash to her. Maly Yan also confirmed her prior deposition testimony, which was as follows:

Maly Yan was deposed on September 24, 2003 and stated as follows:

> Q. Did anyone at Pack & Process ever instruct you to drive a vehicle?
>
> A. My supervisor told me.
>
> Q. Your supervisor told you to drive a vehicle?
>
> A. Yes, transferring people to work and also working as an employee there.
>
> Q. What supervisor was it that told you to transport people to and from work?
>
> A. Sterling.
>
> Q. Sterling Newsome?
>
> A. Yes.
>
> Q. And when was it that Sterling Newsome told you to drive a van to transport workers?
>
> A. After my father got his license suspended.
>
> Q. Under what circumstances was it that Sterling Newsome first came to you and spoke to you about driving a vehicle?
>
> A. Because he does not want my father to leave the place and he does not want to lose us from the company.
>
> Q. So what did Sterling Newsome say to you?
>
> A. Told me to bring people to work into that company and also work at that company as employee.
>
> Q. And did Sterling Newsome provide you with a vehicle to drive or would you just drive your van?

>   A.   Drive my own vehicle.
>
>   Q.   Did Sterling Newsome or Pack & Process pay you to drive the van in May and June of 200l?
>
>   MR. URBAN: You mean directly or indirectly?
>
>   MR. VILLALOBOS: Directly.
>
>   THE WITNESS: Yes, Pack & Process paid me.

P.69, L1-70 and L16.

During the September 24, 2003, deposition of Maly Yan, she was questioned about a form she was asked to sign by Pack and Process owner Steven Ames upon her return to work at Pack and Process after the June 18, 2001, accident. The form indicated, among other things, that it is not a condition of her employment to drive employees to and from the accident. <u>See</u> the July 27, 2001, Pack and Process Memorandum attached hereto as Exhibit "F." Maly Yan stated as follows:

>   Q.   When you received this form, did you have a belief that the conditions that were set forth on this form represented a change in your work relationship with Pack & Process?
>
>   A.   Yes, in a way.
>
>   Q.   Well, let me see what we mean by in a way. Before you signed this form did you believe that as a condition of your employment with Pack & Process you were to assist the transport of labor to Pack & Process?
>
>   A.   My supervisors told me that starting from this date that I sign, which is July 24, I can no longer transport people to work there.

P.92, L18 - P.93, L23.

> Q. Did you believe, prior to signing this, when you were transporting workers to Pack & Process, that you were transporting people to Pack & Process to assist Pack & Process?
>
> A. Well, yes, but at the time when I was transporting people to work there, I never received this kind of document. This is the first time I received this document, which is under date that I signed. (Indicating).
>
> Q. You received this document after the accident?
>
> A. Yes

P.94, L9-22.

See Maly Yan's September 24, 2003, Deposition Transcript.

> Maly Yan was deposed again on June 5, 2006 and stated as follows:
>
> Q. Now, did any employee of Pack & Process ever tell you that it was part of your job to transport workers to and from Pack & Process?
>
> A. David and Steve who told me to do that.
>
> Q. Well, David who?
>
> A. David, Sdey.
>
> Q. David Thatch?
>
> A. Yes.
>
> Q. And Steve who?
>
> A. The boss in the company.

P.98, L9-20.  See Maly Yan's June 5, 2006, Deposition Transcript.

It is clear from Maly Yan's testimony the words of her Production Manager, Sterling Newsome reasonably caused her to determine that Pack and Process wished her

to transport employees to and from the factory. It is important to also note the Production Manager, Sterling Newsome, agreed that he did have such a conversation with Maly Yan regarding her responsibility for transporting workers on behalf of Pack and Process.

Case 1:05-cv-00022-MPT    Document 189    Filed 04/24/2008    Page 8 of 14

    **2.**    **Yan Thou**

Yan Thou testified at trial that the only way he could communicate with his boss Steven Ames was through an interpreter, like David Thatch. He testified that he went to Thatch to raise the problem with his license. Thatch agreed to take Yan Thou's concern to Ames. Yan Thou testified that he heard and saw Ames and Thatch talking, but could not understand their English translation, but following that discussion he testified that he received an instruction from Ames through Thatch to change the title and registration and sell the car to Maly Yan so that she could drive. Yan Thou testified that he followed Ames' instructions.

    **3.**    **Sterling Newsome**

Sterling Newsome was the production manager for Pack and Process at the time of the June 18, 2001, accident.

At trial, Sterling Newsome's testimony was read into evidence. His testimony admits that he was the production manager, he was at work during working hours during the conversation with Maly Yan, and that he said Maly Yan has a license and that he told her that she was to drive the van. This leaves authorization admitted.

Newsome's June 29, 2006, deposition testimony is as follows:

> Q.    She [Maly Yan] was also, just like you, sat down for a deposition on
> September 24, 2003. She was sworn under oath and I'll go through with you again some stuff. She was asked on page 69, line 6, the question was posed to her, this was by Mr. Villalobos, who is defense counsel. What supervisor was it that told you to transport people to and from work, Her answer was Sterling. The question was then posed to her, Sterling Newsome? And her answer was yes. Do you disagree with that?
>
> A.    I think that I said to her one time, but not in a official capacity, I said, she asked how are we going to get back and forth to work.

                And said, I guess you'll have to drive. But that was not in an official capacity of Pack and Process. That was just as two friends talking.

Q.      That conversation, did that occur at the plant?

A.      Yes.

Q.      So it occurred, it occurred during the hours in which she was working as a QC operator?

A.      It was either some time during the day there one time.

Q.      She was on the clock at the time that you had this conversation, correct?

A.      Correct. But I didn't make it in the official capacity of being plant supervisor.

Q.      Did you express that to her, and say listen, we're having this conversation just as two friends and this is in no way, I'm in no way talking to you as your supervisor?

A.      I guess I assumed.

Q.      But you didn't explicitly say that to her.

A.      I didn't say, Maly, you're going to have to do it, no.

Q.      The next question was and when it was, and when was it that Sterling Newsome told you to drive the van to transport workers. And her answer was after my father got his license suspended. As far as the time frame is concerned, do you agree with that?

A.      It was after that, yes.

Q.      Okay. And then the next question was under what circumstances was it that Mr. Sterling Newsome first came to you and spoke to you about driving the vehicle. And the answer was because he did not want my father to leave the place, and he does not want to lose us from the company. Would you agree with that?

A.      Yes, I'?ll agree with that.

Q.      And then it says, so what did Sterling say to you. Answer, told me

                to bring people to work into the company and also work at the company as employee. Do you remember having that conversation with her?

    A.      I would say that's sort of chopped up there but it's, probably discussed. But, once again, that was as two friends talking, not as me being – I wasn't her supervisor. Cheryl was her supervisor. She worked for Cheryl. I made two separate, even though I was responsible for both of them, I maintained deferitian (ph.) between the two. Cheryl ran her department, I ran mine.

    Q.      But like you said, I understand that. But you were responsible for Cheryl and for Maly, correct?

    A.      Theoretically, yes.

    P.119, L24 - P.122, L17.

There is certainly no issue of material fact that Mr. Newsome was a production manager for Pack and Process at the time of his conversation with Maly Yan and that he had supervisory responsibility over her. He is the principal and Maly Yan is the agent. Mr. Sterling's words and conduct reasonably caused Maly Yan to determine that Pack and Process wished her to transport employees to and from the factory. There can be no issue of material fact on this subject as both the agent and the principal agree that this conversation took place and as such the principal is liable to the agent. However, in the interest of being complete, the testimony of Pack and Process owner Steven Ames was taken and further demonstrated no issue of material fact on this issue. Mr. Ames confirmed that Sterling Newsome was the production manager at the time of the June 18, 2001, accident and that he had supervisory powers over Maly Yan.

See Sterling Newsome's June 29, 2006, Deposition transcript.

    **4.**      **Steven Ames**

Steven Ames is the president of Pack & Process and was the president at the time of the June 18, 2001, accident. He testified that he was the president of Pack & Process, and that Sterling Newsome was in a position to give Maly Yan instructions that she would be required to follow.

Pack and Process has claimed that Maly Yan was driving on behalf of the temporary employment agency, Lam Staffing, and that it was part of the agreement between Pack and Process and Lam Staffing for the latter to provide transportation to and from the Pack and Process factory. During the cross examination of Pack and Process owner Steven Ames, the written agreement between Pack and Process was presented to Mr. Ames and he admitted that no such language existed in the document.

The language contained in Mr. Newsome's conversation with Maly Yan is precisely the type of evidence that the Jurimex court deemed sufficient to reasonably cause an agent to act on the principal's behalf giving the agent "actual authority." Jurimex Kommerz Transit G.M.B.H. v. Case Corporation, 2006 WL 1995128 (D.Del.). See Slip Copy attached hereto as Exhibit "D." The confirmation of the content of this conversation, without evidence to the contrary, is sufficient to demonstrate that no issue of material fact exists and that the Defendants are entitled to judgment as a matter of law. Id. The evidence regarding the conversation between Maly Yan and Sterling Newsome is clear and unequivocal. This conversation caused Maly Yan to act on behalf of Pack and Process, this evidence is so one-sided that Defendants are entitled to judgment as a matter of law. Celotex Corp v. Catrett, 477 U.S. 317, 322 (1987).

**III.    PACK AND PROCESS AND ITS INSURANCE CARRIER, ST. PAUL, ARE RESPONSIBLE AND LIABLE FOR THE ACTIONS OF MALY YAN ON JUNE**

18, 2001

The law is well settled that a principal is liable for the acts within the scope of an agent's actual authority. <u>Taylor v. Peoples Natural Gas Co.</u>, 49 F.3d 982 (3rd Cir. 1995). As discussed more fully <u>supra</u>, Maly Yan had "actual authority" to act on behalf of Pack and Process. The creation of Maly Yan's "actual authority" to transport employees to and from the Pack and Process factory also creates an obligation for Pack and Process and St. Paul, as its insurance carrier, to indemnify Maly Yan as a result of her negligence on June 18, 2001. Once it is established that no reasonable jury could find for Plaintiff and the Defendants are entitled to judgment as a matter of law as to the creation of Maly Yan's "actual authority" to transport employees, then Pack and Process and St. Paul becomes responsible and liable for her actions. Pack and Process and St. Paul are responsible to pay the entire judgment imposed upon Maly Yan in the matter of <u>Yan Thou et.al. v. Maly Yan</u>, June Term, 2003, No.1503. No issue of material fact exist and the Defendants are entitled to judgment as a matter of law as to all of the issues before the jury.

## **CONCLUSION**

Defendant Maly Yan was given "actual authority" to act on behalf of Pack and Process and to transport employees to and from the Pack and Process Factory, as outlined in detail above. Maly Yan was acting on behalf of Pack and Process in transporting employees to and from the factory, working within the course and scope of her employment and performing a duty related to the conduct of Pack and Process's business. The principal is responsible and liable for the actions of the agent and as such Pack and Process and St. Paul, its insurance carrier, are responsible for the actions of Maly Yan on

June 18, 2001. No reasonable jury could conclude that Maly Yan was outside the scope of her employment given the instruction Maly Yan received from Sterling Newsome and the instruction Yan Thou received from Steven Ames through David Thatch, which both prove Pack and Process' desire and authorization for Maly Yan to transport the workers to and from the plant. Thus, Defendants are entitled to judgment as a matter of law as to all issues before the jury.

        Respectfully submitted,

        **Kline & Specter, P.C.**
BY:   **/s/ Royce W. Smith**
        Shanin Specter, Esquire
        Jonathan Cohen, Esquire
        Royce W. Smith, Esquire
        1525 Locust Street, 19th Floor
        Philadelphia PA 19102
        215-772-1000

        **/s/ Robert S. Miller**
        **Robert S. Miller, Esquire**
        Wapman, Newman, et al
        115 South 21st Street
        Philadelphia, Pa 19103

Dated: April 24, 2008